**DECLARATION OF JAVIER HIDALGO,**
**THE REFUGEE AND IMMIGRANT CENTER FOR**
**EDUCATION AND LEGAL SERVICES (RAICES)**

I, Javier Hidalgo, make the following statement on behalf of the Refugee and Immigrant Center for Education and Legal Services (RAICES). I certify under penalty of perjury that the following statement is true and correct pursuant to 28 U.S.C. § 1746:

1. I make this declaration based on my personal knowledge except where I have indicated otherwise. If called as a witness, I could and would testify competently and truthfully to these matters.

2. I am a Legal Director at the Refugee and Immigrant Center for Education and Legal Services (RAICES). I joined RAICES in 2018 and have served in my current role since 2023. Before I assumed my current position, I worked as a unit director, before that as a supervisor, and previously as a staff attorney. In my role as Legal Director, I work closely with and oversee the work of our Asylum Access Services program, which (among other things) serves people facing expedited removal from the United States.

3. RAICES is a 50l(c)(3) nonprofit, non-partisan organization headquartered in San Antonio, Texas. RAICES' mission is to defend the rights of immigrants and refugees; empower individuals, families, and communities of immigrants and refugees; and advocate for liberty and justice. This mission encompasses striving to ensure access to asylum and protection for noncitizens, including those arriving at the border and subject to expedited removal. RAICES provides free and low-cost immigration legal services to underserved immigrant children, families, and individuals. RAICES also conducts social services programming for immigrants, engages in advocacy work, and provides bond assistance to individuals seeking release from the custody of the Department of Homeland Security (DHS). To execute our mission, we strive to serve as many noncitizens as possible through our various avenues of work.

4. As discussed in detail below, RAICES has and will continue to experience substantive harm under the Proclamation 10888, Fed. Reg. 8143 ("the Proclamation"), issued by President Trump and its implementation by the other Defendants in this suit. The Proclamation directly impacts and interferes with RAICES' core work. Most notably, the process of summarily expelling noncitizens without the opportunity for credible fear interviews frustrates and impedes RAICES from our fundamental day-to-day work of representing noncitizens with protection needs.

### RAICES' Mission and Work

5. Founded in 1986 as the Refugee Aid Project by community activists in South Texas, RAICES has grown to become the largest immigration legal services provider in Texas. With offices in Austin, Corpus Christi, Dallas, Fort Worth, Houston, and San Antonio, RAICES is a frontline organization that combines expertise developed from the daily practice of immigration law with a deep commitment to advocacy. Its staff includes nearly 300 people, including attorneys, legal assistants, social workers, advocates, and support staff.

1

6. Since RAICES' founding, its staff, volunteers, and pro bono attorneys have counseled and represented thousands of noncitizens throughout Texas. RAICES offers a wide array of legal services. The scope of RAICES' services includes filing "affirmative" asylum applications, which can be submitted to U.S. Citizenship and Immigration Services (USCIS) by noncitizens who are not in removal proceedings. It also includes representing noncitizens—including adults, children, and families—in regular removal proceedings under 8 U.S.C. § 1229a and in bond proceedings before the Executive Office for Immigration Review (EOIR) immigration courts; and before the Board of Immigration Appeals (BIA). In regular removal proceedings, also known as defensive proceedings, we represent people seeking asylum, withholding of removal, and protection under the Convention Against Torture (CAT), among other forms of relief from removal. RAICES' defensive legal representation also extends to the federal courts, where we represent clients before the United States Court of Appeals for the Fifth Circuit and the Supreme Court, where appropriate.

7. RAICES also provides services to hundreds of people in expedited removal proceedings, including those screened through the credible fear process. Our Asylum Access Services team is most involved in our work serving individuals facing expedited removal. The team represents detained individuals in the expedited removal process. As of the date this declaration is executed, that team currently consists of one senior attorney, two staff attorneys, a DOJ accredited representative, four legal assistants, and three data entry clerks. When fully staffed, the team also includes a supervising attorney and a managing attorney. We currently operate hotlines specifically for individuals detained at the South Texas Detention Center, in Pearsall, Texas; Laredo Detention Center in Laredo, Texas; and the Karnes County Immigration Processing Center in Karnes, Texas, as well as individuals detained in CBP facilities who are subject to enhanced expedited removal.

8. Last year, we added our hotline number to a list distributed by EOIR to asylum seekers who are required to undergo their credible fear interviews while in CBP custody. We also post signup sheets in ICE detention centers and receive referrals from both the family members of detained people and other nongovernmental organizations.

9. In 2024, the Asylum Access Services team provided legal services, including direct representation, to at least 825 individuals in expedited removal proceedings: an average of at least 15 different people served each week.

**The Proclamation Harms RAICES and Interferes With Our Ability to Continue Our Work**

10. The Proclamation challenged in this suit and its implementation have directly impacted and interfered with RAICES' ability to provide its core services—including serving noncitizen clients subjected to removal proceedings—and will continue to have these effects.

11. Thus far, these changes have forced us to divert our limited resources to preparing the relevant teams to properly and ethically represent clients impacted by the Proclamation. We have devoted internal resources to training staff on the Proclamation and related policies, as well as on how to advocate for clients impacted by these changes.

12. We have also had to redirect staff resources. Even with these reallocations of staff resources, we are not able to fully support people impacted by the Proclamation because, based on my and other RAICES staff members' observations since the Proclamation took effect, immigration officials are expelling and removing people without the opportunity to consult with us or to seek protection.

13. The Proclamation has caused and will continue to cause significant disruption to our work on behalf of individuals facing expedited removal, making it nearly impossible for us to serve our client population.

14. Defendants' enforcement of the Proclamation has led to a denial of noncitizens' statutory rights, which frustrates our core purpose as an organization. Because enforcement of the Proclamation has led to a summary removal process, most noncitizens no longer have the ability to raise claims for asylum and other protection. As a result, the Proclamation has already greatly diminished RAICES's ability to engage in its core work of representing noncitizens in obtaining the protections to which they are entitled by statute. Since the Proclamation took effect on January 20, 2025, we have only been able to represent people in credible fear interviews who entered before the Proclamation took effect. Since January 20, we have made contact with only a few people in DHS custody who entered on or after that date, and none of those people have been permitted to seek protection despite having expressed fear of persecution. By contrast, as noted above, in 2024 we represented approximately 15 different people navigating the credible fear process each week. Moreover, the number of people with protection needs who crossed the border before January 20 but have not been processed will quickly run out. At that point—with most people who crossed on or after January 20 no longer being permitted to seek relief due to the Proclamation—our ability to serve people seeking these statutorily-required protections will effectively be eliminated.

15. With the Proclamation in effect, RAICES has stopped receiving calls from individuals and families in CBP custody who recently entered the country and seek assistance obtaining protection.

16. In addition, since going into effect, the Proclamation has prevented noncitizens from establishing eligibility for asylum and other forms of protection and being referred to regular removal proceedings, or otherwise being placed in regular removal proceedings, where they would have the chance to have full hearings on the merits of their claims for protection. As a result, we will not be able to represent asylum seekers who crossed the border on or after January 20 in regular removal proceedings either.

17. RAICES is being required to divert resources to respond to the Proclamation's impact on its operations. Among other things, RAICES must expend resources on studying the Proclamation and attempting to ascertain its full scope and impact, about which Defendants have provided no public guidance; searching for alternative ways to contact detained individuals and families to provide information and legal services; updating "know your rights" materials; and training staff on the Proclamation and other operational changes.

18. RAICES has had to expend additional resources to advocate with ICE and USCIS on behalf of noncitizens in ICE custody to try to ensure that those noncitizens have access to asylum and other protections from removal. Since the Proclamation took effect, we have been successful in advocating with the agencies to refer a very small number of asylum seekers for credible fear interviews—all of whom were people who entered before January 20. Even that advocacy concerning people not subject to the Proclamation has been more time- and resource-intensive than it was prior to January 20. And as explained above, we have not been able to obtain the ability to seek protection for a single person who crossed the border on or after January 20.

19. RAICES has also needed to divert funding to provide trainings on working with children. The Proclamation does not expressly exempt unaccompanied children from its suspension of access to statutory protections at the southern border, and children often do not know the precise date that they entered the country. The government has not issued any public guidance or other information clarifying whether unaccompanied children are being exempted from the Proclamation in practice. As such, we continue to be concerned that border officers may wrongly be denying unaccompanied children access to asylum and processing under the Trafficking Victims Protection Reauthorization Act based on the Proclamation. We are expending time and resources to research and understand border-wide trends on how unaccompanied children are being treated and to prepare our staff to provide services to this vulnerable population.

20. In addition to the substantive additional time that doing this extra work entails, we have also been forced to divert resources to reshape our training materials, both for our own staff and for pro bono attorneys and other volunteers. We have needed to scramble to determine what is happening with people who have been detained at Karnes, especially with some of them having been promptly transferred elsewhere. This has led to burnout among our staff.

## **Conclusion**

21. The Proclamation severely restricts RAICES' ability to perform its core work of representing noncitizens seeking asylum or other protection from removal. If the Proclamation remains in place, it will effectively eliminate our ability to provide any services going forward to people seeking asylum or other protection who cross the border on or after January 20, 2025. Instead, those people will be unlawfully removed to face persecution and torture. The Proclamation is dangerous and sends the message that the United States is not welcoming of asylum seekers. The Proclamation is fundamentally contrary to RAICES' mission and vision, and it is devastating our ability to serve asylum seekers.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 19th day of February, 2025 in San Antonio, Texas.

_____
Javier Hidalgo

4