IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| REFUGEE AND IMMIGRANT CENTER FOR EDUCATION AND LEGAL SERVICES, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>KRISTI NOEM, Secretary of the U.S. Department of Homeland Security, in her official capacity, *et al.*,<br><br>*Defendants*. | No. 1:25-cv-00306 (APM) |

**PLAINTIFFS' <u>EMERGENCY</u> MOTION TO STAY REMOVAL OF INDIVIDUAL PLAINTIFFS CURRENTLY WITHIN THE UNITED STATES WITH SUPPORTING POINTS AND AUTHORITIES**

**(Individual Plaintiffs In The United States Face Removal To Danger As Soon As <u>Tonight</u>, February 19, 2025)[1]**

Plaintiffs respectfully seek an emergency stay of removal for the Individual Plaintiffs named in Plaintiffs' concurrently filed Amended Complaint and listed below who are still currently in the United States. These Individual Plaintiffs are noncitizens who fled persecution and torture in their countries of origin and seek asylum and other protection in the United States. They are currently detained by Defendants in the United States and could be imminently removed under the unlawful Proclamation challenged in this suit.

---

[1] Plaintiffs' counsel was informed by an attorney who last spoke with Plaintiff N.S. that the Department of Homeland Security was processing Plaintiff N.S. for removal as soon as this evening.

1

Pursuant to Local Civil Rule 7(m), Plaintiffs' counsel conferred with Defendants' counsel, who indicated that Defendants oppose the relief requested in this motion and do not agree to keep these Individual Plaintiffs in the United States pending the outcome of this lawsuit.

The Individual Plaintiffs' full names and other identifying information has been filed under seal in support of Plaintiffs' concurrently filed Sealed Motion for Leave to Proceed Under Pseudonyms and to File Supporting Exhibits Under Seal. The Individual Plaintiffs currently in the United States who seek to stay their removal are:

- Plaintiffs A.M., Z.A., T.A., and A.T.;
- Plaintiff M.A.;
- Plaintiff N.S.;
- Plaintiff B.R; and
- Plaintiff G.A.[2]

## LEGAL STANDARD

Courts deciding whether to grant a stay of removal weigh four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009) (citation omitted).

As this Court has noted, "there is substantial overlap between these factors and the factors governing preliminary injunctions...." *Ctr. for Biological Diversity v. Regan*, No. CV 21-119 (RDM), 2024 WL 1740078, at *2 (D.D.C. Apr. 23, 2024) (cleaned up) (quoting *Nken*, 556 U.S. at

---

[2] The other Individual Plaintiffs named in the Amended Complaint but not listed here do not seek stays of removal because they were already removed by Defendants in reliance on the Proclamation.

2

434); *see also*, *e.g.*, *Mallinckrodt Ard LLC v. Verma*, No. 19-CV-1471 (TFH), 2020 WL 7265325, at *5 (D.D.C. May 29, 2020) (noting that the factors are the "same"); *Fox Television Stations, Inc. v. FilmOn X, LLC*, 968 F. Supp. 2d 134, 138 (D.D.C. 2013) (same); *In re Special Proceedings*, 840 F. Supp. 2d 370, 372 (D.D.C. 2012) (same).

## ARGUMENT

In light of the substantial overlap between the stay of removal and preliminary injunction factors, Plaintiffs do not repeat in full their arguments as to the four factors set out in their Memorandum of Law supporting their Motion for a Preliminary Injunction ("PI Memo"), filed concurrently with this motion. A brief summary of those arguments follows.

In the Immigration and Nationality Act ("INA"), Congress gave noncitizens in the United States statutory rights to apply for asylum and other protections from removal. The Proclamation challenged here nonetheless bars noncitizens in the United States "from invoking provisions of the INA that would permit their continued presence in the United States, including" the asylum statute and other removal protections. Proclamation No. 10888, 90 Fed. Reg. 8333, 8335-36 (Jan. 20, 2025) ("Proclamation"). But the President has no such power.

The merits question here is neither difficult nor close. The Proclamation primarily relies on Section 212(f) of the INA, 8 U.S.C. § 1182(f), which authorizes the President to "suspend the entry" of "all [noncitizens] or any class of [noncitizens]" when their entry "would be detrimental to the interests of the United States." But this authority to "suspend entry" does not empower the President to *summarily remove* noncitizens already physically present in the United States, much less to do so in violation of the protections from removal Congress set out in the INA. That is why the Executive Branch for more than four decades concluded that Section 212(f) does not confer the authority to displace rights to seek asylum or other statutory forms of protection. This includes

a 1984 opinion from then-Assistant Attorney General of the Office of Legal Counsel Theodore B. Olson; a 2018 regulation by the Department of Justice ("DOJ") and Department of Homeland Security ("DHS") in conjunction with a proclamation issued by President Trump; and a 2024 regulation by the same Departments under President Biden. *See* 89 Fed. Reg. 81156, 81163 & n.53 (Oct. 7, 2024).

This Court's decision in *O.A. v. Trump* supports the same conclusion. 404 F. Supp. 3d 109 (D.D.C. 2019), *appeal dismissed sub nom, O.A. v. Biden*, No 19-5272, 2023 WL 7228024 (D.C. Cir. Nov. 1, 2023). There, President Trump invoked Section 212(f) to deny "entry" to noncitizens who crossed the southern border between ports of entry. Then, DOJ and DHS—recognizing that Section 212(f) on its own could not render these noncitizens ineligible for asylum—separately invoked their rulemaking authority to establish certain "additional limitations and conditions" on asylum eligibility, 8 U.S.C. § 1158(b)(2)(C), to issue an interim final rule barring from asylum noncitizens who entered in violation of the proclamation. This Court held that the rule violated the INA's requirement that any such limitation must be "consistent with" the asylum statute. *O.A.*, 404 F. Supp. 3d at 147-50. And when DOJ and DHS nonetheless pointed to the President's proclamation as bolstering their authority, this Court rejected that argument. *Id.* at 150-51. This Court reasoned that the President's proclamation under Section 212(f) was not "sufficient to override a statutory mandate permitting all [noncitizens] present in the United States to apply for asylum," regardless of their manner of entry; or to "shift the congressional assignment of authority … from [DOJ and DHS] to the President." *Id.* at 151 (citing 8 U.S.C. § 1158(a)(1) and *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952)). So too here.

The Proclamation also gestures at the President's powers under Article II and the federal government's duty to protect States from invasion under Article IV. *See* U.S. Const. art. II; *id.* art.

4

IV, § 4. It is unclear whether the Proclamation purports to rely on these powers to displace the INA's statutory provisions protecting noncitizens in the United States. But if the Proclamation does, it would be an even more extreme example of presidential overreach than the one the Supreme Court struck down in *Youngstown*. Whatever the outer limits of the President's constitutional authorities, the President lacks "conclusive and preclusive" powers that would permit him to wipe away the immigration statutes protecting noncitizens in the United States. *Youngstown*, 343 U.S. at 638 (Jackson, J., concurring).

For these reasons and those set out more fully in Plaintiffs' preliminary injunction memorandum, Plaintiffs have a strong likelihood of showing success on the merits. *See* PI Memo 18-27.

With respect to the other factors, as Plaintiffs explain in support of their preliminary injunction motion, *see* PI Memo 27-29, courts in this District have repeatedly held that the removal of asylum seekers in violation of statutory protections constitutes irreparable injury. *See, e.g.*, *Kiakombua v. Wolf*, 498 F. Supp. 3d 1, 57 (D.D.C. 2020); *A.B.-B. v. Morgan*, 548 F. Supp. 3d 209, 221 (D.D.C. 2020); *P.J.E.S. v. Wolf*, 502 F. Supp. 3d 492, 545-46 (D.D.C. 2020); *Grace v. Whitaker*, 344 F. Supp. 3d 96, 146 (D.D.C. 2018), *rev'd in part on other grounds*, 965 F.3d 883 (D.C. Cir. 2020).

And the particular dangers the Individual Plaintiffs have fled starkly illustrate that they face irreparable injury absent a stay. Plaintiffs A.M. and Z.A. fled Afghanistan with their two young children, Plaintiffs T.A. and A.T. *See* A.M. Decl. ¶¶ 1-2.[3] They fear persecution by the Taliban because of their political views and perceived support for the United States. *See id.* ¶¶ 2-4, 9, 16. Plaintiff N.S. fled Ecuador to escape horrific violence and kidnapping by her former

---

[3] Declarations of the Individual Plaintiffs are attached as exhibits to the concurrently filed Sealed Motion for Leave to Proceed Under Pseudonyms and to File Supporting Exhibits Under Seal and incorporated by reference here.

partner—a police officer who called her anti-indigenous slurs while raping her, beating her, and holding his gun to her head—and fears that he will kill her if she is removed. *See* N.S. Decl. ¶¶ 4-5, 11-12. Plaintiff B.R. survived kidnapping, rape, and torture by a cartel in Ecuador that targeted her because of her ethnicity and family ties; she fears the cartel will kill her if she is removed. *See* B.R. Decl. ¶ 1-4, 15. Plaintiff G.A. faces severe domestic violence or death if she is removed to Brazil. *See* G.A. Decl. ¶¶ 1-10. And Plaintiff M.A. was repeatedly jailed and tortured in Egypt by the ruling dictatorship because of his pro-democracy views and fears that he will be tortured again if removed. *See* M.A. Decl. ¶¶ 2-3, 11.

These imminent risks of irreparable harm strongly favor granting a stay. *See, e.g.*, PI Memo 27-28; *J.B.B.C. v. Wolf*, No. 1:20-CV-01509 (CJN), 2020 WL 6041870, at *2 (D.D.C. June 26, 2020) (granting stay for noncitizen facing imminent expulsion); *Demjanjuk v. Holder*, 563 F.3d 565 (6th Cir. 2009) (granting stay for noncitizen who asserted removal would violate CAT); *Leiva-Perez v. Holder*, 640 F.3d 962, 970 (9th Cir. 2011) (granting stay for asylum seeker who feared persecution if removed); *Tesfamichael v. Gonzales*, 411 F.3d 169, 178 (5th Cir. 2005) (same); *Devitri v. Cronen*, 289 F. Supp. 3d 287, 296-99 (D. Mass. 2018) (same).

By contrast, there is no legitimate governmental or public interest in the unlawful removal of the Individual Plaintiffs to countries where they face persecution or torture. *See* PI Memo 28-29; *Kiakombua*, 498 F. Supp. 3d at 57; *A.B.-B.*, 548 F. Supp. 3d at 222; *Grace*, 344 F. Supp. 3d at 146; *Devitri*, 289 F. Supp. 3d at 298.

For all of these reasons, Plaintiffs also respectfully request that the Court stay the above-listed Individual Plaintiffs' removal pending resolution of this motion. *See* Order Granting Temporary Stay of Removal, *Kiakombua v. McAleenan*, No. 19-cv-1872 (KBJ) (D.D.C. July 9, 2019) (staying several plaintiffs' removal pending resolution of stay motion); Order Granting

6

Temporary Stay of Removal, *Grace v. Sessions*, No. 18-cv-1853 (EGS) (D.D.C. Aug. 9, 2018) (same).

## CONCLUSION

This Court should stay the removal of Individual Plaintiffs A.M., Z.A., T.A., A.T., N.S., B.R., M.A., and G.A. pending resolution of this motion and thereafter stay their removal pending resolution of this case.[4]

Dated: February 19, 2025                          Respectfully submitted,

/s/ Lee Gelernt

| | |
|---|---|
| Keren Zwick (D.D.C. Bar. No. IL0055) | Lee Gelernt (D.D.C. Bar No. NY0408) |
| Richard Caldarone (D.C. Bar No. 989575)* | Omar C. Jadwat* |
| Mary Georgevich* | American Civil Liberties Union Foundation |
| National Immigrant Justice Center | Immigrants' Rights Project |
| 111 W. Jackson Blvd., Suite 800 | 125 Broad Street, 18th Floor |
| Chicago, IL 60604 | New York, NY 10004 |
| T: 312-660-1370 | T: 212-549-2660 |
| kzwick@immigrantjustice.org | lgelernt@aclu.org |
| rcaldarone@immigrantjustice.org | ojadwat@aclu.org |
| mgeorgevich@immigrantjustice.org | |
| | Morgan Russell* |
| | Katrina Eiland* |
| Melissa Crow (D.C. Bar. No. 453487) | Cody Wofsy (D.D.C. Bar No. CA00103) |
| Center for Gender & Refugee Studies | Spencer Amdur* |
| 1121 14th Street, NW, Suite 200 | American Civil Liberties Union Foundation |
| Washington, D.C. 20005 | Immigrants' Rights Project |
| T: 202-355-4471 | 425 California Street, Suite 700 |
| crowmelissa@uclawsf.edu | San Francisco, CA 94104 |
| | T: 415-343-0770 |
| Edith Sangueza* | mrussell@aclu.org |
| Center for Gender & Refugee Studies | keiland@aclu.org |
| 26 Broadway, 3rd Floor | cwofsy@aclu.org |
| New York, NY 10004 | samdur@aclu.org |
| T: 415-581-8835 | |
| sanguezaedith@uclawsf.edu | Arthur B. Spitzer (D.C. Bar No. 235960) |
| | Scott Michelman (D.C. Bar No. 1006945) |
| Robert Pauw* | American Civil Liberties Union Foundation |

---

[4] This motion does not seek an order that the Individual Plaintiffs currently within the United States be released from detention.

7

Center for Gender & Refugee Studies
c/o Gibbs Houston Pauw
1000 Second Avenue, Suite 1600
Seattle, WA 98104
T: 206-682-1080
rpauw@ghp-law.net

Tamara Goodlette (D.C. Bar. No. TX24117561)
Texas Civil Rights Project
P.O. Box 219
Alamo, Texas 78516
T: 512-474-5073, ext. 207
tami@texascivilrightsproject.org

of the District of Columbia
529 14th Street, NW, Suite 722
Washington, D.C. 20045
T: 202-457-0800
aspitzer@acludc.org
smichelman@acludc.org

Ashley Alcantara Harris*
David A. Donatti*
ACLU Foundation of Texas
P.O. Box 8306
Houston, TX 77288
TEL: (713) 942-8146
FAX: (713) 942-8966
aharris@aclutx.org
ddonatti@aclutx.org

*Attorneys for Plaintiffs*

*\*Certificate of pro bono representation or pro hac vice forthcoming*