YAAKOV M. ROTH
*Principal Deputy Assistant Attorney General*

DREW C. ENSIGN
*Deputy Assistant Attorney General*

AUGUST FLENTJE
*Acting Director*

EREZ REUVENI
*Acting Deputy Director*

PATRICK GLEN
DAVID KIM
BRIAN C. WARD
KATHERINE J. SHINNERS
*Senior Litigation Counsel*
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel: (202) 598-8259
Email: katherine.j.shinners@usdoj.gov

JOSEPH DARROW
ELISSA FUDIM
*Trial Attorneys*

*Counsel for Defendants*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| _____ ) | Civil Action No. 1:25-cv-00306 |
| Refugee and Immigrant Center for ) | |
| Education and Legal Services, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| Kristi Noem, Secretary, U.S. Department ) | |
| of Homeland Security, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

## OPPOSITION TO MOTION FOR CLASS CERTIFICATION

## TABLE OF CONTENTS

INTRODUCTION……………………………………………………………………… …………… 1

BACKGROUND ................................................................................................................ 4

   I.   Legal Background on Immigration Enforcement. ............................................................. 4

   II.   The Proclamation's Suspensions on Entry and Implementation. ...................................... 6

   III.   This Lawsuit and Motion. ................................................................................................ 11

   IV.   The Individual Plaintiffs ................................................................................................. 13

STANDARD ...................................................................................................................... 15

ARGUMENT ..................................................................................................................... 17

   I.   The Class is Impermissible Because it Includes, or Potentially Includes, Individuals Who Have Not Suffered, or Will Not Suffer, the Same Injury and Whose Claims Are Statutorily Precluded from Class Treatment. ....................................................................... 17

   II.   There Are No Common Questions Capable of Driving the Resolution of the Litigation as to the Proposed Class, and the Individual Plaintiffs' Claims are Not Typical of All Class Members' Claims. ................................................................................................... 24

   III.   Plaintiffs' Proposed Class Does Not Satisfy Rule 23(b)(2)'s Requirements...................... 28

      A.   A "Single Injunction" Cannot Provide Relief to Each Member of the Class. .................. 28

      B.   There is No Available Injunctive Relief to Enforce Requirements of Section 1225(b). ... 29

CONCLUSION .................................................................................................................. 38

## <u>TABLE OF AUTHORITIES</u>

*Aguilar v. ICE*,
    510 F.3d 1 (1st Cir. 2007) ......................................................................................... 23

*Al Otro Lado v. Mayorkas*,
    619 F. Supp. 3d 1029 (S.D. Cal. 2022) ...................................................................... 32

*Alli v. Decker*,
    650 F.3d 1007 (3d Cir. 2011) ..................................................................................... 37

*AmChem Prods. V. Windsor*,
    521 U.S. 591 (1997) ...................................................................................... 16, passim

*Biden v. Texas*,
    597 U.S. 785 (2022) .................................................................................................... 34

*Brown v. D.C.*,
    928 F.3d 1070 (D.C. Cir. 2019) .................................................................................. 26

*Bunn v. District of Columbia*,
    306 F.R.D. 68 (D.D.C. 2015) ................................................................................ 24, 27

*C.G.B. v. Wolf*,
    464 F. Supp. 3d 174 (D.D.C. 2020) ....................................................................... 28, 29

*Califano v. Yamasaki*,
    442 U.S. 682 (1979) .................................................................................................... 15

*Coca-Cola Bottling Co. of Elizabethtown, Inc. v. Coca-Cola Co.*,
    98 F.R.D. 254 (D. Del. 1983) ..................................................................................... 34

*Coleman through Bunn v. District of Columbia*,
    306 F.R.D. 68 (D.D.C. 2015) ................................................................................ 24, 27

*Franklin v. Massachusetts*,
    505 U.S. 788 (1992) .................................................................................................... 37

*Garland v. Aleman Gonzalez*,
    596 U.S. 543 (2022) ...................................................................................... 29, passim

*Gen. Tel. Co. of Southwest v. Falcon*,
    457 U.S. 147 (1982) .................................................................................................... 16

*Haaland* v. *Brackeen*,
    599 U.S. 255 (2023) .................................................................................................... 37

*Hamama v. Adducci*,
    912 F.3d 869 (6th Cir. 2018) ............................................................ 31, 34

*Hewitt v. Helms*,
    482 U.S. 755 (1987) ............................................................................... 36

*Hilton Hotels Ret. Plan v. White*,
    144 S. Ct. 487 (2023) ............................................................................. 18

*Howard v. Liquidity Servs. Inc.*,
    322 F.R.D. 103 (D.D.C. 2017) ............................................................... 27

*In re Navy Chaplaincy*,
    306 F.R.D. 33 (D.D.C. 2014) ................................................................. 28

*In re White*,
    64 F.4th 302 (D.C. Cir.) ........................................................................ 18

*INS v. Cardoza-Fonseca*,
    480 U.S. 421 (1987) ................................................................................. 4

*J.D. v. Azar*,
    925 F.3d 1291 (D.C. Cir. 2019) ....................................................... 24, 27

*Jennings v. Rodriguez*,
    583 U.S. 281 (2018) ......................................................................... 31, 35

*Johnson v. D.C.*,
    248 F.R.D. 46 (D.D.C. 2008) ................................................................. 19

*Kohen v. Pac. Inv. Mgmt. Co. LLC*,
    571 F.3d 672 (7th Cir. 2009) ................................................................. 17

*Lemon v. Int'l Union of Operating Engr's, Local No. 139, AFL–CIO*,
    216 F.3d 577 (7th Cir. 2000) ................................................................. 28

*Lewis v. Nat'l Football League*,
    146 F.R.D. 5 (D.D.C. 1992) ................................................................... 17

*Lightfoot v. D.C.*,
    273 F.R.D. 314 (D.D.C. 2011) ............................................................... 28

*McCarthy v. Kleindienst*,
    741 F.2d 1406 ........................................................................................ 16

*Moreno Galvez v. Jaddou*,
    52 F. 4th 821 (9th Cir. 2022) ................................................................ 29

*Nken v. Holder*,
   556 U.S. 418 (2009)........................................................................................................ 31

*O.A. v. Trump*,
   404 F. Supp. 3d 109 (D.D.C. 2019) ................................................................................ 23

*Onosamba-Ohindo v. Searls*,
   678 F. Supp. 3d 364 (W.D.N.Y. 2023) ............................................................................ 35

*O'Shea v. Littleton*,
   414 U.S. 488 (1974)........................................................................................................ 18

*Pigford v. Glickman*,
   182 F.R.D. 341 (D.D.C. 1998).......................................................................................... 17

*Rahman v. Chertoff*,
   530 F.3d 622 (7th Cir. 2008) .......................................................................................... 21

*Reno v. Am.-Arab Anti-Discrimination Comm.*,
   525 U.S. 471 (1999).................................................................................................. 30, 31

*Ross v. Lockheed Martin Corp.*,
   267 F. Supp. 3d 174 (D.D.C. 2017) ................................................................................ 17

*Sibley v. Diversified Collection Servs., Inc.*,
   No. 396-cv-0816, 1998 WL 355492 (N.D. Tex. June 30, 1998) ........................................ 34, 35

*Thorpe v. District of Columbia*,
   303 F.R.D. 120 (D.D.C. 2014).......................................................................................... 17

*Trump v. Hawaii*,
   585 U.S. 667 (2018)...................................................................................................... 1, 5

*United States v. Texas*,
   599 U.S. 670 (2023)........................................................................................................ 37

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011)............................................................................................ 15, passim

*Warth v. Seldin*,
   422 U.S. 490 (1975)........................................................................................................ 19

## ADMINISTRATIVE DECISION

*Matter of E-R-M-,*
25 I. & N. Dec. 520 (BIA 2011)................................................................33

## STATUTES

6 U.S.C. § 211(e)(3) ................................................................................ 4

6 U.S.C. § 211(g)(3) ................................................................................ 4

8 U.S.C. § 1101 ....................................................................................... 6

8 U.S.C. § 1101(3) ................................................................................. 12

8 U.S.C. § 1158 ........................................................................... 4, passim

8 U.S.C. § 1158(a)(1) ............................................................................ 33

8 U.S.C. § 1158(a)(2) ............................................................................ 20

8 U.S.C. § 1158(b)(2) ............................................................................ 20

8 U.S.C. § 1182(a)(1) .............................................................................. 7

8 U.S.C. § 1182(a)(1)-(3) .................................................................. 8, 10

8 U.S.C. § 1182(a)(2) .............................................................................. 6

8 U.S.C. § 1182(a)(3) .............................................................................. 6

8 U.S.C. § 1182(a)(6)(C) ......................................................................... 4

8 U.S.C. § 1182(a)(7) .............................................................................. 4

8 U.S.C. § 1182(f) ........................................................................ 1, passim

8 U.S.C. § 1185(a) ...................................................................... 1, 7, 27

8 U.S.C. § 1185(a)(1) ....................................................................... 6, 25

8 U.S.C. § 1225 .......................................................................... 29, 33

8 U.S.C. § 1225(a)(1) .............................................................................. 4

8 U.S.C. § 1225(a)(3) .............................................................................. 4

8 U.S.C. § 1225(b) ............................................................................... 22

8 U.S.C. § 1225(b)(1) .................................................................................. 10, 14, 18

8 U.S.C. § 1225(b)(1)(A)(i) .................................................................................. 4

8 U.S.C. § 1225(b)(1)(A)(ii) .......................................................................... 4, 30

8 U.S.C. § 1229a .................................................................... 13, 29, 30, 33

8 U.S.C. § 1231 ................................................................................................. 29

8 U.S.C. § 1231(b)(3) ............................................................................... 5, 9, 33

8 U.S.C. § 1231(b)(3)(A) .................................................................................. 32

8 U.S.C. § 1231(b)(3)(B) .................................................................................. 20

8 U.S.C. § 1232(a)(5)(D) .................................................................................. 33

8 U.S.C. § 1252 .................................................................................................. 22

8 U.S.C. § 1252(4) ............................................................................................. 23

8 U.S.C. § 1252(a)(2)(A) ............................................................................... 5, 27

8 U.S.C. § 1252(e) ......................................................................................... 5, 27

8 U.S.C. § 1252(e)(1)(B) ............................................................................ 3, 22, 23

8 U.S.C. § 1252(f) ............................................................................................... 5

8 U.S.C. § 1252(f)(1) .............................................................................. 3, passim

8 U.S.C. § 1225 .......................................................................................... 29, 33

8 U.S.C. § 1231(a)(5) ........................................................................................ 20

8 U.S.C. § 1252(e)(2) ........................................................................................ 23

## REGULATIONS

8 C.F.R. § 208.33 .............................................................................................. 20

8 C.F.R. § 208.13(g) ........................................................................................... 5

8 C.F.R. § 208.30 ............................................................................................... 5

8 C.F.R. § 208.35 ................................................................................................ 5

8 C.F.R. § 208.35(b)(2) ..................................................................................... 20

8 C.F.R. § 2035.3(b)(4) ....................................................................................... 5

8 C.F.R. § 235.15 ............................................................................................... 20

**FEDERAL RULES OF CIVIL PROCEDURE**

Fed. R. Civ. P. 23(a) ....................................................................................... 2, 16

Fed. R. Civ. P. 23(b)(2) ............................................................................ 2, passim

**FEDERAL REGISTER**

89 Fed. Reg. 81 ................................................................................................. 5

89 Fed. Reg. 48 ............................................................................................... 20

90 Fed. Reg. 8333 ........................................................................................ 1, 6, 7

90 Fed. Reg. 8334 ............................................................................................. 7

## INTRODUCTION

After years of unprecedented levels of illegal border crossings into the United States, the President issued Proclamation 10888, *Guaranteeing the States Protection Against Invasion*, 90 Fed. Reg. 8333. (Jan. 20, 2025) (the Proclamation), explaining that "[t]he sheer number of aliens entering the United States has overwhelmed the system and rendered many [Immigration and Nationality Act (INA)] provisions ineffective, including those … intended to prevent aliens posing threats to public health, safety, and national security from entering the United States." *Id*. The President emphasized that, "[a]s a result, millions of aliens who potentially pose significant threats to health, safety, and national security have moved into communities nationwide." *Id*.

The President thus invoked his statutory authority under 8 U.S.C. §§ 1182(f) and 1185(a) to proclaim that the unlawful "entry into the United States" by aliens across the southern border "is detrimental to the interests of the United States," and to direct that such entry "be suspended" and aliens attempting such entry be "restricted from invoking provisions of the INA that would permit their continued presence in the United States." Proclamation §§ 1, 2, 90 Fed. Reg. at 8335; *see* 8 U.S.C. § 1182(f) (authorizing the President to "suspend the entry of all aliens or any class of aliens" and "impose on the entry of aliens any restrictions he may deem to be appropriate" "[w]henever the President finds that the entry of [such] aliens into the United States would be detrimental to the interests of the United States"); *Trump v. Hawaii*, 585 U.S. 667, 684 (2018). The President additionally made the same finding and imposed the same restrictions on entry with respect to any alien (not just at the southern border) who fails "to provide Federal officials with sufficient medical information and reliable criminal history and background information." Proclamation § 3, 90 Fed. Reg. at 8335. In addition, the President invoked his "express and inherent powers in Article II of the Constitution of the United States," as well as his responsibility to "effectuate the guarantee of protection [to the States] against invasion required by Article IV,

Section 4," of the Constitution. *Id.* § 4. In accordance with the Proclamation's terms, the Department of Homeland Security (DHS) is removing or repatriating aliens who are subject to the Proclamation without screening them for possible claims to asylum or withholding of removal under the INA. However, aliens who claim or manifest fear are referred to U.S. Citizenship and Immigration Services (USCIS) for an assessment to determine if it is more likely than not that the alien will be tortured in the designated country of return or removal, in accordance with the Convention Against Torture (CAT).

The Individual Plaintiffs—thirteen aliens who entered the United States illegally between ports of entry in contravention of the President's suspension on entry—challenge the Proclamation and its implementation. Specifically, Plaintiffs contend that aliens who are in the United States are entitled to pursue claims to asylum and other forms of protection before being removed or repatriated, regardless of the President's constitutional and statutory powers to control entry to the United States. The Individual Plaintiffs seek to represent a class of all aliens "who were, are, or will be subject to the Proclamation and/or its implementation within the United States." Mot. for Class Certification (ECF 13) at p.1.[1] Certification of this class would be improper, and the Court should deny Plaintiffs' request. For several overlapping reasons, the class is impermissibly overbroad and indefinite and fails to satisfy the commonality, typicality, and cohesiveness required for an injunctive-relief class under Federal Rules of Civil Procedure 23(a) and (b)(2).

The Class as defined cannot satisfy commonality or typicality because it includes those who lack entitlement to the claimed statutory protections concerning the immigration processing of unaccompanied alien children (UACs) and the use of screenings for asylum or other forms of

---

[1] All page citations to documents filed in this case are to the ECF pagination in the upper right hand corner of the document.

protection—because they are not UACs, they did not claim or manifest fear, they are statutorily ineligible for protection in any event, or the relief they can seek in court is limited by statute. It also includes others who may, in the future, due to potential future changes in implementation, be processed differently under the Proclamation in ways that are material to the lawfulness of the Proclamation's implementation. Rule 23 does not countenance certification of such a broad, open-ended class.

The class likewise does not meet other requirements for certification. First, several Named Plaintiffs' and numerous class members' claims relate to the application of the expedited removal procedures and are thus subject to the express bar on class certification contained in 8 U.S.C. § 1252(e)(1)(B). Due to this restriction imposed by Congress in the INA, the Court cannot certify a class that includes such claims. Second, the proposed class also does not satisfy Rule 23(b)(2) because a single injunction or declaratory judgment would not benefit all class members. Specifically, those who have already been removed or returned and are no longer in the United States cannot benefit from a prospective injunction of implementation of the Proclamation but would require different—likely individualized—injunctive relief (to the extent such relief is available) to remedy the claimed harms. Finally, the class cannot satisfy Rule 23(b)(2) because there is no available injunctive or corresponding declaratory relief. Congress has precluded the classwide relief that Plaintiffs seek—which is, at base, an order enforcing the operation of certain provisions governing expedited removal or removal to allow for assessment of claims to protection. *See* 8 U.S.C. § 1252(f)(1).

For these reasons, class certification should be denied.

# BACKGROUND

## I.    Legal Background on Immigration Enforcement.

The INA provides that aliens present in the United States—whether they enter at a designated port of entry or cross illegally between ports of entry—are deemed applicants for admission and are subject to inspection by immigration officers. 8 U.S.C. § 1225(a)(1), (3). U.S. Customs and Border Patrol's (CBP) Office of Field Operations (OFO) is generally responsible for the inspection and initial processing of aliens at ports of entry, while CBP's U.S. Border Patrol (USBP) is responsible for apprehending and processing aliens who enter illegally at a place other than a designated port of entry. *See* 6 U.S.C. §§ 211(e)(3), (g)(3).

Aliens without valid travel and entry documents are inadmissible to the United States under 8 U.S.C. § 1182(a)(6)(C) or § 1182(a)(7). Certain applicants for admission and other aliens who have not been admitted or paroled into the United States who, upon inspection by an immigration officer, are determined to be inadmissible under these sections are subject to expedited removal procedures. *See* 8 U.S.C. § 1225(b)(1)(A)(i). Under these expedited removal procedures, such aliens may be removed without further hearing or review, unless they indicate an intent to apply for asylum[2] or a fear of persecution. 8 U.S.C. § 1225(b)(1)(A)(ii). If an alien processed for expedited removal indicates such an intent or fear, the immigration officer refers the alien to an asylum officer for a credible fear interview to assess whether the alien has a credible fear of persecution; if so, the alien shall be detained for further consideration of the application for asylum. 8 U.S.C. § 1225(b)(1)(A)(ii), (B). DHS has promulgated regulations governing credible fear procedures, providing for an assessment of whether the alien can establish a credible fear for

---

[2] Asylum is a form of discretionary relief from removal. *See* 8 U.S.C. § 1158; *INS v. Cardoza-Fonseca*, 480 U.S. 421, 444 (1987).

purposes of seeking asylum under the INA, 8 U.S.C. § 1158, statutory withholding of removal under the INA, 8 U.S.C. § 1231(b)(3), or protection under the CAT under regulations implementing the Foreign Affairs Reform and Restructuring Act. *See, e.g.,* 8 C.F.R. §§ 208.30, 235.3(b)(4). Recent regulations promulgated by the prior presidential administration—the *Securing the Border* rule, 89 Fed. Reg. 81,156 (Oct. 7, 2024)—provide that, during times of high levels of southwest border encounters and absent exceptionally compelling circumstances, certain aliens who cross the border without authorization shall not be eligible for asylum but would be screened for potential claims to statutory withholding of removal or CAT protection. *See generally* 8 C.F.R. §§ 208.13(g), 208.35. Orders of expedited removal and the credible fear process are subject to strict Congressional limitations on judicial review and relief. *See* 8 U.S.C. § 1252(a)(2)(A), (e), (f).

In addition to setting forth the expedited removal structure to allow for swift removal of aliens from the United States, Congress has accorded the President broad authority to suspend or restrict the entry of aliens into the United States in the first place. Section 1182(f) of Title 8 provides, in relevant part:

> Whenever the President finds that the entry of any aliens or of any class of aliens into the United States would be detrimental to the interests of the United States, he may by proclamation, and for such period as he shall deem necessary, suspend the entry of all aliens or any class of aliens as immigrants or nonimmigrants, or impose on the entry of aliens any restrictions he may deem to be appropriate.

8 U.S.C. § 1182(f). "By its terms, § 1182(f) exudes deference to the President in every clause," and "entrusts to the President the decisions whether and when to suspend entry ...; whose entry to suspend ...; for how long ...; and on what conditions ...." *Trump v. Hawaii*, 585 U.S. 667, 684 (2018). Section 1185(a)(1) of Title 8 further grants the President broad authority to adopt "reasonable rules, regulations, and orders" governing the entry of aliens, and the President may

make entry "subject to such limitations and exceptions as [he] may prescribe." 8 U.S.C. § 1185(a)(1).

## II.    The Proclamation's Suspensions on Entry and Implementation.

The Proclamation. On January 20, 2025, President Trump issued the Proclamation. The President noted that Congress has created a complex scheme in the INA, 8 U.S.C. § 1101 *et seq*, to control entry across the border of the United States that, in routine circumstances, protects United States sovereignty and prevents entry of aliens who pose threats to public health or national security. 90 Fed. Reg. at 8333. But the INA's screening provisions "can be wholly ineffective in the border environment, where access to necessary information is limited for aliens who have traveled from countries around the world to enter the United States illegally, or when the system is overwhelmed, leading to the unauthorized entry of innumerable illegal aliens into the United States." *Id*.

"Due to significant information gaps—particularly in the border environment—and processing times, Federal officials do not have the ability to verify with certainty the criminal record or national-security risks associated with the illegal entry of every alien at the southern border, as required by" 8 U.S.C. § 1182(a)(2)–(3). 90 Fed. Reg. at 8333. "Nor do aliens who illegally cross the southern border readily provide comprehensive background information from their home countries to Federal law enforcement officials." *Id*. "The public safety and national security risks in such an environment are heightened by the presence of, and control of territory by, international cartels and other transnational criminal organizations on the other side of the southern border, as well as terrorists and other malign actors who intend to harm the United States and the American people." *Id.*

The federal government also "currently lacks an effective operational capability to screen all illegal aliens crossing the southern border for communicable diseases of public-health concern, as required by" 8 U.S.C. § 1182(a)(1). 90 Fed. Reg. at 8334. "As a result, innumerable aliens potentially carrying communicable diseases of public health significance illegally cross the southern border and enter communities across the United States." *Id*. "Over the last 4 years, at least 8 million illegal aliens were encountered along the southern border of the United States, and countless millions more evaded detection and illegally entered the United States." *Id* "The sheer number of aliens entering the United States has overwhelmed the system and rendered many of the INA's provisions ineffective, including those … intended to prevent aliens posing threats to public health, safety, and national security from entering the United States." *Id*. "As a result, millions of aliens who potentially pose significant threats to health, safety, and national security have moved into communities nationwide." *Id*.

The President thus determined that "the current situation at the southern border qualifies as an invasion." 90 Fed. Reg. at 8335. Accordingly, to address this situation, the President invoked his authority under 8 U.S.C. §§ 1182(f) and 1185(a) and found "that the entry into the United States … of aliens engaged in the invasion across the southern border is detrimental to the interests of the United States," and thus suspended the "entry into the United States of such aliens" until "a finding that the invasion at the southern border has ceased." Proclamation § 1. The Proclamation further restricts "aliens engaged in the invasion across the southern border" from "invoking the provisions of the INA that would permit their continued presence in the United States, including, but not limited to" 8 U.S.C. § 1158, until the President issues "a finding that the invasion at the southern border has ceased." Proclamation § 2. Additionally, the President determined "that the entry into the United States … of any alien who fails, before entering the United States, to provide

Federal officials with sufficient medical information and reliable criminal history and background information as to enable fulfillment of the requirements of" 8 U.S.C. § 1182(a)(1)–(3), "is detrimental to the interests of the United States"; he therefore suspended "entry into the United States of such aliens" and "restrict[ed] their access to provisions of the INA that would permit their continued presence in the United States, including, but not limited to" 8 U.S.C. § 1158. Proclamation § 3. The President also invoked his "express and inherent powers in Article II of the Constitution of the United States," including "control over foreign affairs," to suspend "the physical entry of any alien engaged in the invasion across the southern border of the United States" until the President issues "a finding that the invasion at the southern border has ceased." Proclamation § 4. Finally, in accordance with these statutory and constitutional authorities, the President directed the Secretary of Homeland Security, in coordination with the Secretary of State and the Attorney General, to "take all appropriate action to repel, repatriate, or remove any alien engaged in the invasion across the southern order of the United States" on or after January 20, 2025. Proclamation § 5.

Thus, aliens who engage in an invasion by illegally crossing the southern border between ports of entry on or after January 20, 2025 are subject to the suspension on entry set forth in Sections 1 and 4 of the Proclamation and the corresponding express restrictions on invoking INA provisions, like the asylum provision, that would permit the aliens' continued presence in the United States. Proclamation §§ 1, 2, 4; *see also, e.g.*, Ex. A, Updated Field Guidance for Southern Border (Feb. 4, 2025) (defining aliens who cross between the ports of entry on the southern land border as invading the United States). The Proclamation also provides that any alien—regardless of location—who has not provided sufficient medical information, criminal history, and background information to determine whether certain inadmissibility grounds apply is subject to

Section 3's suspension on entry and restrictions on invoking provisions of the INA to permit their continued to presence. *See* Ex. B, Decl. of Ihsan Gunduz ¶¶ 31, 35.

<u>Implementation of the Proclamation.</u>  CBP's relevant components—USBP and OFO—have issued guidance to instruct their agents and officers how to implement the Proclamation's terms, including how to process aliens who cross the border despite the Proclamation's suspensions on entry.

In accordance with the Proclamation, aliens who cross the southern land border between ports of entry are subject to the Proclamation's suspension and restrictions on entry. Aliens who fall into this category (other than UACs) and are encountered and apprehended by USBP agents may be processed for expedited removal or for direct repatriation under Section 1182(f) to their home country, Mexico, or to a third country. *See* Ex. C, Decl. of Benjamin Hollinder ¶ 3; Ex. A, Updated Field Guidance for Southern Border (Feb. 4, 2025); Ex. D, Updated 212F Third Country (Feb. 19, 2025). Such aliens are not permitted to apply for asylum under 8 U.S.C. § 1158 or statutory withholding of removal under 8 U.S.C. § 1231(b)(3), as these are "provisions of the INA that would permit their continued presence in the United States." Proclamation § 2. Aliens who manifest a fear of the country to which CBP intends to return or remove them, however, are referred to USCIS for an assessment to determine if it is more likely than not that the alien will be tortured in the designated country of return or removal, in accordance with the CAT. *See* Ex. D, Updated 212F Third Country (Feb. 19, 2025); Ex. A, Updated Field Guidance for Southern Border (Feb. 4, 2025); Ex. E, USCIS CAT Assessment Instructions and Implementation Guidance (Jan. 31, 2025); Ex. C, Hollinder Decl. ¶ 3. USCIS provides the referring entity (CBP or U.S. Immigration and Customs Enforcement (ICE)) with the results of the CAT assessment. Ex. E, CAT Assessment Instructions and Implementation Guidance for Alien(s) Whose Entry Has Been

Suspended and/or Restricted Pursuant to INA §§ 212(f) and 215(a) (Jan. 31, 2025).  If there is a positive CAT assessment, the alien may be served with a Notice to Appear for further consideration of the request for CAT protection, or another country may be designated for return or removal. Ex. A, Updated Field Guidance for Southern Border (Feb. 4, 2025); Ex. D, Updated 212F Third Country (Feb. 19, 2025). If an alien subject to the Proclamation does not manifest fear of return to the designated country of return, or if the CAT assessment is negative, CBP may proceed with return or removal to the alien's home country, Mexico, or a third country. Ex. A, Updated Field Guidance for Southern Border (Feb. 4, 2025); Ex.D, Updated 212F Third Country (Feb. 19, 2025).

Thus, under the USBP implementing procedures, some aliens who are apprehended after entering illegally between ports of entry are processed under the Proclamation for repatriation to their home country, Mexico, or a third country. Others are processed, pursuant to the authority in the Proclamation, including Section 1182(f) (INA § 212(f)), for expedited removal and receive expedited removal orders under 8 U.S.C. § 1225(b)(1). *See* Ex. A, Updated Field Guidance for Southern Border (Feb. 4, 2025) (setting forth the different processing requirements for direct repatriation to Mexico and for expedited removal); Ex. D, Updated 212F Third Country (Feb. 19, 2025) (setting forth the processing requirements for direct repatriation to a third country).

The Proclamation also prevents the entry of aliens who have not provided sufficient medical information and reliable criminal history and background information to enable fulfillment of the requirements of 8 U.S.C. §§ 1182(a)(1)-(3). Proclamtion § 3. OFO's implementing procedures provide that, at ports of entry, CBP Officers will generally not permit aliens (other than UACs) who lack lawful permanent resident status or valid entry documents or authorizations to cross the international boundary to enter the United States. *See* Ex F, Muster, Update: Implementation of Active Executive Orders – February 28, 2025 (Feb. 28, 2025), at p.2.

If an alien subject to Section 3 of the Proclamation nonetheless crosses the boundary line at a port of entry for inspection or evades boundary-line operations to cross into the United States, that alien will generally be processed for repatriation or removal pursuant to Section 212(f) or for removal proceedings. *See id.* In accordance with Section 3, these aliens are not provided the opportunity to seek asylum or statutory withholding of removal. *See id.* If the alien manifests fear, CBP officers will refer him to USCIS for a CAT assessment. *Id.* Based on the outcome of the CAT assessment, CBP officers will further process the alien for removal, immigration proceedings, or further detention, as appropriate.

### III.    This Lawsuit and Motion.

On February 3, 2025, three organizations that provide services to immigrants filed this suit challenging the Proclamation and its implementation. ECF 1. Defendants moved to dismiss the Complaint on various threshold grounds, ECF 10, and Plaintiffs responded by amending their complaint to add thirteen Individual Plaintiffs. ECF 11.

The Amended Complaint argues the Proclamation and its implementation violate various provisions of the INA and the Administrative Procedure Act (APA). As relevant here, the Complaint asserts that the Proclamation, along with the decisions to implement it and any implementation guidance, violate the INA, the Trafficking Victims Protection Reauthorization Act (TVPRA), and the Foreign Affairs and Reform and Restructuring Act of 1998 (FARRA), exceed statutory and constitutional authority, and violate separation of powers by allowing for summary removal of aliens within the United States without invoking procedures to screen for entitlement to asylum, statutory withholding of removal, and CAT protection. Am. Compl. (ECF 11) ¶¶ 111–131, 144–160 (Claims 1–5, 8–10). The Amended Complaint also argues that the agency Defendants' decision to implement the guidance, and its implementation guidance, are contrary to

law and arbitrary and capricious under the APA, *id.* ¶¶ 132–138 (Claim 6), and were adopted without compliance with the APA's rulemaking requirements, *id.* ¶¶ 139-143 (Claim 7). The Amended Complaint asks the Court to declare *all* aspects of the Proclamation and "all implementing agency guidance documents and other agency actions implementing the Proclamation" unlawful, to enjoin the Proclamation's implementation in all respects, and to vacate all agency guidance documents implementing the Proclamation. *Id.* at p. 39, Prayer for Relief ¶¶ (a)-(c). It also seeks to "enjoin Defendants from . . . relying on removal orders issued pursuant to the Proclamation" and to facilitate the Individual Plaintiffs' return to the United States at the government's expense. *Id.* ¶ (b)(2).

The same day they filed their Amended Complaint, Plaintiffs moved for a preliminary injunction seeking slightly narrower relief than that set forth in the Amended Complaint. Mot. for Prelim. Inj. (ECF 14). That motion sought to prohibit Defendants from implementing or enforcing the Presidential Proclamation to restrict statutory protections to aliens who are physically present in the United States and from "relying on any removal orders issued to noncitizens[3] pursuant to the Proclamation." ECF 14 at 1, 39. They concurrently filed the instant motion for class certification, seeking to certify a class of "[a]ll noncitizens who were, are, or will be subject to the Proclamation and/or its implementation within the United States." Mot. for Class Certification (ECF 13) (hereafter, "Mot.") at p. 2. Plaintiffs also filed an emergency motion to stay the removal of the Plaintiffs who were still in the United States, and Defendants subsequently agreed not to employ the provisions of the Proclamation in removing from the United States any of the

---

[3] Plaintiffs use the term "noncitizen," which Defendants understand to be synonymous with the statutory term "alien" defined in 8 U.S.C. § 1101(3).

Individual Plaintiffs who had not already been removed (Plaintiffs A.M., Z.A., T.A., A.T., B.R., M.A., and G.A). *See* Order (ECF 23) at pp. 2-3.

The Parties then jointly proposed to consolidate the hearing on Plaintiffs' motion for a preliminary injunction with the merits of the case and to convert that motion into a motion for summary judgment. Joint Status Report (ECF 24) at pp. 2, 3. Plaintiffs also agreed to hold in abeyance any claims based on the administrative record, namely the portions of their Sixth Claim that raised arbitrary-and-capricious arguments under the APA, *see* Am. Compl. ¶¶ 133, 138, and all of the Seventh Claim, *see id.* ¶¶ 139-143. On February 26, 2025, the Court adopted the Parties' Proposal.

## IV.    The Individual Plaintiffs

The Individual Plaintiffs (or Named Plaintiffs) who seek to represent the class all illegally entered the United States between ports of entry and were encountered and apprehended by USBP agents. None entered, or sought to enter, at a port of entry. Several had already been removed or repatriated at the time they filed their complaint and motion for class certification.

Plaintiffs A.M., Z.A., T.A., and A.T. are a family originally from Afghanistan who entered the United States on or around February 3, 2025, by crossing the border illegally from Mexico. *See* Am. Compl. ¶ 12; *see also* A.M. Decl. ¶ 9. USBP encountered the family on February 3, 2025, and initially processed them by issuing them a Notice to Appear in removal proceedings under 8 U.S.C. § 1229a. *See* Ex. C, Hollinder Decl. ¶ 4. The Notices to Appear were then either cancelled or the pending removal proceedings dismissed, and the family members were issued orders of expedited removal (Forms I-860) pursuant to the Proclamation. *Id.* A Form I-860 is entitled "Notice and Order of Expedited Removal" and states that the alien is being removed pursuant to

8 U.S.C. § 1225(b)(1). *See* Form I-860 (Rev. 08/01/07), at https://www.ice.gov/doclib/detention/checkin/ER_I_860.pdf (last visited March 24, 2025).

Plaintiff N.S., who is from Ecuador, entered the United States on or around January 26, 2025, by crossing the border illegally. *See* Am. Compl. ¶ 13. USBP encountered N.S. on January 27, 2025. *See* Ex. C, Hollinder Decl. ¶ 5. She was issued an order of expedited removal, Form I-860, pursuant to the Proclamation, was transferred to the custody of U.S. Immigration and Customs Enforcement (ICE), and was repatriated to Ecuador on February 19, 2025. *Id.*; Ex. G, Decl. of Tracy J. Huettl ¶ 21.

Plaintiff D.G. had previously entered the United States and received an order of expedited removal on July 19, 2024. Ex, C, Hollinder Decl. ¶ 6. He again entered the United States on January 21, 2025, by crossing the border illegally and was encountered by USBP the same day. *See* Am. Compl. ¶ 14; Ex. C, Hollinder Decl. ¶ 6. D.G. was charged with illegal re-entry and his removal order was reinstated. Am. Compl. ¶ 14; Ex. C, Hollinder Decl. ¶ 6. D.G. was removed to Mexico on February 7, 2025, pursuant to his reinstated removal order. *See id.* ¶ 6.

 Plaintiff B.R. left her home country of Ecuador and entered the United States on or around January 26, 2025, by crossing the border illegally. *See* Am. Compl. ¶ 15. USBP apprehended B.R. on or about January 27, 2025, and processed her for expedited removal pursuant to the Proclamation. Ex. C, Hollinder Decl. ¶ 7.

Plaintiff M.A. and his wife, who are originally from Egypt, entered the United States in January 2025 by crossing the border illegally. *See* Am. Compl. ¶ 16; *see also* M.A. Decl. ¶¶ 7–9. USBP encountered M.A. on January 24, 2025, and processed him for expedited removal pursuant to the Proclamation. Ex. C, Hollinder Decl. ¶ 8.

Plaintiff G.A. left her home country of Brazil to go to Mexico, then entered the United States by crossing the border illegally on or about February 1, 2025. *See* Am. Compl. ¶ 17; *see also* G.A. Decl. ¶¶ 1, 9, 12. USBP encountered her the same day and processed her for expedited removal pursuant to the Proclamation. Ex. C, Hollinder Decl. ¶ 9.

Plaintiffs F.A., K.A., and Y.A. left their home country of Turkey and crossed the border illegally into the United States on February 3, 2025. *See* Am. Compl. ¶ 18; *see also* F.A. Decl. ¶¶ 1, 9–10. They were apprehended by USBP on February 4, 2025. Ex. C, Hollinder Decl. ¶ 10. They were initially processed for Notices to Appear, which were then cancelled. *Id.* The family was then directly repatriated to a third country, Panama, under 8 U.S.C. § 1182(f), without the issuance of any expedited removal orders. *See id.*

Plaintiff E.G., who is from Peru, crossed the border illegally into the United States on or about February 1, 2025. *See* Am. Compl. ¶ 19; *see also* E.G. Decl. ¶¶ 1, 9–11. He was apprehended by USBP that same day and repatriated to Peru on February 13 after being issued an expedited removal order pursuant to the Proclamation. Ex. C, USBP Hollinder Decl. ¶ 11; Ex. G Decl. of Huettl Decl. ¶¶ 6, 8; *see also* E.G. Decl. ¶¶ 11, 14.

## STANDARD

The class action "is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979)). To fall within this narrow exception, Plaintiffs must "affirmatively demonstrate" their compliance with each element of Rule 23—"that is, [they] must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores*, 564 U.S. at 350; *see also McCarthy v. Kleindienst*, 741 F.2d 1406, 1414 n. 9 (D.C. Cir. 1984) ("It is the party seeking class

certification that bears the burden of establishing the class action requirements."). This is not just a "mere pleading standard." *Id.* "[A]ctual, not presumed, conformance" with Rule 23 is "indispensable," *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 161 (1982), and certification is proper only if the Court is satisfied "after a rigorous analysis" that Plaintiffs have shown that each requirement of the Rules has been met. *Wal-Mart Stores*, 564 U.S. at 350–51.

Thus, Plaintiffs must demonstrate each element of Rule 23(a) is met: (1) the class is so numerous that joinder is impractical ("numerosity"); (2) there are questions of law or fact common to the class ("commonality"); (3) the claims or defenses of the Named Plaintiffs are typical of claims or defenses of the class ("typicality"); and (4) the Named Plaintiffs and counsel will fairly and adequately protect the interests of the class ("adequacy of representation"). Fed. R. Civ. P. 23(a).

To satisfy the commonality element, identifying one or more common questions is not enough. "It is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation" that makes a case appropriate for class treatment. *Wal-Mart Stores*, 564 U.S. at 350 (emphasis in original).

In addition to meeting the requirements set forth in Rule 23(a), the proposed class must also qualify under Rule 23(b)(1), (2), or (3). *AmChem Prods. V. Windsor*, 521 U.S. 591, 614 (1997). Plaintiffs seek certification under Federal Rule of Civil Procedure 23(b)(2), which permits certification where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "The key to the (b)(2) class is the individual nature of the injunctive or declaratory remedy warranted—the notion that the

conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Wal-Mart Stores*, 564 U.S. at 360.

## ARGUMENT

**I.      The Class is Impermissible Because it Includes, or Potentially Includes, Individuals Who Have Not Suffered, or Will Not Suffer, the Same Injury and Whose Claims Are Statutorily Precluded from Class Treatment.**

Courts in this District interpret Rule 23 as imposing a "requirement that a class be clearly defined." *Pigford v. Glickman*, 182 F.R.D. 341, 346 (D.D.C. 1998). This requirement ensures that the class is "neither amorphous, nor imprecise." *Lewis v. Nat'l Football League*, 146 F.R.D. 5, 8 (D.D.C. 1992). "A class sought to be certified under Rule 23(b)(2) must "accurately articulate[] the general demarcations of the class of individuals who are being harmed." *Thorpe v. District of Columbia*, 303 F.R.D. 120, 139 (D.D.C. 2014). A class definition may be fatally overbroad if it "sweeps within it persons who could not have been injured by the defendant's conduct." *Ross v. Lockheed Martin Corp.*, 267 F. Supp. 3d 174, 191 (D.D.C. 2017) (quoting *Kohen v. Pac. Inv. Mgmt. Co. LLC*, 571 F.3d 672, 677 (7th Cir. 2009)). Having an inadequately defined or overbroad class often implicates multiple Rule 23 requirements, including typicality, commonality, and the standards for certifying an injunctive-relief class under Rule 23(b)(2).

Here, Plaintiffs seek certification of a class of "[a]ll noncitizens who were, are, or will be subject to the Proclamation and/or its implementation within the United States." Mot. at 2. This class is overbroad for several reasons, in part because the term "subject to the Proclamation" is not sufficiently defined for purposes of resolving the proposed class claims. That proposed class includes numerous individuals who have not suffered the injury Plaintiffs claim as a result of the

Proclamation, or whose claimed injury cannot be redressed by the relief Plaintiffs seek.[4] Additionally, the class includes numerous aliens who received expedited removal orders issued under 8 U.S.C. § 1225(b)(1) pursuant to the Proclamation, and whose challenges to those removal orders Congress has precluded from class certification.

First, the class is overbroad to the extent it includes those who were subject to the Proclamation in the past but have already been repatriated or removed, like proposed representative Plaintiffs D.G., F.A., K.A., Y.A., E.G., and N.S. Plaintiffs do not explain how the relief they seek would benefit these Individual Plaintiffs or other aliens similarly situated to them who have already been repatriated or removed. They are no longer in the United States, and thus prospective relief from future implementation of the Proclamation or unspecified relief precluding the Defendants from relying on their removal orders, if any, will not redress their claimed injury. *See also infra* § III(A) (demonstrating that Rule 23(b)(2) cannot support certification because those who have already been removed or repatriated would not benefit from the same injunction as those who have not). Moreover, because the Individual Plaintiffs who are no longer in the United States lack standing to obtain the relief sought, as argued in Defendants' concurrently-filed motion for summary judgment, *see* Defs.' Mot. for Summ. J. Arg. § I(A), they cannot represent a class of similarly situated individuals (who likewise lack standing). *See O'Shea v. Littleton*, 414 U.S. 488,

---

[4] As set forth below, these same defects defeat commonality and typicality as well as adequacy of representation and the propriety of an injunctive relief class under Rule 23(b)(2), demonstrating that the need for a clearly defined, cohesive class is inherent in Rule 23's various requirements. Thus, the D.C. Circuit's statement that "courts should stick to Rule 23's specified requirements when making class certification decisions," *In re White*, 64 F.4th 302, 314 (D.C. Cir.), *cert. denied sub nom. Hilton Hotels Ret. Plan v. White*, 144 S. Ct. 487 (2023), does not preclude district courts from evaluating whether the class definition is overbroad and insufficiently definite. This is particularly true given that one threshold issue discussed in this Section—whether Congress has precluded certification of certain class claims—involves a statutory command that supersedes Rule 23 and does not fit neatly within Rule 23's contours.

494 (1974) ("[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class."); *Warth v. Seldin*, 422 U.S. 490, 502 (1975) ("Petitioners must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent."); *Johnson v. D.C.*, 248 F.R.D. 46, 56 (D.D.C. 2008) (declining to certify Rule 23(b)(2) classes where the Plaintiffs lacked standing to seek prospective injunctive relief).

Second, the class is overbroad and ill-defined because the term "subject to the Proclamation" is not sufficiently definite. As a result, the class includes people who do not share in the claimed class injury resulting from the Proclamation—an inability to be assessed for potential eligibility for asylum or other forms of relief or protection before removal. *See* Mot. at 7, 8 (asserting that the classwide injury is "loss of the right to seek asylum and related relief" and "removal without statutorily mandated opportunities to seek protection"); *Wal-Mart Stores*, 564 U.S. at 348 ("[A] class representative must . . . possess the same interest and suffer the same injury as the class members.").[5]

As one example, the class includes aliens who do not claim or manifest fear of return and thus cannot claim that the Proclamation has caused them to lose any statutory protections they otherwise would have had. Even if the Proclamation did not exist, those aliens would currently be subject to expedited removal without referral under the pre-existing *Securing the Border* rule and related procedures, because they did not manifest fear to trigger any screening for potential

---

[5] As set forth above and in Defendants' motion for summary judgment, the Proclamation does not preclude assessment for claims to protection under the CAT. *See supra* at 9-10; Defs.' Mot. for Summ. J. (filed concurrently) at Arg. § II(D).

eligibility for asylum, withholding of removal, or protection under CAT. 89 Fed. Reg. at 48,718, 48,713, 48,739-45; *see* 8 C.F.R. §§ 208.35(b)(2), 235.15.

In fact, even if such aliens did manifest fear, most aliens who cross the southern land border illegally at this time would already be ineligible for asylum under the *Securing the Border* rule outside of certain narrow exceptions that apply to circumstances Plaintiffs do not allege here. *See id.* § 208.35(a). [6] And some aliens are not injured by the Proclamation because they would ultimately be deemed ineligible for asylum or withholding of removal for other reasons—such as having reinstated removal orders or having previously committed certain disqualifying crimes or raising a national security concern. *See* 8 U.S.C. §§ 1231(a)(5), (b)(3)(B), 1158(a)(2), (b)(2). The Proclamation can thus only assist in expediting these aliens' repatriation or removal, and they do not suffer the same legal injury asserted by those who are potentially eligible for relief or protection from removal.

And some aliens who fall in this category will not even be processed under the Proclamation. For example, Individual Plaintiff D.G.'s prior order of removal was reinstated, which means he was not even processed under the Proclamation and, in any event, he was already ineligible to seek asylum under 8 U.S.C. § 1231(a)(5) due to his reinstated removal order. *See supra* at 14. These categories of individuals are not injured by the Proclamation's restrictions on the ability to invoke these INA provisions and should not be part of a class seeking to enjoin those restrictions.

---

[6] Even if the alien did not enter during a period of emergency border circumstances such that the *Securing the Border* rule does not apply, certain aliens who cross the border illegally before May 12, 2025 would be presumptively ineligible for asylum under the *Circumvention of Lawful Pathways* rule, 8 C.F.R. § 208.33.

Another category of proposed class members who are not injured by the Proclamation are UACs. The implementing guidance makes clear that UACs are not subject to restrictions or removal under the Proclamation and will be processed in accordance with the TVPRA. *See, e.g.*, Ex. A, Updated Field Guidance for Southern Border (Feb. 4, 2025). Indeed, no Named Plaintiff is a UAC, so there is no Individual Plaintiff who can represent UAC interests at all, let alone adequately.

More broadly, the precise procedures for implementing the Proclamation could change in the future in ways that are material to the proposed class members' claims and claimed injuries, such that those who are subject to the Proclamation in the future will have materially different interests or claims to relief. Thus, describing class members as "subject to the Proclamation" is insufficiently precise to support a class, because it cannot be determined whether the Individual Plaintiffs' claims are typical of those who will be "subject to the Proclamation" in the future. *See Rahman v. Chertoff*, 530 F.3d 622, 627 (7th Cir. 2008) (holding that class that did not account for differences in procedures challenged is improper and runs afoul of Rule 23(a)(2)'s typicality requirements).

In sum, the breadth of the proposed class—which brings in everyone who is conceivably "subject to the Proclamation," including those who are not injured by the Proclamation or who are not even processed under its terms—means the claims of the proposed class are too disparate to be measured at once. And this precludes a finding of commonality and typicality among the asserted class claims. *See infra* § II; *cf. AmChem Prods.*, 521 U.S. at 626 (named parties with diverse medical conditions were not adequate representatives of a single class because the "the interests of those within the single class are not aligned).

<u>Third</u>, the proposed class is overbroad because it includes aliens—including most of the

Individual Plaintiffs—who received expedited removal orders or were subject to expedited removal procedures under 8 U.S.C. § 1225(b). Congress has expressly precluded class certification where claims relate to expedited removal orders, and the Court thus cannot permissibly certify a class that includes such claims.

Expedited removal is still used in conjunction with the Proclamation's implementation, under the Proclamation's authority. The relevant guidance provides that aliens encountered between ports of entry who are subject to the Proclamation may be processed for expedited removal or for direct repatriation under Section 1182(f). *See* Ex. A, Updated Field Guidance for Southern Border (Feb. 4, 2025); Ex. D, Updated 212F Third Country (Feb. 19, 2025).

The claims asserted by those aliens subject to expedited removal orders issued in conjunction with the Proclamation's suspension on entry are limited by the jurisdictional provisions of 8 U.S.C. § 1252. In that section, Congress provided that there is no judicial review of any claims "arising from or relating to the implementation or operation of an order of removal pursuant to section 1225(b)(1)" or involving "the application of such section to individual aliens," except as provided § 1252(e). And Section 1252(e)(1)(B) provides that "no court may . . . certify a class under Rule 23 of the Federal Rules of Civil Procedure in any action for which judicial review is authorized under . . . this subsection." 8 U.S.C. § 1252(e)(1)(B). The claims in the Complaint ultimately challenge the application of removal procedures to members of the proposed class and the validity of their expedited removal orders. Accordingly, Section 1252(e)(1)(B)'s bar on class certification applies to the claims of any Individual Plaintiff or proposed class member who was processed for an expedited removal order under Section 1225(b).

Indeed, Congress has also limited the relief available for the claims of those Plaintiffs and proposed class members who are subject to expedited removal orders. The exclusive means of

securing any equitable relief from an expedited removal order would be through limited individual habeas proceedings under Section 1252(e)(2) in the district of confinement seeking to obtain placement in removal proceedings before an immigration judge. *See* 8 U.S.C. § 1252(e)(2), (4). Again, even if these Plaintiffs' and proposed class members' claims could be entertained in this action, Congress has precluded such claims from class treatment. *Id.* § 1252(e)(1)(B). Aliens subject to expedited removal procedures may also challenge those procedures in this District under the terms of Section 1252(e)(3), provided they have standing to do so. *See* Am. Compl. ¶¶ 7–8 (asserting Section 1252(e)(3) as a jurisdictional basis for this lawsuit). But if judicial review of any of Plaintiffs' claims is authorized by Section 1252(e)(3), Section 1252(e)(1)(B) likewise bars class certification. *See O.A. v. Trump*, 404 F. Supp. 3d 109, 158 (D.D.C. 2019) (recognizing class-certification bar of such claims).[7]

This statutory scheme governing review of any claims brought by aliens in expedited removal is firm. Numerous class members are or will be processed under Section 1225(b)(1) and will be subject to expedited removal orders that Plaintiffs seek to invalidate through this action. Congress has clearly barred such claims from class treatment, and Plaintiffs cannot circumvent this bar because their claims are framed as a challenge to the Proclamation. *See Aguilar v. ICE*, 510 F.3d 1, 10 (1st Cir. 2007) (plaintiffs could not "skirt the statutory channel markers by lumping together a melange of claims associated with removal, each of which would be jurisdictionally barred [in district court] if brought alone, and eschewing a direct challenge to any particular removal proceeding"). Congress has explicitly provided that district courts lack jurisdiction to certify a class under Rule 23 of these types of claims:  the Court may not permissibly certify a

---

[7] However, as discussed in Defendants' concurrently-filed Motion for Summary Judgment, there is no source of law under which Plaintiffs can maintain their claims or raise a viable claim under Section 1252(e)(3).

class that includes the claims of those challenging removal orders or expedited removal procedures. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997) ("Rule 23's requirements must be interpreted in keeping with Article III constraints, and with the Rules Enabling Act, which instructs that rules of procedure shall not abridge, enlarge or modify any substantive right.") (cleaned up).

## II. There Are No Common Questions Capable of Driving the Resolution of the Litigation as to the Proposed Class, and the Individual Plaintiffs' Claims are Not Typical of All Class Members' Claims.

For the same reasons that the class is overbroad and ill-defined, commonality and typicality are lacking. Rule 23(a)(2) permits class certification only if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This commonality requirement measures the "relatedness of the entire class's claims." *J.D. v. Azar*, 925 F.3d 1291, 1322 (D.C. Cir. 2019). The typicality requirement under Rule 23(a)(3), for its part, looks to the relatedness of the class representative's individual claims to the claims of the entire proposed class. *Id.* The typicality requirement "is concerned with whether 'the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate.'" *Coleman through Bunn v. District of Columbia*, 306 F.R.D. 68, 83 (D.D.C. 2015) (quoting *Wal-Mart Stores*, 564 U.S. at 349). But because both inquiries look to whether the claims of the proposed class are sufficiently inter-related to support class treatment, the "two inquiries tend to merge." *Id.* Here, there are significant differences among the claims of the class members that defeat commonality and, correspondingly, the Individual Plaintiffs' claims are not typical of all those who fall within the broad class definition.

The commonality standard is "easy to misread, since any competently crafted class complaint literally raises common 'questions.'" *Wal-Mart Stores*, 564 U.S. at 349 (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97,

131–32 (2009)). What matters to class certification "is not the raising of common questions, but rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* (internal punctuation omitted). Plaintiffs must show that their claims "depend upon a common contention" "capable of classwide resolution—which means that the determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 350. Commonality is not met here because the proposed class includes disparate groups of people, many of whom suffer no loss of any statutory protections from the Proclamation's implementation, and others whose claims cannot be grouped for purposes of class treatment. Accordingly, resolving the legal questions that Plaintiffs assert will not resolve the claims of each class member in one stroke.

Plaintiffs claim the following questions are common to the proposed class: "whether the Proclamation and its implementation violate statutory removal procedures and protections for asylum seekers; [and] whether [8 U.S.C. §§ 1182(f) or 1185(a)(1)], or Article II and the Invasion Clause, authorize the President to abrogate the statutory protections that Congress enacted in the INA." Mot. at 6.[8] The "statutory protections" referenced appear to be claimed statutory rights under the asylum and withholding of removal statutes, the TVPRA, the FARRA, and statutes governing removal and expedited removal. *See* Am. Compl. ¶¶ 111–131.

These questions are not truly common to the class of aliens within the United States who were, are, or will be subject to the Proclamation. Plaintiffs attempt to distill these questions into

---

[8] Plaintiffs also claim that common questions are whether Defendants provided an adequate justification for their actions and have followed the procedures required by law. However, as Plaintiffs have held their arbitrary-and-capricious and notice-and-comment claims in abeyance, *see* ECF No. 24, no class can or should be certified at this time on the basis of these questions. The named Plaintiffs claims cannot be typical, nor can commonality be based on these claims, when the named Plaintiffs are not moving forward with them at this time. At minimum, any request for certification on such claims should be held in abeyance along with the individual claims.

an overarching framework: whether the Proclamation may lawfully authorize restrictions on access to asylum and statutory withholding of removal for aliens. But, because there are threshold reasons that the legality of such restrictions varies such that many individual aliens' claims would fail if brought individually, "*resolution of each class member's claim*" does not "turn on [this] common question" and "common proof" cannot lead to a "common answer (or answers) to that question for each plaintiff." *See Brown v. D.C.*, 928 F.3d 1070, 1080 (D.C. Cir. 2019). That is because the class has no common claim of entitlement to the claimed statutory protections. To start, only UAC class members would have any entitlement to the protections of the TVPRA, and thus the class lacks commonality on entitlement to those statutory protections, and the Individual Plaintiffs—who are all adults or accompanied children—are not appropriate, typical representatives of UACs.

Non-UAC class members who do not claim or manifest fear of return likewise cannot claim a loss of statutory protections. *See supra* at 19–20. Plaintiffs may argue that it is the loss of the *opportunity* to seek asylum that matters. *See* Mot. at 6. However, there is no statutory entitlement to any processing under Section 1225(b)(1)(B) if an alien does not indicate an intention to seek asylum or fear of persecution, so there is no lost entitlement and no lost opportunity in such a case. The Individual Plaintiffs—who assert that they did claim fear or request asylum—are thus also not typical of those class members who do not indicate an intention to apply for asylum or indicate a fear of persecution. Similarly, proposed class members who lack any entitlement to asylum (like Plaintiff D.G.) and to withholding of removal cannot assert claims challenging the Proclamation because their injury arises instead from other statutes or regulations dictating that lack of eligibility. *See supra* at 20. At a minimum, these class members' claims to statutory entitlement to

apply for certain protections are different from those who at least have an arguable claim to those statutory protections.

Second, "common proof" will not lead to a common answer as to these proffered questions because the different processing available to each class member will dictate whether they can even assert any challenge to the procedures applied to them. The claims of those who are subject to expedited removal procedures are subject to strict limitations on judicial review and relief, *see* 8 U.S.C. §§ 1252(a)(2)(A), (e); *supra* at 22–24, that not only prohibits class certification of their claims but also creates a "variation among [the proposed class members] concerning their ultimate entitlement to relief." *See Azar*, 925 F.3d at 1321. Those class members who have received, or will receive, § 1225(b)(1) expedited removal orders under the Proclamation can only obtain limited habeas review and relief with respect to their expedited removal orders. *See supra* at 22–23. Those same barriers are not applicable to those who are directly repatriated to Mexico or third countries under the Proclamation's authorities—8 U.S.C. §§ 1182(f) and 1185(a), and Article II of the Constitution—without the use of expedited removal orders. Given the statutory barriers to classwide treatment for the first group, the claims of these two groups of aliens cannot "productively litigated at once." *Wal-Mart*, 564 U.S. at 350.

Accordingly, determination of entitlement to judicial review and relief would require examination of individualized facts concerning the precise processing pathway for each claim and the legality of the Proclamation as to each class member would not be based upon common proof. For these same reasons, the Individual Plaintiffs who received expedited removal orders subject to the Proclamation—essentially, everyone except D.G., F.A., K.A., and Y.A.—are not "appropriate representatives" of the class. *See Coleman*, 306 F.R.D. at 83; *see also Howard v. Liquidity Servs. Inc.*, 322 F.R.D. 103, 119 (D.D.C. 2017) ("Class certification is inappropriate

where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation.").

Further, as explained above, there could potentially be future changes to the Proclamation's implementation that would affect the Individual Plaintiffs' ability to represent the claims of a prospective, open-ended class like the one Plaintiffs seek to certify. *See supra* at 21. Thus, even though Plaintiffs assert the same claims as other class members on the same legal theories, those legal questions cannot be resolved on a classwide basis due to these differences among the class. *See also AmChem Prods.*, 521 U.S. at 626 (named parties with diverse medical conditions were not adequate representatives of a broad class where the "the interests of those within the single class are not aligned).

## III.    Plaintiffs' Proposed Class Does Not Satisfy Rule 23(b)(2)'s Requirements.

A class may be maintained under Federal Rule of Civil Procedure 23(b)(2) only if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class." *C.G.B. v. Wolf*, 464 F. Supp. 3d 174, 206 (D.D.C. 2020) (quoting *Wal-Mart*, 564 U.S. at 360 (emphasis added)); *see also In re Navy Chaplaincy*, 306 F.R.D. 33, 56 (D.D.C. 2014) (holding class not maintainable under Rule 23(b)(2)).

### A.    A "Single Injunction" Cannot Provide Relief to Each Member of the Class.

"By virtue of its requirement that the plaintiffs seek to redress a common injury ... Rule 23(b)(2) operates under the presumption that the interests of the class members are cohesive." *Lemon v. Int'l Union of Operating Engr's, Local No. 139, AFL–CIO,* 216 F.3d 577, 580 (7th Cir. 2000); *Lightfoot v. D.C.*, 273 F.R.D. 314, 329 (D.D.C. 2011). As noted, the key to a (b)(2) class is

that "the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Wal-Mart Stores*, 564 U.S. at 360. Plaintiffs say that the relief they seek "would prevent Defendants from applying the Proclamation to every member of the proposed class 'in one stroke.'" Mot. at 10. However, their proposed class includes those who were subject to the Proclamation in the past and who have already been removed or repatriated in accordance with the Proclamation's terms. A prospective injunction of the Proclamation's application would not redress those Plaintiffs' and class members' claims. Because "a single injunction or declaratory judgment" would not provide relief to those who were subject to the Proclamation in the past as well as to those who are currently or prospectively subject to the Proclamation, *see C.G.B.*, 464 F. Supp. 3d at 206, the proposed class cannot be certified or maintained under Rule 23(b)(2).[9]

## B.   There is No Available Injunctive Relief to Enforce Requirements of Section 1225(b).

Plaintiffs' injunctive-relief class does not satisfy Rule 23(b)(2) for the additional reason that the Court does not have the authority to award classwide coercive relief due to the limitations on classwide injunctive relief in 8 U.S.C. § 1252(f)(1). "[F]inal injunctive relief or corresponding declaratory relief" is thus not available to support the proposed class. *See* Fed. R. Civ. P. 23(b)(2).

Section 1252(f)(1) provides:

Regardless of the nature of the action or claim or of the identity of the party or parties bringing the action, no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of provisions of part IV of this subchapter, as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996,[10] other than with respect to the application of such

---

[9] Additionally, these divisions among the class and the different forms of relief sought raise adequacy concerns under Rule 23(a)(4). *See Amchem Prods.*, 521 U.S. at 610–11, 626.

[10] This reference to "the provisions of part IV of this subchapter, as amended by [IIRIRA]" is often cited as referring to 8 U.S.C. §§ 1221-1232, or part IV of subchapter II of Title 8 of the U.S. Code.

provisions to an individual alien against whom proceedings under such part have been initiated.

8 U.S.C. § 1252(f)(1). This provision consists of two halves: (1) a general rule that courts lack jurisdiction "to enjoin or restrain the operation" of the specified provisions "[r]egardless of the nature of the action or claim," and (2) an exception for "the application of such provisions to an individual alien." *Id.* In other words, Section 1252(f)(1) "prohibits lower courts from entering injunctions that order federal officials to take or to refrain from taking actions to enforce, implement, or otherwise carry out the specified statutory provisions," *Garland v. Aleman Gonzalez*, 596 U.S. 543, 550 (2022), except in "individual cases" of aliens already in immigration proceedings, *Reno v. Am.-Arab Anti-Discrimination Comm.* (*AADC*), 525 U.S. 471, 481–82 (1999). The injunction Plaintiffs seek in this case falls within the ambit of Section 1252(f)(1).

Plaintiffs ask this Court to "[e]njoin Defendants from implementing or enforcing the Proclamation," Am. Compl. at 44, which they contend would remedy the government's alleged noncompliance "with the procedures required for regular removal proceedings under 8 U.S.C. § 1229a or expedited removal proceedings under Section 1225(b)," Am. Compl. ¶ 81. But Section 1252(f)(1) bars this relief to the extent it would compel the government to initiate removal proceedings under Section 1229a or credible fear interviews under Section 1225.

Enjoining the implementation or enforcement of the Proclamation by requiring it to provide the claimed statutory protections would compel DHS to provide aliens with credible fear interviews under Section 1225 or removal proceedings under Section 1229a (both of which

---

*See, e.g.*, *Garland v. Aleman Gonzalez*, 596 U.S. 543, 549 (2022). However, the text of the statute as enacted referred to "chapter 4 of title II" of the INA, which is not completely coextensive with "part IV of this subchapter" as set forth in the codified version of the statute. *See Moreno Galvez v. Jaddou*, 52 F. 4th 821, 830 (9th Cir. 2022)). The statutory provisions at issue here—8 U.S.C. §§ 1225, 1229a and 1231 (INA §§ 235, 240, and 241)—are all contained in "chapter 4 of title II" of the INA and thus covered by § 1252.

provisions are covered by Section 1252(f)(1)). Such a blanket injunction would compel immigration officers to "refer . . . alien[s]" in expedited removal "for an interview by an asylum officer." 8 U.S.C. § 1225(b)(1)(A)(ii). It would compel asylum officers to "conduct interviews of aliens," *id.* § 1225(b)(1)(B)(i), and if the aliens are determined to have a credible fear, to "detain[]" them "for further consideration of the application for asylum" in proceedings before an immigration judge, *id.* § 1225(b)(1)(B)(ii). Or it would compel DHS to place aliens in full removal proceedings to attempt to satisfy their "burden of proof to establish" they warrant relief from removal. *Id.* § 1229a(c)(4)(A). Compelling immigration officers to operate these provisions in such a manner—or any specific manner—is precisely what Congress prohibited. *See Aleman Gonzalez*, 596 U.S. at 550 (Section 1252(f)(1)'s prohibition applies "not just to the statute itself but to the way that it is being carried out"); *see also Jennings v. Rodriguez*, 583 U.S. 281, 313 (2018) (section 1252(f)(1) "prohibits federal courts from granting classwide injunctive relief against the operation of §§ 1221-1232."); *Nken v. Holder*, 556 U.S. 418, 431 (2009) (describing section 1252(f)(1) as "a provision prohibiting classwide injunctions against the operation of removal provisions."); *Reno* v. *American-Arab Anti-Discrimination Committee* (*AADC*), 525 U.S. 471 (1999) ("[Section 1252(f)(1)] prohibits federal courts from granting classwide injunctive relief against the operation of §§ 1221-123[2].)

The term "operation," in this context, is synonymous with execution, enforcement, or implementation. *See*, *e.g.*, *Webster's Third New International Dictionary* 1581 (1993) ("method or manner of functioning"). Section 1252(f)(1) therefore prohibits injunctions that restrain the Executive's implementation of the immigration laws, even when the basis for the lawsuit is that the Executive has purportedly misinterpreted the relevant provisions, as Plaintiffs seem to allege here. *Aleman Gonzalez*, 596 U.S. at 552. The Supreme Court concluded "even injunctions that

31

'enjoin or restrain' the 'unlawful' or 'improper operation,' *i.e.*, violations, of § 1252(f)(1)'s covered provisions clash with that statute's remedy bar." *Id.*; *see also Hamama v. Adducci*, 912 F.3d 869, 879–80 (6th Cir. 2018) (rejecting as "implausible on its face" the argument that that Section 1252(f)(1) permits injunctions which seek to "ensure [the covered provisions] are correctly enforced").

Plaintiffs may argue in reply that class certification under Rule 23(b)(2) is permissible because the relief they seek is not an injunction against the covered INA provisions. That argument has already been considered and persuasively rejected by a district judge in the Southern District of California. In the *Al Otro Lado* litigation, a district court considered whether to enjoin, as a remedy for asserted violations of Sections 1158 and 1225, CBP's practice of regulating the pace at which undocumented aliens entered the ports of entry along the U.S.-Mexico border. *See, e.g.*, *Al Otro Lado v. Mayorkas*, 619 F. Supp. 3d 1029, 1034–35 (S.D. Cal. 2022). Although the court held CBP's practice unlawful, it nevertheless concluded it could not enjoin the practice because such an order would compel the government to discharge its obligations under Section 1225. The court reasoned:

> Although § 1158 and § 1225 in no uncertain terms impose upon [DHS and CBP] a mandatory ministerial duty to inspect and refer asylum seekers in the process of arriving at Class A POEs, *Aleman Gonzalez* appears to suggest that Defendants have *carte blanche* to refuse to do so, as long as they present to a lower court a *claimed* ground for their refusal, even if a federal court ultimately finds that basis meritless.

*Id.* at 1044.

So too here. Although Plaintiffs seek a blanket injunction against the implementation or enforcement of the Proclamation, that relief would compel the government to operate multiple covered INA provisions in a specific manner, and it would do so as to more than "an individual alien against whom proceedings . . . have been initiated." 8 U.S.C. § 1252(f)(1). Indeed, this is

precisely the relief Plaintiffs seek. The "protections" Plaintiffs seek to enforce through this relief include withholding of removal under 8 U.S.C. § 1231(b)(3)(A), and access to removal proceedings under 8 U.S.C. § 1229a or expedited removal under 8 U.S.C. § 1225,[11] where aliens may raise various claims for relief or protection from removal, including asylum or CAT protection. *See* Am. Compl. ¶¶ 115-118 (alleging the Proclamation violates 8 U.S.C. § 1231(b)(3)); *id.* ¶¶ 119-122 (alleging violations of the United States' CAT obligation, which is implemented in credible fear or removal proceedings under Sections 1225(b) or 1229a); *id.* ¶¶ 123-126 (alleging violations of 8 U.S.C. § 1232(a)(5)(D) concerning right to removal proceedings); *id.* ¶¶ 127-131 (alleging violations of various provisions of Sections 1225 and 1229a).[12] Consequently, this Court may not enjoin the implementation or enforcement of the Proclamation as it pertains to Sections 1225, 1229a, or 1231. And because the Court cannot provide universal relief to the class, it cannot certify the class.

Plaintiffs also may argue that they meet the requirements of Rule 23(b)(2) because even if the injunctive relief they seek is barred under Section 1252(f)(1), the declaratory relief they seek is not. But on its face, section 1252(f)(1) is not limited to injunctions. Instead, it prohibits lower-court orders that "enjoin *or restrain*" the Executive Branch's operation of the covered provisions. 8 U.S.C. § 1252(f)(1) (emphasis added). The common denominator of those terms is that they involve coercion. *See* Black's Law Dictionary 529 (6th ed. 1990) ("[e]njoin" means to "require," "command," or "positively direct" (emphasis omitted)); *id*. at 1314 ("[r]estrain" means to "limit"

---

[11] DHS has discretion whether to place an alien in expedited removal or full removal proceedings. *See Matter of E-R-M-*, 25 I. & N. Dec. 520, 521–24 (BIA 2011).

[12] Thus, although the asylum statute (at 8 U.S.C. § 1158) and FARRA are not covered by Section 1252(f)(1), that is immaterial because Plaintiffs are immediately seeking to enforce procedures under Section 1225(b), which is incorporated by reference into the provision allowing aliens to apply for asylum, *see* 8 U.S.C. § 1158(a)(1), and under Section 1229a.

or "put compulsion upon" (emphasis omitted)). Together, they indicate that a court may not impose coercive relief that "interfere[s] with the government's efforts to operate" the covered provisions in a particular way. *Aleman Gonzalez*, 596 U.S. at 551. To the extent Plaintiffs seek any relief that they contend would require the government to implement procedures under covered provisions, that relief would be barred by Section 1252(f)(1). *See Hamama*, 912 F.3d at 880 n.8 (While "declaratory relief will not always be the functional equivalent of injunctive relief…in this case it is the functional equivalent."). Indeed, the Supreme Court has left open the question of whether declaratory relief is coercive such that it is barred by Section 1252(f)(1). *Biden v. Texas*, 597 U.S. 785, 839 (2022) (Barrett, J., dissenting) (noting the Supreme Court "reserves the question whether Section 1252(f)(1) bars declaratory relief"). Thus, although declaratory relief is generally non-coercive, if Plaintiffs intend to use declaratory relief as an injunction to benefit the class, Section 1252(f)(1) must prohibit that relief.

Moreover, even if standalone declaratory relief is not barred by Section 1252(f)(1) in this instance, the class cannot be sustained based solely upon request for declaratory relief because the text of Rule 23 allows class certification only where a court can grant "*corresponding* declaratory relief." The Advisory Committee defines "corresponding declaratory relief" as any remedy that "as a practical matter . . . affords injunctive relief or serves as a basis for later injunctive relief." Fed. R. Civ. P. 23(b)(2) Advisory Committee Note to 1996 Amendment; *see also* 7AA Fed. Prac. & Proc. Civ. § 1775 (3d ed.). This definition makes clear that the purpose of the Rule 23(b)(2) class was to enjoin certain action or inaction on a classwide basis and that any anticipated declaratory relief issued under this provision should be equivalent to an injunction to satisfy the requirements of class certification. *See id.*; *see also Coca-Cola Bottling Co. of Elizabethtown, Inc. v. Coca-Cola Co.*, 98 F.R.D. 254, 271 (D. Del. 1983) (refusing to certify a Rule 23(b)(2) class

where "[d]etermination of the [] issues would not result in corresponding declaratory relief that would have the effect of enjoining the defendant from acting in the future"); *Sibley v. Diversified Collection Servs., Inc.*, No. 396-cv-0816, 1998 WL 355492, *4 (N.D. Tex. June 30, 1998) (under Rule 23(b)(2), "the declaratory judgment should be the equivalent of an injunction") (internal citations omitted). Because Rule 23(b)(2) allows only declaratory relief that has the same practical effect as an injunction, and Section 1252(f) prevents Plaintiffs from obtaining any relief that has same effect as an injunction, Plaintiffs cannot meet the requirements for certification under Rule 23(b)(2).

The Supreme Court in *Jennings* echoed this point when it suggested that if 8 U.S.C. § 1252(f)(1) prohibits classwide injunctive relief, then it may equally prohibit corresponding declaratory relief. *See Jennings*, 583 U.S. at 313 ("[I]f the Court of Appeals concludes that it may issue only declaratory relief, then the Court of Appeals should decide whether that remedy can sustain the class on its own" in light of Rule 23(b)(2)'s language concerning "*corresponding*" relief) (emphasis in original). Thus, any declaratory judgment here would be limited to stand-alone declaratory relief, which is not contemplated by Rule 23(b)(2).

This conclusion is reinforced by a recent district court decision in *Onosamba-Ohindo v. Searls*, 678 F. Supp. 3d 364, 367 (W.D.N.Y. 2023), which addressed whether class certification remained appropriate in light of the unavailability of injunctive relief. There, the district court had certified a class comprised of immigration detainees defined as: "All individuals currently detained at the Buffalo Federal Detention Facility under § 1226(a) who will have a custody hearing before the Batavia or Buffalo Immigration Courts." *Id*. Following *Aleman Gonzalez*, the government moved to decertify on the following basis: (1) the court certified the class only for purposes of injunctive relief, and injunctive relief is no longer available; (2) because there could

be no class-wide injunctive relief, there can be no 'corresponding' declaratory relief; and (3) post-*Aleman Gonzalez*, the Court cannot issue a declaratory order that would provide relief to each member of the class. *Id*. at 371. The *Onosamba-Ohindo* court concluded that, in light of *Aleman Gonzalez*, it was not able to issue an indivisible injunctive or declaratory remedy and decertified the class. *Id*.

The court's order is instructive. After concluding that although *Aleman Gonzalez* forbids an injunctive remedy, the court was not forbidden from issuing a declaratory remedy under the terms of 8 U.S.C. § 1252(f)(1), the court proceeded to determine whether certification was still appropriate in light of this change in the available relief. The court began with clarifying the question before it, explaining that for purposes of determining whether certification was still appropriate, "the relevant question is whether the Court could, in this case, issue an indivisible declaratory judgment that would satisfy these requirements." *Id*. at 371. The court found that the answer to this question was no, because "[a]s Class Petitioner concedes," the "Court's issuance of the proposed declaration would not compel the government to operate the relevant statute in any particular way." *Id*. The court noted that "the government would not be required—as it was by the Court's preliminary injunction—to provide bond hearings that complied with the procedures outlined by the Court." Instead, armed with the declaration that could be issued in the case, "individual class members would still need to bring individual habeas corpus petitions, but could in those petitions invoke prior class-wide declaratory relief as one element in establishing their entitlement to *individual* injunctive relief." *Id*. (cleaned up, emphasis in original).

The court explained the problems with this procedure: the declaration would constitute an improper advisory opinion, because it would not "*affect the behavior of the defendant towards the plaintiff*." *Id*. (quoting *Hewitt v. Helms*, 482 U.S. 755, 761 (1987) (emphasis in original)). Instead,

the "requested declaration would instead be relied upon by individual class members in hypothetical future litigation, in which those individual class members would be asking different courts to compel the government to conduct bond hearings in a particular manner based on issue preclusion." *Id*. And, as another judge observed, "it would be silly to allow class-wide injunctions as long as plaintiffs use two steps—a class action for declaratory relief followed by individual injunction actions—instead of one." *Alli v. Decker*, 650 F.3d 1007, 1020 (3d Cir. 2011) (Fuentes J., dissenting).

Fundamentally, this is a question of redressability, which was addressed in Justice Gorsuch's recent concurrence in *United States v. Texas*, 599 U.S. 670, 686 (2023). The concurrence observed that a court does not "measure redressability by asking whether a court's legal reasoning may inspire or shame others into acting differently." *Id*. at 691. Rather, "we measure redressability by asking whether a court's judgment will remedy the plaintiff's harms." *Id.* Justice Gorsuch explained that as the Supreme Court "recently put it: 'It is a federal court's judgment, not its opinion, that remedies an injury; thus it is the judgment, not the opinion, that demonstrates redressability.'" *Id.* (quoting *Haaland* v. *Brackeen*, 599 U.S. 255, 294 (2023)). As the concurrence noted, "[i]f the rule were otherwise, and courts could 'simply assume that everyone . . . will honor the legal rationales that underlie their decrees, then redressability [would] *always* exist.'" *Id.* (quoting *Franklin v. Massachusetts*, 505 U.S. 788, 825 (1992) (Scalia, J., concurring in part and concurring in judgment)). And the plaintiffs in *Texas* faced the same problems that Plaintiffs here face, namely—an injunction is not available: "[o]rdinarily, to remedy harms like those the [plaintiffs] demonstrated in this suit, they would seek an injunction. The injunction would direct federal officials to [hold credible fear interviews or release] aliens consistent with what the [plaintiffs] say the [constitution] demand[s]. But even assuming an injunction like that would

redress the [plaintiffs'] injuries, that form of relief is not available . . . because of 8 U.S.C. § 1252(f)(1)." *Id*. at \*11. "Put simply, the remedy that would ordinarily have the best chance of redressing the States' harms is a forbidden one in this case." The same is true here.

In other words, if a declaratory judgment in this case is the functional equivalent of an injunction, then it is barred by Section 1252(f)(1), and if it is not the functional equivalent of an injunction, then it is no more than an advisory opinion and does not constitute "*corresponding declaratory relief*." Either way, Plaintiffs cannot satisfy the plain text of Rule 23, and therefore, this Court should deny class certification.

**CONCLUSION**

For these reasons, the Court should decline to certify the proposed class.

Dated: March 24, 2025                    Respectfully submitted,

                                         YAAKOV ROTH
                                         *Principal Deputy Assistant Attorney General*

                                         DREW C. ENSIGN
                                         *Deputy Assistant Attorney General*

                                         AUGUST FLENTJE
                                         *Acting Director*

                                         EREZ REUVENI
                                         *Acting Deputy Director*

                                         PATRICK GLEN
                                         DAVID KIM
                                         BRIAN C. WARD
                                         *Senior Litigation Counsel*

                                    By: */s/ Katherine J. Shinners*
                                         KATHERINE J. SHINNERS
                                         *Senior Litigation Counsel*
                                         U.S. Department of Justice, Civil Division
                                         Office of Immigration Litigation
                                         P.O. Box 868, Ben Franklin Station
                                         Washington, DC 20044
                                         Tel: (202) 598-8259
                                         Email: katherine.j.shinners@usdoj.gov

                                         JOSEPH DARROW
                                         ELISSA FUDIM
                                         *Trial Attorneys*

                                         *Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 24, 2025, I electronically filed this motion with the Clerk of the Court for the United States Court of for the District of Columbia by using the CM/ECF system. Counsel in the case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

By:  _/s/ Katherine J. Shinners_
       KATHERINE J. SHINNERS
       Senior Litigation Counsel
       United States Department of Justice