# Exhibit D



1300 Pennsylvania Avenue, NW
Washington, DC 20229

U.S. Customs and
Border Protection

February 28, 2025

MEMORANDUM FOR: Executive Directors
Directors, Field Operations
Office of Field Operations

FROM: Ray Provencio
Acting Executive Director, Admissibility and Passenger Programs
Office of Field Operations

SUBJECT: Implementation of Active Executive Orders – February 28, 2025

This memorandum and accompanying muster update the guidance package of the same title, issued on February 7, 2025. There are multiple active Executive Orders/Presidential Proclamations as of February 28, 2025, including:

- *Guaranteeing the States Protection Against Invasion* (January 2025)
- *Securing Our Borders* (January 2025)
- *Securing the Border* (September 2024)

Among other authorities, the *Guaranteeing the States Protection Against Invasion* and the *Securing the Border* Proclamations leverage INA 212(f) authorities. This authority provides the ability for U.S. Customs and Border Protection (CBP) personnel to immediately and efficiently repatriate undocumented aliens that are not excepted at all U.S. ports of entry. [redacted]

[redacted].

Updates regarding certain non-arriving aliens can be found in the attached muster, in addition to updated refugee processing guidance due to a recent preliminary injunction. Active executive actions do not change existing policies on the identification and processing of unaccompanied alien children (UACs), the processing of children consistent with the *Flores* Settlement Agreement, requirements under *Orantes*, or requirements under the *Ms. L* Settlement Agreement.

Please ensure this memorandum and the attached muster are distributed to port personnel. Should you require additional information, please contact [redacted] Director, Enforcement Programs Division.

**Muster**

**Date**: February 28, 2025

**Topic**: Update: Implementation of Active Executive Orders – February 28, 2025

**Headquarters POCs**: Admissibility Policy Concerns: Enforcement Programs Division ([redacted]@cbp.dhs.gov)

Secondary Processing Systems: HQ USEC Team ([redacted]@cbp.dhs.gov)

Operational Concerns: Law Enforcement Operations Division ([redacted]@cbp.dhs.gov)

***This guidance updates the muster, Implementation of Active Executive Orders, issued on February 7, 2025.***

Overview:

- There are multiple active executive actions as of February 28, 2025, such as:
  - *Guaranteeing the States Protection Against Invasion* (January 2025), specifically, Section 3 of Presidential Proclamation 10888, suspends entry to the U.S. at all ports of entry (POEs) for aliens who fail to provide sufficient medical information and reliable criminal history and background information to enable fulfillment of the requirements of sections 212(a)(l)-(3) of the Immigration and Nationality Act (INA), pursuant to sections 212(f) and 215(a) of the INA, and restricts access to provisions of immigration law that would permit an alien's continued presence in the United States, including, but not limited to, Section 208 of the INA.
  - *Securing Our Borders* (January 2025) strengthens immigration response requirements and border security measures, ending "Catch and Release" practices, and reiterates the appropriate discretionary use of parole on a case-by-case basis.
  - *Realigning the United States Refugee Admissions Program* (January 2025) suspends the entry of refugees under the U.S. Refugee Admission Program (USRAP) pursuant to sections 212(f) and 215(a) of the INA.
  - *Securing the Border* (September 2024) suspends and limits the entry of certain aliens into the United States across the southern border with Mexico, maritime borders approximate to the southern border and the Gulf, the Virgin Islands, and Puerto Rico and does so during emergency border circumstances pursuant to sections 212(f) and 215(a) of the INA.
- Changes in the operational landscape due to the Executive Orders and the Proclamation will be addressed by Office of Field Operations (OFO) through strategic resource leveraging in the following areas of consideration: pre-processing steps, port security, inspecting aliens in the appropriate manner.

Scope:

- The following are not subject to the Proclamation *Guaranteeing the States Protection Against Invasion* (January 2025):
  - U.S. citizens (USCs) and Lawful Permanent Residents (LPRs);
  - Unaccompanied alien children (UAC); and
  - Aliens with valid entry documents or authorizations (e.g., visa, ESTA, or who otherwise provide sufficient medical information or reliable criminal history information).
- Aliens subject to the Proclamation shall not be permitted to cross the international boundary.
  - .
- An undocumented alien who claims or manifests a fear at the international boundary line to CBP personnel is not excepted from the Proclamation.
- Undocumented aliens who have evaded international boundary line operations, via vehicle or other means such as on foot or by rail, are not excepted from the Proclamation.
  - [redacted]
- Undocumented aliens using force against CBP personnel to evade international boundary line operations should be referred for prosecution.
- Once present in the United States, all applicants for admission must be inspected and processed by CBP officers.

Processing:

- [redacted]
- CBP officers will not provide Forms I-867A and I-867B and will not provide individualized advisals on asylum.
- CBP officers will refer any alien who manifests fear to U.S. Citizenship and Immigration Services (USCIS) for a Convention Against Torture (CAT) screening; USCIS should be contacted at the following address to facilitate CAT screenings: [redacted]@uscis.dhs.gov.
  - CAT screening facilitation should occur while subjects are in CBP custody at POEs, when possible.
  - [redacted]



- When a CAT screening is completed, CBP officers must answer the corresponding "closeout" questions to document the outcome of the interview.
- Should times in custody or detention capacity become an operational concern, transfer to U.S. Immigration and Customs Enforcement (ICE) – Enforcement Removal Operations (ERO) may be required.
- .

- Aliens who are not subject to the Proclamation because they present valid entry documents (e.g., nonimmigrant visa) or who otherwise provide sufficient medical information or reliable criminal history information during their application for admission and are found to be inadmissible, should still be processed under existing policies and procedures, including sworn statements.
-



- Event Disposition (Summary)

- I-213

- I-862

- , .

* In all cases, the appropriate processing disposition should be determined on a case-by-case basis, considering the totality of the circumstances; if there are indicators of fraudulent documents or fraudulent activity,
  - Aliens not subject to the Proclamation will be processed in accordance with current policy and practices under Title 8.
* The Proclamation does not change existing policies on the identification and processing of UAC, the processing of children consistent with the *Flores* Settlement Agreement, requirements under *Orantes*, or requirements under the *Ms. L* Settlement.

Port Security:

- POEs will take active, preventative measures when necessary, including the suspension of operations when required due to security concerns.
  - The use of [redacted] should be leveraged where available and appropriate.
  - Available law enforcement assets such as [redacted] should be deployed where available and appropriate.
  - [redacted].
  - [redacted].

- When necessary to respond to a specific threat to human life, and when time and circumstances reasonably preclude the exercise of such authority by the Senior Official Performing the Duties of the Commissioner (SOPDOC), the authority to close temporarily any CBP office or POE along the southwest border between the United States and Mexico, or to temporarily take any other lesser action that may be necessary to respond to the specific threat to human life, is delegated (See *Delegation Order 23-026* dated December 07, 2023) to Senior Executive Leadership.

Processing of Refugees:

- On February 25, 2025, the U.S. District Court for the Western District of Washington (State) granted a preliminary injunction on enforcing implementing Sections 3(a), (b), and (c) and Section 4 of Presidential Executive Order 141063, *Realigning the United States Refugee Admissions Program*, issued on January 20, 2025; as such, processing first-time refugees and returning refugees will revert back to guidance in place prior to Executive Order 14163:
  - CBP officers encountering aliens seeking admission to the United States under Section 207 of the Immigration and Nationality Act (INA) with documentation issued by the U.S. Government (i.e., ZZ visa foils) are authorized to admit the aliens under the provisions of INA Section 207.
  - CBP officers encountering aliens who are returning from a foreign visit with documentation authorizing travel (i.e., Form I-571 Refugee Travel Document endorsed as a "Refugee") are authorized to permit such aliens to resume refugee status in the United States.
  - Refugees who appear to be inadmissible for one or more grounds listed in INA Section 212(a) (other than (7)(A)(i)(I)), may be processed for removal proceedings under INA Section 240 or permitted to withdraw their application for admission under INA Section 235(a)(4).

Cessation of "Catch and Release" and Use of Parole:

- The cessation of "Catch and Release" policies do not change any of the requirements of the *Ms. L* Settlement Agreement or CBP policies governing the processing and separation of family units. Families may only be separated in accordance with the *Ms. L* Settlement Agreement. Similarly, the cessation of "Catch and Release" policies does not change any procedures governing the processing of UAC as codified in the Trafficking Victims Protection Reauthorization Act (TVPRA).

- CBP officers inspecting applicants for admission to the United States are reminded that aliens who are charged as inadmissible are expected to be detained until the conclusion of proceedings, pursuant to Section 235(b)(1) and (2) of the INA.
-
    - CBP retains discretion under Section 235(a)(4) of the INA to permit an alien to withdraw their application for admission.
- If an inadmissible applicant for admission is not able to immediately depart foreign, then port leadership must take every reasonable action to detain the alien pending removal.
    -
- Title 6, United States Code Section 211(m) designates CBP POEs as short-term processing locations and defines short term as 72 hours or less.
    - Long term custody of inadmissible or removable aliens is the statutory responsibility of ICE-ERO.



- Reporting must be completed in alignment with Operations Directorate (OPS). guidance.
- The following uses of parole may continue with DFO awareness and approval:

- This muster and the requirements herein may apply similarly to certain CBP encounters of non-arriving aliens who are inadmissible or removable including encounters of aliens returned to the U.S. under a Safe Third Country Agreement (STCA).
  - OFO, in the interest of the recent memorandum, "Operational Priority – Safeguard America by Securing Our Border," should remain steadfast in their duty to protect the public and leverage all methods of enforcement and authorities available to CBP under federal law, especially when new derogatory information is identified for an alien.

  - (Non-arriving) Presently approved TPS:

  - (Non-arriving) Presently pending application adjudication for an immigration benefit filed with USCIS:

- (Non-arriving) Presently in lawful parole status:

- (Non-arriving) Presently in removal proceedings:

- If ICE-ERO declines custody for any alien requiring detention, DFOs should directly consult with their local ICE-ERO counterparts. 

- Please see the supplemental guidance, attached, regarding those with newly identified derogatory information.

Expansion of Use of Expedited Removal:

- On January 24, 2025, the Acting Secretary of Homeland Security issued a Federal Register notice (90 FR 8139) expanding the authority for CBP to process the following aliens for ER:
  - Aliens who did not arrive by sea, who are encountered anywhere in the United States more than 100 air miles from a U.S. international land border, and who have been continuously present in the United States for less than two years; and
  - Aliens who did not arrive by sea, who are encountered within 100 air miles from a U.S. international land border, and who have been continuously present in the United States for at least 14 days but for less than two years.
- Prior to this Federal Register notice, CBP officers were limited to processing ER cases for aliens who were found within 100 air miles of the U.S. border and who had been present in the United States for less than 14 days; and applicants for admission encountered at a POE.
- Inadmissible alien applicants for admission encountered at POEs and who meet the conditions listed in 8 CFR 235.3(b)(2) will not be affected by this notice, and processed in alignment with pre-existing guidance on ER.
- Notwithstanding the processes and procedures applicable to the active executive actions discussed in this muster, the process of referring claims of fear of return or intentions to apply for asylum are not changed by this notice, and such instances should continue to be referred for a Credible Fear screening by USCIS and detained by ICE-ERO.
- CBP officers assigned to task forces with other Department of Homeland Security (DHS) components or conducting outbound operations may encounter aliens subject to the expansion of ER.
  - If serving an Order of Expedited Removal based upon this notice and expansion, CBP officers must clearly articulate upon Form I-213 how CBP determined the alien was amenable to ER.
- (b) (5)

Return or Transfer to Law Enforcement Partners:

- OFO only provides short-term holding of inadmissible aliens for processing, repatriation, and transfer to other partner agencies.
- OFO turns inadmissible aliens not amenable to immediate removal or repatriation, over to law enforcement partners, such as ICE-ERO.
- .

Implementation of Active EOs
Page **10** of **11**

## SUPPLEMENTAL GUIDANCE
### Processing Arriving Aliens in Various Scenarios



[Page content redacted]

Implementation of Active EOs
Page **11** of **11**



For Official Use Only
Law Enforcement Sensitive

USA00033