# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| REFUGEE AND IMMIGRANT CENTER FOR EDUCATION AND LEGAL SERVICES, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>KRISTI NOEM, Secretary of Homeland Security, in her official capacity, *et al.*,<br><br>*Defendants*. | ) ) ) ) ) ) ) ) ) ) ) ) No. 1:25-cv-00306 |

## PLAINTIFFS' REPLY IN SUPPORT OF
## MOTION FOR CLASS CERTIFICATION

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

ARGUMENT ................................................................................................................. 1

I.      DEFENDANTS' OVERBREADTH ARGUMENTS FAIL. ............................... 1

        A.      The Factual Distinctions Defendants Raise Do Not Affect Certification. ............. 2

        B.      8 U.S.C. § 1252 Does Not Affect Class Certification. .......................................... 7

II.     THE PROPOSED CLASS SATISFIES THE REQUIREMENTS OF RULE 23(a). ...... 10

        A.      The Class Presents Common Questions Of Law And Fact. .............................. 10

        B.      Individual Plaintiffs' Claims Are Typical Of Proposed Class Members' Claims. 14

        C.      Individual Plaintiffs Will Adequately Protect The Interests Of The Proposed
                Class. ...................................................................................................................... 15

III.    THE PROPOSED CLASS SATISFIES RULE 23(b)'S REQUIREMENTS. ................. 15

        A.      Classwide Injunctive And Declaratory Relief Is Available. .............................. 15

        B.      Section 1252(f)(1) Does Not Bar Classwide Injunctive Or Declaratory Relief And
                Thus Does Not Prevent Class Certification Under Rule 23(b)(2). ...................... 17

CONCLUSION ............................................................................................................ 20

i

# TABLE OF AUTHORITIES

**Cases**

*Biden v. Texas*,
   597 U.S. 785 (2022) ........................................................................................... 18

*Brito v. Garland*,
   22 F.4th 240 (1st Cir. 2021) ............................................................................... 19

*Bynum v. District of Columbia*,
   214 F.R.D. 27 (D.D.C. 2003) .............................................................................. 14

*California v. Arizona*,
   452 U.S. 431 (1981) ............................................................................................ 19

*Coleman v. District of Columbia*,
   306 F.R.D. 68 (D.D.C. 2015) .............................................................................. 13

*Cont'l Cas. Co. v. Indian Head Indus., Inc.*,
   941 F.3d 828 (6th Cir. 2019) .............................................................................. 19

*Covenant v. Biden*,
   No. 23-16032, 2023 WL 11662094 (9th Cir. Aug. 3, 2023) ................................ 6

*D.L. v. District of Columbia*,
   860 F.3d 713 (D.C. Cir. 2017) ..................................................................... 15, 17

*DL v. District of Columbia*,
   302 F.R.D. 1 (D.D.C. 2013) ........................................................................... 4, 11

*Damus v. Nielsen*,
   313 F. Supp. 3d 317 (D.D.C. 2018) ............................................................. 14, 16

*East Bay Sanctuary Covenant v. Biden*,
   683 F. Supp. 3d 1025 (N.D. Cal. 2023) ............................................................... 6

*Garcia v. Sessions*,
   856 F. 3d 27 (1st Cir. 2017) ................................................................................. 4

*Garland v. Aleman Gonzalez*,
   596 U.S. 543 (2022) ............................................................................................ 18

*Gen. Tel. Co. of Sw. v. Falcon*,
   457 U.S. 147 (1982) ............................................................................................ 14

*Grace v. Barr*,
   965 F.3d 883 (D.C. Cir. 2020) .............................................................................. 8

*Hardy v. District of Columbia*,
   283 F.R.D. 20 (D.D.C. 2012) .............................................................................. 14

*Hilton Hotels Ret. Plan v. White*,
   144 S. Ct. 487 (2023) ........................................................................................... 2

*Howard v. Liquidity Servs. Inc*,
  322 F.R.D. 103 (D.D.C. 2017) ............................................................ 10

*Huisha-Huisha v. Mayorkas*,
  560 F. Supp. 3d 146 (D.D.C. 2021), ..................................... 11, 14, 15

*In re White*,
  64 F.4th 302 (D.C. Cir. 2023) .............................................................. 2

*\*J.D. v. Azar,*
  925 F.3d 1291 (D.C. Cir. 2019) ........................................... 3, 7, 14, 15

*Make the Road N.Y. v. Wolf*,
  962 F.3d 612 (D.C. Cir. 2020) ........................................................ 7, 18

*Marisol A. v. Giuliani*,
  126 F.3d 372 (2d Cir. 1997) .............................................................. 14

*\*O.A. v. Trump*,
  404 F. Supp. 3d 101 (D.D.C. 2019) .......................................... *passim*

*Onosamba-Ohindo v. Searls*,
  678 F. Supp. 3d 364 (W.D.N.Y. 2023) .............................................. 19

*P.J.E.S. v. Wolf*,
  502 F. Supp. 3d 492 (D.D.C. 2020) .................................................. 11

*R.I.L.-R v. Johnson*,
  80 F. Supp. 3d 164 (D.D.C. 2015) .................................................... 15

*\*Ramirez v. ICE*,
  338 F. Supp. 3d 1 (D.D.C. 2018) ............................................... 4, 5, 16

*Regents of Univ. of Calif. v. Bakke*,
  438 U.S. 265 (1978) ............................................................................ 6

*Reid v. Donelan*,
  No. CV 13-30125-PBS, 2018 WL 5269992 (D. Mass. Oct. 23, 2018) ................. 19

*Reno v. Am.-Arab Anti-Discrimination Comm.*,
  525 U.S. 471 (1999) .......................................................................... 18

*RIL-R v. Johnson*,
  80 F. Supp. 3d 164 (D.D.C. 2015) .................................................... 11

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
  559 U.S. 393 (2010) ............................................................................ 1

*Steffel v. Thompson*,
  415 U.S. 452 (1974) .......................................................................... 18

*\*Thorpe v. District of Columbia*,
  303 F.R.D. 120 (D.D.C. 2014) ......................................................... 2, 3

*Wal-Mart Stores, Inc. v Dukes*,
  564 U.S. 338 (2011) ................................................................................................. 10

**Statutes**

8 U.S.C. § 1182(a)(9)(A) ............................................................................................... 16

8 U.S.C. § 1182(f) ............................................................................................................ 7

8 U.S.C. § 1185(a) ............................................................................................................ 7

8 U.S.C. § 1225(b)(1) ...................................................................................................... 8

8 U.S.C. § 1231(a)(5) ..................................................................................................... 17

8 U.S.C. § 1252(e)(1)(B) ................................................................................................. 8

8 U.S.C. § 1252(e)(2) ...................................................................................................... 8

8 U.S.C. § 1252(e)(3)(A)-(B) ........................................................................................ 10

8 U.S.C. § 1252(e)(3)(A)(ii) ........................................................................................... 8

**Other Authorities**

BRYAN A. GARNER, GARNER'S DICTIONARY OF LEGAL USAGE 295-96 (3d ed. 2011) ............... 19

H.R. Rep. No. 104-469 (1996) ...................................................................................... 18

**Rules**

8 C.F.R. § 208.31 ............................................................................................................ 12

89 Fed. Reg. 81156 ........................................................................................................... 5

*Fed. R. Civ. P. 23(b)(2) .......................................................................................... 2, 18

Fed. R. Civ. P. 65 .......................................................................................................... 19

## INTRODUCTION

This Court should certify a nationwide class of noncitizens subjected to the President's Proclamation and the implementing Guidance while in the United States. The Proclamation and Guidance invent out of whole cloth an extra-statutory "repatriation" regime that abrogates the safeguards that Congress enacted to protect people fleeing persecution, including asylum and withholding of removal. Time and again, courts in this District have certified similar nationwide classes in analogous challenges to immigration policies, including this Court in *O.A. v. Trump*, 404 F. Supp. 3d 101, 109 (D.D.C. 2019). ECF 13 at 3. Tellingly, Defendants entirely ignore *O.A.* And virtually all of Defendants' arguments, if accepted, would have precluded class certification there. This Court properly rejected those arguments before and should do so again.

Defendants' various challenges to Plaintiffs' class definition amount to assertions that there is impermissible variation among proposed class members. But Rule 23(b)(2) does not require that class members be identical. And Defendants have no answer to the central commonality the proposed class shares: All members are subject to the same unlawful Proclamation and Guidance, which prevent them all from seeking asylum and other protection under the Immigration and Nationality Act ("INA"). That shared injury, along with the fact that the ongoing harms inflicted by the Proclamation and Guidance can be redressed by a favorable order of this Court, is sufficient to satisfy the criteria of Rule 23 and confer a "categorical" right to pursue these claims as a class action. *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010).

## ARGUMENT

## I.    DEFENDANTS' OVERBREADTH ARGUMENTS FAIL.

Although Defendants lead with various arguments that the class definition is "overbroad," they do not tie these arguments to Rule 23's actual requirements. The D.C. Circuit instructs that "courts should stick to Rule 23's specified requirements when making class certification

decisions. . . ." *In re White*, 64 F.4th 302, 314 (D.C. Cir. 2023), *cert. denied sub nom. Hilton Hotels Ret. Plan v. White*, 144 S. Ct. 487 (2023). Yet Defendants evade that instruction. Their approach is particularly misguided for Rule 23(b)(2) classes, where the critical question is whether Defendants have "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. Proc. 23(b)(2). Because Defendants "will be required to comply with the relief ordered no matter who is in the class," "a high level of precision in defining class membership" is not necessary. *Thorpe v. District of Columbia*, 303 F.R.D. 120, 139 (D.D.C. 2014) (cleaned up). Rather, Plaintiffs need only "establish the existence of a class and propose a class definition that accurately articulates the general demarcations of the class." *Id.* Defendants' counterarguments fail.

A.    **The Factual Distinctions Defendants Raise Do Not Affect Certification.**

First, Defendants incorrectly contend that the class definition is overbroad because it includes people who "have already been repatriated or removed." ECF 43 at 26. But that distinction has no bearing. All class members "suffered a similar injury from the same course of conduct"—Defendants' application of the unlawful Proclamation and Guidance—and they all seek common injunctive and declaratory relief to prevent Defendants from continuing that course of conduct against them. *O.A.*, 404 F. Supp. 3d at 156 (citation omitted). That relief will assist all class members. Defendants' arguments largely recycle their standing arguments, which should be rejected for the reasons discussed in Plaintiffs' summary judgment reply brief. Pls. MSJ Reply Part II.A.

In addition, as that reply explains, the Court can and should order Defendants to facilitate the return of the Individual Plaintiffs and proposed class members already removed or "repatriated" under the Proclamation, and it should bar Defendants from enforcing the

Proclamation to prevent those class members from seeking asylum or other protection upon their return to ports of entry. *Id.* at 32-33. But even if the Court were to conclude that return to the United States is unavailable on a classwide basis, it may certify a class that includes removed individuals. That is because there are other remedies that uniformly address the injuries faced by members of the class. For example, a declaration that the Proclamation, the Guidance, and removal orders issued to class members pursuant to the Proclamation are unlawful will permit removed class members to seek protection in the future. Where Plaintiffs have identified a "'a uniform policy or practice that affects all class members,'" the commonality and typicality elements are satisfied. *O.A.*, 404 F. Supp. 3d at 159 (citation omitted). That principle applies here.

Second, Defendants fare no better with their argument that the class definition is overbroad because the phrase "subject to the Proclamation" is "not sufficiently definite." ECF 43 at 27. Defendants' argument appears to concern so-called ascertainability. *Id.* at 26 n.4. But to begin, this Court has noted that it is "far from clear" that any such requirement exists. *O.A.*, 404 F. Supp. 3d at 159 (cleaned up); *see id.* at 160 (concluding that if ascertainability is necessary it was satisfied for class of "all asylum seekers who are subject to" asylum bar regulation, including those who will "become members of the class if and when they enter the United States through the southern border" (emphasis omitted)); *see also J.D. v. Azar,* 925 F.3d 1291, 1320, 1323 (D.C. Cir. 2019) (noting that the court "has not addressed whether Rule 23 contains an ascertainability requirement for class certification" but finding no impediment to certifying class of "all pregnant unaccompanied minors who are *or will be* in ORR custody" (emphasis added)).

Moreover, as already noted, where "certification of a (b)(2) injunctive class is sought, actual membership of the class need not . . . be precisely delimited." *Thorpe*, 303 F.R.D. at 139 (citation omitted). Plaintiffs need do no more than "propose a class definition that accurately

articulates the general demarcations of the class of individuals who are being harmed." *Id.* (internal quotation marks and citation omitted); *see, e.g.*, *DL v. District of Columbia*, 302 F.R.D. 1, 18 (D.D.C. 2013). Plaintiffs' class definition easily meets that standard. Plaintiffs seek to certify a class of "[a]ll noncitizens who were, are, or will be subject to the Proclamation and/or its implementation within the United States." ECF 13 at 2. As in *O.A.*, "Plaintiffs and the putative class members share an identical interest in the invalidation of the [Proclamation] and in enforcing this Court's decision"; that suffices to provide the requisite "glue" to hold the proposed class together. 404 F. Supp. 3d at 156.

Nor do Defendants' attempts to carve up the proposed class in other ways show that it is insufficiently definite, particularly under the standards of Rule 23(b)(2). They contend that some class members might not seek asylum or might face independent asylum bars. ECF No. 43 at 26-28. But this Court rejected much the same argument in *O.A.* As there, Defendants' assertions conflate the "challenge to the [Proclamation and Guidance]—which applies equally to all members of the putative class—with each putative member of the class's unique interest in seeking asylum, which is not at issue in this case." *O.A.*, 404 F. Supp. 3d at 157; *see also, e.g.*, *Ramirez v. ICE*, 338 F. Supp. 3d 1, 24 (D.D.C. 2018) (collecting cases demonstrating that "loss of the opportunity to be considered for a type of benefit or relief" is a "type of injury that courts in this jurisdiction have recognized as cognizable").[1]

---

[1] Defendants are wrong that people subject to reinstatement of prior removal orders under 8 U.S.C. § 1231(a)(5) could not be injured by the Proclamation. People in that posture can apply for and be granted withholding of removal. *See, e.g.*, *Garcia v. Sessions*, 856 F.3d 27, 32-33 (1st Cir. 2017) (describing the reasonable fear screening and referral process for asylum seekers subject to reinstatement). The Proclamation eliminates that opportunity and therefore harms people subject to reinstatement of removal in the exact same way as other class members: by denying them the ability to invoke the INA's protections against removal. Defendants' similar argument with respect to Plaintiff D.G., ECF 43 at 28, fails for the same reason.

For the same reason, it does not matter that other asylum restrictions might apply to some class members. To begin, Defendants ignore that the particular restrictions they cite—the "Circumvention of Lawful Pathways" and "Securing the Border" rules, ECF 43 at 28-29—do not render noncitizens ineligible for withholding of removal. The Proclamation does. Proclamation § 2. In addition, unlike the "Securing the Border" rule's distinct manifestation-of-fear provision that Defendants reference, ECF 43 at 27-28, people subject to the Proclamation must specifically "manifest[] fear *in relation to the Convention Against Torture*." Guidance at 34, 38, Ex. 1 to Pls. MSJ Reply (emphasis added). Moreover, it is unclear if those restrictions would have continued applying. For example, the "Securing the Border" rule deactivates when southern border crossings between ports fall and remain below 1,500 per day, 89 Fed. Reg. 81156, 81167 (Oct. 7, 2024), and Defendants' declarant reports that crossings had already fallen well below that threshold "in the two-week period ending on January 20, 2025" and have remained below it since, ECF 44-5 at 18. The new Administration, as well, has condemned those rules in no uncertain terms. *See, e.g.*, *id.* at 12 (stating that the "Securing the Border" rule lacked the "rigor directed by the [new] President"). And in all events, the answer to these asylum restrictions is the same one this Court gave in *O.A.*, where some class members likewise would have been subject to statutory or regulatory restrictions on asylum eligibility: It is enough that the proposed class members "will have an opportunity to pursue" their claims for protection "unencumbered by the [Proclamation]'s categorical ban." 404 F. Supp. 3d at 156. The injury imposed by that categorical ban is uniform and significant. *See Ramirez*, 338 F. Supp. 3d at 24; *cf. Regents of Univ. of Calif. v. Bakke*, 438

U.S. 265, 280 n.14 (1978) (applicant for admission had standing to challenge affirmative action program even though he could not show he would have been admitted absent the program).[2]

Also wrong is Defendants' claim that the class somehow includes people "not [] processed under the Proclamation," ECF 43 at 28-29, citing unaccompanied children. But Plaintiffs seek to certify a class of people "subject to" the Proclamation. ECF 13 at 2. If unaccompanied children are not subject to the Proclamation, they are not members of the proposed class.[3]

Nor can Defendants succeed in casting this straightforward class definition as insufficiently definite by pointing to potential future changes in *their own* application of the Proclamation. *See* ECF 43 at 29 (suggesting that "the precise procedures for implementing the Proclamation could change in the future in ways that are material to the proposed class members' claims and claimed injuries"). By Defendants' own admission, the Proclamation creates a new non-statutory "repatriation" process. And on its face, it bars noncitizens to whom it applies from invoking asylum or withholding of removal. Thus, the core features of the proposed class—the shared injury, the common arguments about why the Proclamation is unlawful, and the redress sought—remain the same. That the individual people within the class may change does not preclude class certification so long as the class satisfies the baseline requirements of numerosity, commonality, and typicality.

---

[2] Defendants' argument is particularly misplaced here because the regulations they cite are subject to pending legal challenges contending that they are contrary to the INA and otherwise unlawful. *See East Bay Sanctuary Covenant v. Biden*, 683 F. Supp. 3d 1025 (N.D. Cal. 2023), *stayed without op. pending appeal*, No. 23-16032, 2023 WL 11662094 (9th Cir. Aug. 3, 2023); Am. Compl., *M.A. v. Mayorkas*, No. 1:23-cv-1843, ECF 19 (D.D.C. July 10, 2023); Am. Compl., *Las Americas Immigrant Advocacy Ctr. v. DHS*, No. 1:24-cv-1702, ECF 14 (D.D.C. July 12, 2024).

[3] The Proclamation itself does not include any language indicating that it does not apply to unaccompanied minors, which is why Plaintiffs discussed these children in earlier filings. But the definition of the class Plaintiffs seek to certify also need not include these children; it includes only those "subject to" the Proclamation, and Plaintiffs agree that it therefore should not include those whom Defendants do not intend to sweep into its coverage.

Further, Defendants' contention that the class of noncitizens subject to the Proclamation could change, *id.* at 29, should be rejected as mere "unsupported speculation." *J.D.*, 925 F.3d at 1313. Defendants neither specify what alterations they might make to the Guidance nor assert that any such changes are even under consideration. And Defendants' assertion could equally be made in *any* Rule 23(b)(2) class action against government actors. *Cf. id.* (holding defendant's objection to adequacy meritless where it "could equally be said of *any* class representative" in any case).

### B.    8 U.S.C. § 1252 Does Not Affect Class Certification.

Defendants invoke 8 U.S.C. §§ 1252(a)(2)(A) and 1252(e)(1)(B), ECF 43 at 29-32, 35, but neither provision applies here. As explained in Plaintiffs' summary judgment reply (and as Defendants largely concede), the Proclamation and Guidance implement Section 1182(f) and Section 1185(a), 8 U.S.C. §§ 1182(f), 1185(a). They do *not* implement the expedited removal scheme or individual removal orders issued pursuant to 8 U.S.C. § 1225(b)(1). *See* Pls. MSJ Reply at 30-31. In fact, Defendants are largely applying the Proclamation outside of any "form of Title 8 removal proceedings" whatsoever. ECF 44 at 51. Having acted based on authority outside the expedited removal statute, Defendants cannot rely on jurisdiction-stripping provisions concerning the implementation of expedited removal simply by pointing vaguely to those provisions. The fact that Defendants have chosen to implement *the Proclamation* in part via a process labeled "212(f) Expedited Removal" is immaterial. *E.g.*, Guidance at 10, Ex. 1 to Pls. MSJ Reply.

Start with Section 1252(a)(2)(A). It bars judicial review of "challenges to the expedited removal scheme" itself. *Make the Road N.Y. v. Wolf*, 962 F.3d 612, 626 (D.C. Cir. 2020). But plaintiffs have not brought such a challenge. As noted, the Proclamation implements only Sections 1182(f) and 1185(a), not the expedited removal statute. And as Defendants themselves state, "all legal consequences" in the Guidance "flow from the Proclamation itself." ECF 44 at 26. That is equally true for noncitizens subjected to what Defendants call "212(f) Expedited Removal" as for

those subjected to "212(f) Direct Repatriation." Guidance at 10, Ex. 1 to Pls. MSJ Reply; *see also* ECF 44 at 65 (recognizing that Plaintiffs' claim that the Proclamation and Guidance violate the expedited removal statute is "really a challenge to the Proclamation's bar to invoking asylum under Section 1158(a)(1)"). Defendants concede that the Guidance "implement[s] the Proclamation's terms," ECF 44 at 20, not the expedited removal statute. Accordingly, Section 1252(a)(2)(A) does not apply to Plaintiffs' claims against the Proclamation itself or the Guidance.

Section 1252(e)(1)(B) does not apply for the same reasons. It bars class certification as to claims "for which judicial review is authorized under" Section 1252(e)(2) or (e)(3). 8 U.S.C. § 1252(e)(1)(B). And Section 1252(e)(2) and (e)(3) do not apply to Plaintiffs' claims against either the Proclamation or the Guidance because this is not a suit challenging either individual expedited removal orders or policies implementing Section 1225(b)(1). *See* Pls. MSJ Reply Part II.D.

Section 1252(e)(2) clearly has no bearing here: it concerns "habeas corpus proceedings" to challenge individual expedited removal determinations rather than broader policies. 8 U.S.C. § 1252(e)(2); *see, e.g.*, *Grace v. Barr*, 965 F.3d 883, 908 (D.C. Cir. 2020) (discussing the provision's limited scope).

Nor does Section 1252(e)(3) apply. It addresses challenges to the legality of the expedited removal statute, 8 U.S.C. § 1225(b)(1), or to written policies (1) "issued by or under the authority of the Attorney General" or DHS Secretary (2) "to implement such section . . . ." *Id.* § 1252(e)(3)(A)(ii). Plaintiffs' claims against the Proclamation plainly fall outside of Section 1252(e)(3): The Proclamation was issued by the *President* to implement *Section 1182(f)*. And it never so much as mentions expedited removal or Section 1225(b)(1). Meanwhile, Defendants issued the Guidance "to instruct their agents and officers how *to implement the Proclamation's terms* . . . ." ECF 44 at 20 (emphasis added). The Guidance documents therefore

have subject lines like "Field Guidance for Southern Border Re: 212(F) Presidential Proclamation," "Implementation of Active Executive Orders," and "Guidance on Implementation of Executive Order Guaranteeing the States Protection Against Invasion." *Id.* at 1, 22, 52. And the Guidance makes clear that "[a]ll [noncitizens] subject to Presidential Proclamation 10888 . . . will be *processed pursuant to sections 212(f) and 215(a)*." Guidance at 16, 20, Ex. 1 to Pls. MSJ Reply (emphasis added); *see also id.* ("*In accordance with Presidential Proclamation 10888*, the [noncitizen] will not be asked fear questions." (emphasis added)). In short, the Proclamation implements Section 1182(f) and the Guidance implements the Proclamation; neither implements the expedited removal statute. *See* Pls. MSJ Reply Part III.B.1; *infra* Part III.B.

*O.A.* confirms that Section 1252(e)(3) does not apply. Like the Proclamation, the asylum restriction there applied to all kinds of asylum applications, whether sought "within the confines of either a formal or expedited removal proceeding" or "outside of any removal proceeding." 404 F. Supp. 3d at 126. Section 1252(e)(3) did not apply because that "facial challenge to a rule governing eligibility for asylum, whether sought in a defensive or affirmative application" was not "a challenge to the statutory or regulatory system for expedited removal." *Id.* at 141. That reasoning applies even more forcefully here. In implementing the Proclamation, the Guidance overrides not just the asylum statute but the INA more broadly, subjecting asylum seekers to a novel "repatriation authority" found nowhere in the U.S. Code. *See* ECF 44 at 51. Simply put, Guidance instituting an extra-statutory deportation regime under supposed authority of the President does not implement Congress's expedited removal statute. And as in *O.A.*, because Section 1252(e)(3) does not apply, Section 1252(e)(1)(B) does not bar class certification. 404 F. Supp. 3d at 158.

Finally, even if (counterfactually) the Guidance in part implemented Section 1225(b)(1)—such that either Section 1252(a)(2)(A) or Section 1252(e)(1)(B) applied—that would not defeat class certification. Plaintiffs would simply ask to withdraw their claims on behalf of the class as to that aspect of the Guidance, which should be vacated regardless of class certification. *Cf. O.A.*, 404 F. Supp. 3d at 153-54 (noting that it was "unclear that class certification [would] serve any significant purpose" where the Court was vacating the challenged agency action under the APA).[4]

## II.    THE PROPOSED CLASS SATISFIES THE REQUIREMENTS OF RULE 23(a).

The proposed class—all noncitizens who were, are, or will be subject to the Proclamation and/or its implementation within the United States—satisfies the requirements of Rule 23(a). Defendants do not contest numerosity or the adequacy of proposed class counsel, *see* ECF 43 at 32-37, and the proposed class meets the requirements of commonality, typicality, and adequacy of the class representatives.

### A.    The Class Presents Common Questions Of Law And Fact.

Commonality is satisfied where class members' claims "'depend upon a common contention'" that "'is capable of classwide resolution'—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *O.A.*, 404 F. Supp. 3d at 155-56 (quoting *Wal-Mart Stores, Inc. v Dukes*, 564 U.S. 338, 350 (2011)). "[E]ven a single common question will do.'" *Howard v. Liquidity Servs. Inc*, 322 F.R.D. 103, 118 (D.D.C. 2017) (quoting *Wal-Mart*, 564 U.S. at 359). Here, every class member

---

[4] In that event, any Individual Plaintiffs who received "212(f) expedited removal" orders could proceed with their own claims against the Guidance under Section 1252(e)(3), since the Guidance would constitute "written policy directive[s]" and Plaintiffs timely brought those claims in this District. *See* 8 U.S.C. § 1252(e)(3)(A)-(B). And as explained in Plaintiffs' summary judgment reply, Section 1252 does not bar the Organizational Plaintiffs' claims against the Guidance. *See* Pls. MSJ Reply Part II.D.

has common claims, including whether the President may rely on Section 1182(f) and the other authorities invoked by the Proclamation to create an extra-statutory "repatriation" process and abrogate the INA's various protections, including asylum and withholding of removal. As in *O.A.*, the requirement of commonality is satisfied because "there is 'a uniform policy or practice that affects all class members,'" and the Proclamation and Guidance "expose[] all putative class members and all named Plaintiffs to the same deprivation of their statutory right to seek asylum" and to invoke other INA protections. *O.A.*, 404 F. Supp. 3d at 155-56 (citation omitted).

Defendants raise three principal objections to commonality: first, that the class fails because some members may be subject to different statutory protections; second, that class members may be subject to different processing under the Proclamation and therefore may be differently positioned to raise various legal challenges; and third, that unspecified "future changes" to the implementation of the Proclamation could affect Individual Plaintiffs' ability to represent the class. ECF 43 at 33-36. None of these objections has merit, and courts in this District— including this Court—have certified similar classes of noncitizens harmed by unlawful changes to asylum processing at the border. *See, e.g.*, *O.A.*, 404 F. Supp. 3d at 155-59; *Huisha-Huisha v. Mayorkas*, 560 F. Supp. 3d 146, 164-66 (D.D.C. 2021), *aff'd in part, rev'd in part and remanded*, 27 F.4th 718 (D.C. Cir. 2022); *P.J.E.S. v. Wolf*, 502 F. Supp. 3d 492, 531-32 (D.D.C. 2020).

First, Defendants claim that commonality fails because members of the proposed class may be entitled to different statutory protections, and because some class members may not have or manifest fear. ECF 43 at 34. That is incorrect for the reasons explained above. *See* Part I.A., *supra*. This case challenges the Proclamation, which is a "a uniform policy or practice that affects all class members." *RIL-R v. Johnson*, 80 F. Supp. 3d 164, 181 (D.D.C. 2015) (quoting *DL*, 713 F.3d at 128). To the extent that unaccompanied children are not subject to the Proclamation, as the

Guidance indicates, then they are not class members, and there are no commonality issues. *See* Part I.A., *supra*.

Defendants also claim that because the Individual Plaintiffs assert that they manifested fear or requested asylum, they are not typical of class members who do not. ECF 43 at 34. But as explained above, the Proclamation is the reason that asylum seekers are being required to spontaneously "manifest" fear, specifically fear of torture, without being asked. Guidance at 16, 20, Ex. 1 to Pls. MSJ Reply ("*In accordance with Presidential Proclamation 10888*, the [noncitizen] will not be asked fear questions." (emphasis added)). And that is part of the harm of the Proclamation and Guidance to all class members that Plaintiffs seek to redress.[5]

As explained above, there is also no merit to Defendants' argument concerning class members with prior removal orders. *See* Part I.A., *supra*. Asylum seekers who may be subject to reinstatement of removal orders are still eligible for withholding of removal and CAT protection. But for the Proclamation, they would be entitled to reasonable fear interviews (similar in relevant respects to credible fear screenings) to screen for potential eligibility for those mandatory protections. *Supra* at 4 n. 1; 8 C.F.R. § 208.31. But the Proclamation bars noncitizens from seeking withholding of removal as well as asylum. Both people subject to reinstatement of prior removal orders and those never ordered removed before are deprived of ability to seek that protection. The Guidance is clear that the only "assessments" currently taking place concern possible CAT protection. ECF 43-1 at 2. And unlike reasonable fear interviews—which apply a screening

---

[5] Indeed, Defendants' declarations indicate that DHS failed to register that several Individual Plaintiffs who fear persecution or torture, requested fear screenings, and have submitted sworn declarations to that effect, did not express such a fear. *See* ECF 43-3 ¶¶ 4-5, 7-11 (asserting that multiple Individual Plaintiffs did not manifest fear while in Border Patrol custody). These factual discrepancies raise serious questions about how the manifestation-of-fear requirement to obtain a "CAT assessment" under the Guidance is being carried out. *See, e.g.*, ECF 44-1 at 2.

standard for both withholding and CAT protection—these CAT "assessments" apply the ultimate merits standard for CAT protection: the noncitizen must show they will more likely than not be tortured in the country of removal. Guidance at 34-35, 42, Ex. 1 to Pls. MSJ Reply.

Second, Defendants claim that the "different processing" applied to class members means that there are two distinct groups of noncitizens—those subject to "expedited removal procedures" and those "repatriated" to third countries under the Proclamation. ECF 43 at 35. But these "212(f) Expedited Removal" and "212(f) Direct Repatriation" tracks are both procedures invented by Defendants to implement the same unlawful Proclamation. *See* Guidance at 10, 14-15, Ex. 1 to Pls. MSJ Reply. The common legal question as to all members of the proposed class is the same: whether Section 1182(f) permits the Executive to invent extra-statutory removal procedures to deny people their statutory rights to apply for asylum, withholding, and all other relief under the INA. And for the reasons explained above, the limits on judicial review in expedited removal are irrelevant. *See* Part I.B., *supra*. That class members may have been subjected to different unlawful procedures stemming from the *same* unlawful policy does not defeat commonality: "A class may satisfy the commonality requirement even if factual distinctions exist among the claims of putative class members," as long as "the party opposing the class has engaged in some course of conduct that affects a group of persons and gives rise to a cause of action." *Coleman v. District of Columbia*, 306 F.R.D. 68, 82 (D.D.C. 2015) (citation omitted).

Third, Defendants again claim that there could potentially be unspecified "future changes" to the Proclamation's implementation. ECF 43 at 11, 36. But regardless of any such changes, the legal question as to the power of the President to abrogate the INA via Proclamation will remain— and Defendants' argument in this regard is inconsistent with their position in their summary judgment briefing, where they maintain that "all legal consequences flow from the Proclamation

13

itself." ECF 44 at 13. Moreover, even if the implementation of the Proclamation should change, "'factual variations among the class members will not defeat the commonality requirement'" provided a "'single' common question" applies. *Damus v. Nielsen*, 313 F. Supp. 3d 317, 332 (D.D.C. 2018) (quoting *Hardy v. District of Columbia*, 283 F.R.D. 20, 24 (D.D.C. 2012)); *accord J.D.*, 925 F.3d at 1321 (stating "the class members assert an entitlement to relief that is entirely unaffected by the myriad factual differences noted by the government" and therefore have raised "common questions . . . apt to drive the resolution of the litigation") (cleaned up).

**B.  Individual Plaintiffs' Claims Are Typical Of Proposed Class Members' Claims.**

Typicality requires that representative plaintiffs "'possess the same interest and suffer the same injury'" as other class members. *O.A.*, 404 F. Supp. 3d at 156 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982)). The focus of the typicality requirement is "'whether the representatives of the class suffered a similar injury from the same course of conduct.'" *Id.* (quoting *Bynum v. District of Columbia*, 214 F.R.D. 27, 34 (D.D.C. 2003)).

As explained in Plaintiffs' motion for class certification, all proposed class members face the same injury of unlawful removal without statutorily mandated protections, based on the same unlawful government policy or practice; and these injuries can be addressed by the same remedies. ECF 13 at 8. Defendants' argument against typicality is based on factual differences between Individual Plaintiffs' experiences and potential class members' experiences. ECF 43 at 32-34. But as discussed above, *supra* at 10-11, the Proclamation and its implementation violate the asylum statute, withholding of removal statute, and other provisions of the INA. Thus, all class members are subjected to an unlawful policy, and "'their injuries derive from a unitary course of conduct by a single system.'" *Huisha-Huisha*, 560 F. Supp. 3d at 156 (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 277 (2d Cir. 1997)).

### C.    Individual Plaintiffs Will Adequately Protect The Interests Of The Proposed Class.

Individual Plaintiffs are adequate class representatives because they do not have "antagonistic or conflicting interests" with the proposed class and "appear able to vigorously prosecute the interests of the class through qualified counsel." *J.D.*, 925 F.3d at 1312 (citation omitted). Defendants' sole challenge to the adequacy of Individual Plaintiffs as class representatives is that some have already been removed or "repatriated" pursuant to the Proclamation, while others have not, creating the possibility that some Individual Plaintiffs (and some categories of class members) may require additional relief. ECF 43 at 37 n.9. But this distinction does not render Individual Plaintiffs inadequate class representatives. As described below, relief is available to the class as a whole. *See infra*, Part III.A. And courts routinely find class representatives to be adequate where named plaintiffs' cases are in different procedural postures or even where a named plaintiff's claims are moot and they no longer require relief. *See, e.g.*, *D.L. v. District of Columbia*, 860 F.3d 713, 726 (D.C. Cir. 2017); *R.I.L.-R v. Johnson*, 80 F. Supp. 3d 164, 180-81 (D.D.C. 2015); *O.A.*, 404 F. Supp. 3d at 117, 156. Such factual differences in the procedural postures of class members' cases do not create "antagonistic or conflicting interests." *See Huisha-Huisha*, 560 F. Supp. 3d at 166 (citation omitted).

## III.    THE PROPOSED CLASS SATISFIES RULE 23(b)'S REQUIREMENTS.

### A.    Classwide Injunctive And Declaratory Relief Is Available.

Defendants argue that Rule 23(b)(2)'s requirements are not met because a single injunction or declaratory judgment would not provide relief to each class member. ECF 43 at 28-29. Defendants are wrong.

Plaintiffs seek injunctive and declaratory relief that will benefit all class members, including to enjoin Defendants from implementing or enforcing the Proclamation to restrict

statutory protections that Congress has provided for noncitizens physically present in the United States; to enjoin Defendants from relying on removal orders issued to noncitizens pursuant to the Proclamation; and to issue a declaratory judgment that Defendants cannot lawfully implement or enforce the Proclamation or the Guidance to restrict statutory protections that Congress has provided for noncitizens who are physically present in the United States. It is irrelevant that such relief may benefit different class members in different ways. *See, e.g.*, *O.A.*, 404 F. Supp. 3d at 157 (defendants' argument "conflates Plaintiffs' challenge to the categorical bar on eligibility for asylum—which applies equally to all members of the putative class—with each putative member of the class's unique interest in seeking asylum"); *Ramirez*, 338 F. Supp. 3d at 48 (Rule 23(b)(2) satisfied where plaintiffs challenged defendants' failure to comply with statutory provisions and seek an injunction requiring compliance; the fact that different individualized determinations are made for different class members "does not preclude class certification"); *Damus*, 313 F. Supp. 3d at 334-35 (Rule 23(b)(2) satisfied where plaintiffs "ask only that the Court address an alleged systemic harm"—the failure of defendants to follow a binding directive regarding release of detainees on parole—regardless of the individual facts of each detainee's case).

Defendants assert that a prospective injunction or declaratory judgment would not redress the claims of those Individual Plaintiffs who have already been removed or repatriated based on the Proclamation. But that is not correct. Plaintiffs seek to prevent Defendants from implementing or enforcing the Proclamation and from relying on removal orders issued pursuant to the Proclamation. Such relief would benefit removed or repatriated class members by (1) enabling them to reapply for asylum without being subject to the Proclamation or Guidance; and (2) relieving them of the adverse consequences of a removal order. *See, e.g.*, 8 U.S.C. §1182(a)(9)(A) (persons removed inadmissible to the United States for a period of five years); *id.*

16

§ 1231(a)(5) (person with prior removal order barred from seeking relief in the United States). And while the removed Individual Plaintiffs and class members may be entitled to additional relief to fully remedy the unlawful harm they have suffered (which Plaintiffs have requested, Pls. MSJ Reply at 32-33), the need for such additional relief does not render a Rule 23(b)(2) class inappropriate. *See, e.g.*, *D.L.*, 860 F.3d at 726 ("Rule 23(b)(2) exists so that parties and courts, especially in civil rights cases like this, can avoid piecemeal litigation when common claims arise from systemic harms that demand injunctive relief.").

**B.    Section 1252(f)(1) Does Not Bar Classwide Injunctive Or Declaratory Relief And Thus Does Not Prevent Class Certification Under Rule 23(b)(2).**

Defendants argue that Plaintiffs cannot satisfy Rule 23(b)(2) because 8 U.S.C. § 1252(f)(1) bars the Court from issuing any form of classwide injunctive or declaratory relief. ECF 43 at 37-46. That, too, is incorrect.

Defendants present the same argument with respect to Section 1252(f)(1) in both their opposition to class certification and in their summary judgment brief. *Compare* ECF 43 at 37-42 *with* ECF 44 at 67-71. For the reasons explained in Plaintiffs' summary judgment reply, Section 1252(f)(1) does not bar a classwide injunction prohibiting Defendants from enforcing the Proclamation itself. *See* Pls. MSJ Reply Part III.B.1. As for the Guidance, Section 1252(f)(1) does not apply to vacatur, and therefore, the Court need not address whether Section 1252(f)(1) would bar an injunction. *See* Pls. MSJ Reply Part III.B.2.[6] Because Section 1252(f)(1) does not bar the Court from enjoining enforcement of the Proclamation on a classwide basis, that provision does not prevent class certification under Rule 23(b)(2). Plaintiffs in any event would still satisfy Rule

---

[6] In any event, Section 1252(f)(1) would not bar injunctive relief as to the Guidance either. *Id.*; *see also supra* Part I.B. (explaining that the Guidance implements only the Proclamation and not the INA's statutory removal procedures).

23(b)(2) because "corresponding declaratory relief is appropriate respecting the class as a whole." *See* Fed. R. Civ. P. 23(b)(2).

First, the D.C. Circuit and this Court have held that Section 1252(f)(1) does not apply to declaratory relief. *Make the Road N.Y.*, 962 F.3d at 635; *O.A.*, 404 F. Supp. 3d at 159. Therefore, even if § 1252(f)(1) applied to Plaintiffs' claims against the Proclamation and Guidance, "it still would not foreclose class treatment because it 'only bars injunctive relief,' not declaratory relief." *See O.A.*, 404 F. Supp. at 159 (citation omitted). Defendants simply ignore this precedent.

"By its plain terms," Section 1252(f)(1) "is nothing more or less than a limit on injunctive relief." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 481 (1999). Its text nowhere mentions declaratory relief. It is titled "Limit on injunctive relief," without reference to declaratory relief or vacatur. *See Biden v. Texas*, 597 U.S. 785, 798 (2022) (Section 1252(f)'s "title … makes clear the narrowness of its scope"). The legislative history likewise refers only to "injunctive relief." H.R. Rep. No. 104-469, pt. 1, at 161 (1996). Where it applies, Section 1252(f)(1) thus simply "prohibits lower courts from *entering injunctions*." *Garland v. Aleman Gonzalez*, 596 U.S. 543, 550 (2022) (emphasis added).

Contrary to Defendants' assertions, declaratory relief is not an injunction—even where it may have a similar result "'as a practical matter . . ..[']" ECF 43 at 42 (quoting Rule 23(b)(2) advisory committee note). "The express purpose of the Federal Declaratory Judgment Act was to provide a milder alternative to the injunction remedy." *Steffel v. Thompson*, 415 U.S. 452, 467 (1974). Moreover, "the only occasions where" the Supreme Court has held "that a preclusion of injunctive relief inevitably led to a denial of declaratory relief have been cases in which principles of federalism militated altogether against federal intervention in a class of adjudications." *Id.* at 472. "Because section 1252(f)(1) concerns federal courts' ability to enjoin the operation of *federal*

law, it does not implicate federalism concerns." *Brito v. Garland*, 22 F.4th 240, 251-52 (1st Cir. 2021).

Meanwhile, the term "restrain" in Section 1252(f)(1) does not do the work Defendants claim. *See* ECF 43 at 41-42. Rather, "restrain and enjoin" is a "common doublet" referring to the most common forms of injunctive relief: injunctions and restraining orders. Bryan A. Garner, Garner's Dictionary of Legal Usage 295-96 (3d ed. 2011); *see also* Fed. R. Civ. P. 65 (providing for "injunctions and restraining orders"); *California v. Arizona*, 452 U.S. 431, 432 (1981) (using "enjoined and restrained" to describe an injunction).

Second, Defendants misunderstand the meaning of "corresponding declaratory relief" in Rule 23(b)(2) as prohibiting "stand-alone declaratory" relief. ECF 43 at 43. "[T]he main purpose of this requirement is to avoid certifying class actions under Rule 23(b)(2) that primarily seek monetary damages." *Reid v. Donelan*, No. CV 13-30125-PBS, 2018 WL 5269992, at *7 (D. Mass. Oct. 23, 2018). Plaintiffs seek no damages here. Accordingly, the Court can enter "['']classwide declaratory relief, which suffices to satisfy Rule 23(b)(2).'" *O.A.*, 404 F. Supp. 3d at 159 (quoting *Reid*, 2018 WL 5269992, at *6).

Finally, contrary to Defendants' assertion, such classwide declaratory relief—even in the absence of an injunction—would be "more than an advisory opinion," ECF 43 at 46. A declaratory *judgment* would bind Defendants; it is not mere advice that they can follow or not as they see fit. *E.g.*, *Cont'l Cas. Co. v. Indian Head Indus., Inc.*, 941 F.3d 828, 835 n.1 (6th Cir. 2019) ("a declaratory judgment declares parties' rights on particular issues, so those parties should be (and are) bound by the . . . judgment's resolution"). The decision in *Onosamba-Ohindo v. Searls*, 678 F. Supp. 3d 364 (W.D.N.Y. 2023), is plainly distinguishable. The court there held that the requested declaratory judgment would be an advisory opinion because it would not "affect[] the

behavior of the defendant towards the plaintiff." *Id.* at 372 (emphasis and quotation marks omitted). Here, by contrast, a declaration that the Proclamation and Guidance are unlawful would have a clear effect on the relationships between the parties: Defendants could not lawfully apply the Proclamation and Guidance to class members.

## CONCLUSION

The Court should certify the proposed Class under Rule 23(a) and 23(b)(2); appoint the Individual Plaintiffs as Class Representatives; and appoint the undersigned as Class Counsel.

Dated: April 7, 2025                          Respectfully submitted,

/s/ Lee Gelernt

Keren Zwick (D.D.C. Bar. No. IL0055)          Lee Gelernt (D.D.C. Bar No. NY0408)
Richard Caldarone (D.C. Bar No. 989575)*      Omar C. Jadwat*
Mary Georgevich*                              American Civil Liberties Union Foundation
National Immigrant Justice Center             Immigrants' Rights Project
111 W. Jackson Blvd.,                         125 Broad Street, 18th Floor
  Suite 800                                   New York, NY 10004
Chicago, IL 60604                             T: 212-549-2660
T: 312-660-1370                               lgelernt@aclu.org
kzwick@immigrantjustice.org                   ojadwat@aclu.org
rcaldarone@immigrantjustice.org
mgeorgevich@immigrantjustice.org

                                              Morgan Russell*
Melissa Crow (D.C. Bar No. 453487)            Cody Wofsy (D.D.C. Bar No. CA00103)
Center for Gender & Refugee Studies           Spencer Amdur*
1121 14th Street, NW, Suite 200               American Civil Liberties Union Foundation
Washington, D.C. 20005                        Immigrants' Rights Project
T: 202-355-4471                               425 California Street, Suite 700
crowmelissa@uclawsf.edu                       San Francisco, CA 94104
                                              T: 415-343-0770
                                              mrussell@aclu.org
Edith Sangueza*                               cwofsy@aclu.org
Center for Gender & Refugee Studies           samdur@aclu.org
26 Broadway, 3rd Floor
New York, NY 10004
T: 415-581-8835                               Arthur B. Spitzer (D.C. Bar No. 235960)
sanguezaedith@uclawsf.edu                     Scott Michelman (D.C. Bar No. 1006945)
                                              American Civil Liberties Union Foundation
                                              of the District of Columbia
Robert Pauw*                                  529 14th Street, NW, Suite 722
Center for Gender & Refugee Studies           Washington, D.C. 20045
c/o Gibbs Houston Pauw                        T: 202-457-0800
1000 Second Avenue, Suite 1600                aspitzer@acludc.org
Seattle, WA 98104                             smichelman@acludc.org
T: 206-682-1080
rpauw@ghp-law.net
                                              Ashley Alcantara Harris*
                                              David A. Donatti*
Daniel Hatoum*                                ACLU Foundation of Texas
Texas Civil Rights Project                    P.O. Box 8306
P.O. Box 219                                  Houston, TX 77288
Alamo, Texas 78516                            TEL: (713) 942-8146
T: 512-474-5073, ext. 208                     FAX: (713) 942-8966
daniel@texascivilrightsproject.org            aharris@aclutx.org
                                              ddonatti@aclutx.org

                                              *Attorneys for Plaintiffs*

*\* Admitted pro hac vice.*