YAAKOV M. ROTH
*Principal Deputy Assistant Attorney General*

DREW C. ENSIGN
*Deputy Assistant Attorney General*

BRIAN C. WARD
*Acting Assistant Director*

PATRICK GLEN
DAVID KIM
KATHERINE J. SHINNERS
*Senior Litigation Counsel*
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
Tel: (202) 598-8259
Email: katherine.j.shinners@usdoj.gov

ELISSA FUDIM
JOSEPH A. DARROW
*Trial Attorneys*

Counsel for Defendants

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| _____ ) | Civil Action No. 1:25-cv-00306 |
| Refugee and Immigrant Center for ) | |
| Education and Legal Services, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| Kristi Noem, Secretary, U.S. Department ) | |
| of Homeland Security, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ................................................................................................................. 1

ARGUMENT ........................................................................................................................ 1

I.    Various Threshold Issues Bar Plaintiffs' Claims. ...................................................... 1

A.    Plaintiffs lack Article III standing. ............................................................................ 1

   1.    Section 1252(f) renders most of Plaintiffs' claims non-redressable .................................. 2

   2.    Plaintiffs lack standing for additional reasons. ................................................. 6

B.    Plaintiffs still fail to clear other threshold bars to relief on their claims. ...................... 11

   1.    Plaintiffs cannot bring an "equitable" cause of action. .................................... 11

   2.    Plaintiffs likewise have no claim to a remedy under the APA. ......................... 13

   3.    Section 1252 bars the Organizations' attempt to enforce the provisions of the expedited removal statute. ............................................................................................. 16

II.   Plaintiffs' Claims Fail on the Merits. ......................................................................... 16

   A.    The INA does not prohibit repatriation of aliens who illegally enter the United States in contravention of a § 1182(f) suspension of entry. ................................................. 16

   B.    The Proclamation permissibly limits applications for relief and protection. .................... 19

   C.    The President has inherent authority under the Constitution to repatriate aliens who illegally enter the United States when entry has been suspended and limit the relief or protection such aliens may seek ...................................................................................... 22

III.  Any Relief Must be Sharply Limited. ......................................................................... 23

   A.    The relief Plaintiffs seek is overbroad. ......................................................... 23

   B.    The equities do not support enjoining the Proclamation. ................................. 24

CONCLUSION ................................................................................................................... 25

# TABLE OF AUTHORITIES

*Abdullah v. Obama*,
  753 F.3d 193 (D.C. Cir. 2014) ................................................................................ 23

*AILA v. Reno*,
  199 F.3d 1352 (D.C. Cir. 2000) ............................................................................... 16

*Al Otro Lado v. Mayorkas*,
  619 F. Supp. 3d 1029 (S.D. Cal. 2022) .................................................................... 4

*Am. Paper Inst. Inc. v. Am. Elec. Power Serv. Corp.*,
  461 U.s. 402 (1983) ................................................................................................. 18

*Am. Tort Reform Ass'n v. Occupational Safety & Health Admin.*,
  738 F.3d 387 (D.C. Cir. 2013) ................................................................................ 14

*Arizona All. for Retired Americans v. Mayes*,
  117 F.4th 1165 (9th Cir. 2024) ............................................................................... 10

*Armstrong v. Exceptional Child Center, Inc.*,
  575 U.S. 320 (2015) ................................................................................................ 12

*Baxter v. Palmigiano*,
  425 U.S. 308 (1976) ................................................................................................ 24

*Bennett v. Spear*,
  520 U.S. 154 (1997) ................................................................................................ 15

*California v. Grace Brethren Church*,
  457 U.S. 393 (1982) .................................................................................................. 6

*Cf. La. Pub. Serv. Comm'n v. FCC*,
  476 U.S. 355 (1986) ................................................................................................ 18

*Coalition for Human Immigrant Rights v. DHS*,
  2025 WL 1078776 (Apr. 10, 2025) ........................................................................... 9

*County of Maui v. Hawaii Wildlife Fund*,
  590 U.S. 165 (2020) ................................................................................................ 17

*Dalton v. Specter*,
  511 U.S. 462 (1994) ................................................................................................ 12

*Dep't of Homeland Sec. v. Thuraissigiam*,
  591 U.S. 103 (2020) ................................................................................................ 20

*Doe 2 v. Trump,*
  319 F. Supp. 3d 539 (D.D.C. 2018) ........................................................................12

*E. Bay Sanctuary Covenant v. Biden*,
  683 F. Supp. 3d 1025 (N.D. Cal. 2023) ................................................................. 10

*E. Bay Sanctuary Covenant v. Trump,*
  ---F. 4th ---, 2024 WL 5510333 (9th Cir. Apr. 10, 2025) ....................................10

*FDA v. Alliance for Hippocratic Medicine,*
  602 U.S. 367 (2024).................................................................................... 7, 8, 9

*Federal Express Corp. v. U.S. Dep't of Commerce*,
  39 F.4th 756 (D.C. Cir. 2022)............................................................................. 13

*Fiallo v. Bell,*
  430 U.S. 787, 796 (1977)..................................................................................... 11

*Fong Yue Ting v. United States,*
  149 U.S. 698 (1893).............................................................................................. 22

*Food & Water Watch, Inc. v. Vilsack,*
  808 F.3d 905 (D.C. Cir. 2015)............................................................................. 9

*Franklin v. Massachusetts*,
  505 U.S. 788 (1992)............................................................................................ 12

*Friends of the Earth, Inc. v. Laidlaw Env't Servs., Inc.*,
  528 U.S. 167 (2000).............................................................................................. 2

*Garland v. Aleman Gonzalez,*
  596 U.S. 543 (2022).................................................................................. 2, 3, 4, 5, 6

*Gill v. Whitford*,
  585 U.S. 48 (2018)............................................................................................... 23

*Gonzales v. DHS,*
  508 F.3d 1227 (9th Cir. 2007) ......................................................................... 4, 5

*Harisiades v. Shaughnessy,*
  342 U.S. 580 (1952)............................................................................................. 11

*Harmon v. Brucker,*
  355 U.S. 579 (1958)............................................................................................. 13

*Havens Realty Corp. v. Coleman*,
  455 U.S. 363 (1982) ............................................................................................. 8

*Huisha-Huisha v. Mayorkas*,
  27 F.4th 718 (D.C. Cir. 2022) .........................................................................19, 21

*Indep. Equip. Dealers Ass'n v. E.P.A.*,
  372 F.3d 420 (D.C. Cir. 2004) ............................................................................ 14

*INS v. Legalization Assistance Project of L.A. Cty. Fed'n of Labor*,
  510 U.S. 1301 (1993) .......................................................................................... 13

*Int'l Academy of Oral Medicine & Toxicology*,
  195 F. Supp. 3d 243 (D.D.C. 2016) ..................................................................... 9

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ............................................................................................ 10

*Make The Rd. New York v. Wolf*,
  962 F.3d 612 (D.C. Cir. 2020) ........................................................................ 6, 16

*Mississippi v. Johnson*,
  71 U.S. 475 (1867) .............................................................................................. 12

*Mountain States Legal Found. v. Glickman*,
  92 F.3d 1228 (D.C. Cir. 1996) ............................................................................ 14

*Nat'l Ctr. for Immigrants Rights, Inc. v. INS*,
  743 F.2d 1365 (9th Cir. 1984) ............................................................................ 24

*Nat'l Taxpayers Union, Inc. v. United States*,
  68 F.3d 1428 (D.C Cir. 1995) .............................................................................. 9

*Newdow v. Roberts*,
  603 F.3d 1003 (D.C. Cir. 2010) ...................................................................... 6, 12

*O.A. v. Trump*,
  404 F. Supp. 3d 109 (D.D.C. 2019) ................................................................ 4, 21

*O'Shea v. Littleton*,
  414 U.S. 488 (1974) .............................................................................................. 7

*Reno v. AADC*,
  525 U.S. 471 (1999) .............................................................................................. 2

*Sale v. Haitian Centers Council, Inc.*,
  509 U.S 155 (1993) ............................................................................................. 19

*Steel Co. v. Citizens for a Better Env't,*
    523 U.S. 83 (1998) ................................................................................................. 2

*Summers v. Earth Island Inst.,*
    555 U.S. 488 (2009) ............................................................................................. 6

*Swanson Grp. Mfg. LLC v. Jewell,*
    790 F.3d 235 (D.C. Cir. 2015) ........................................................................... 10

*Texas v. United States,*
    599 U.S. 670 (2023) ...................................................................................... 7, 8, 14

*Thompson v. N. Am. Stainless, LP,*
    562 U.S. 170 (2011) ........................................................................................... 13

*Thorpe v. D.C.,*
    303 F.R.D. 120 (D.D.C. 2014) ........................................................................... 24

*Trump v. Hawaii,*
    585 U.S. 667 (0018). ............................................. 11, 13, 15, 20, 22, 25

*United States ex rel. Knauff v. Shaughnessy,*
    338 U.S. 537 (1950) ..................................................................................... 11, 22

*Viasat, Inc. v. Fed. Commc'ns Comm'n,*
    47 F.4th 769 (D.C. Cir. 2022) ............................................................................ 10

*Wal-Mart Stores, Inc. v. Dukes,*
    564 U.S. 338 (2011) ........................................................................................... 24

*Webster v. Doe,*
    486 U.S. 592 (1998) ........................................................................................... 16

## STATUTES

5 U.S.C. § 701(a)(2) .............................................................................................. 16

8 U.S.C. § 1101(a)(13) .......................................................................................... 20

8 U.S.C. § 1158 ....................................................................................................... 4

8 U.S.C. § 1182(f) ......................................................................................... *passim*

8 U.S.C. § 1225(b) .................................................................................................. 2

8 U.S.C. § 1225(b)(1)(A)(i) ..................................................................................... 4

8 U.S.C. § 1229a ............................................................................................ 2

8 U.S.C. §1229a(a)(3) ..................................................................................... 17

8 U.S.C. § 1231(a)(5) ..................................................................................... 4

8 U.S.C. § 1231(b)(3)(A) ................................................................................. 2

8 U.S.C. § 1252(a)(2)(A) ................................................................................. 16

8 U.S.C. § 1252(a)(2)(A)(i) ............................................................................. 17

8 U.S.C. § 1252(e) .......................................................................................... 17

8 U.S.C. § 1255a ............................................................................................ 13

## **REGULATIONS**

8 C.F.R. § 208.30 ........................................................................................... 22

8 C.F.R. § 208.30(a) ....................................................................................... 22

90 Fed. Reg. 8334 ........................................................................................... 15

90 Fed. Reg. 8336 ........................................................................................... 15

## **FEDERAL RULES OF CIVIL PROCEDURE**

Fed. R. Civ. P. 65(c) ...................................................................................... 25

## INTRODUCTION

After years of unprecedented levels of illegal border crossings that were unquestionably detrimental to the interests of the United States, the President issued Proclamation 10888 (the "Proclamation"), which suspends the entry of certain aliens who seek to enter the United States. That Proclamation was issued in accordance with the President's congressionally-granted and constitutional authority. Plaintiffs ask the Court to disregard this authority and override the President's judgment. However, they do not (and cannot) challenge the President's authority to prevent aliens from physically crossing the border to enter the United States. That authority to suspend entry necessarily encompasses the authority to expeditiously remove and repatriate those that cross the border in violation of the suspension on entry. Otherwise, the suspension on entry lacks any effect on illegal border crossings. Accordingly, Plaintiffs' claims that the Proclamation and the guidance implementing it exceed statutory authority or violate other provisions of the Immigration and Nationality Act (INA) are without merit.

The Court should deny Plaintiffs' motion for summary judgment and grant judgment to Defendants on all claims. Various threshold bars prevent Plaintiffs from challenging the Proclamation. And even if Plaintiffs could raise their claims, the President has broad discretion under the INA and Article II to suspend entry of classes of aliens. Finally, even if some relief were permitted here, settled constitutional and statutory principles dictate that any relief must be sharply limited.

## ARGUMENT

### I.    Various Threshold Issues Bar Plaintiffs' Claims.

#### A.    Plaintiffs lack Article III standing.

Plaintiffs must establish standing separately for each form of relief they seek, *Friends of*

*the Earth, Inc. v. Laidlaw Env't Servs., Inc.*, 528 U.S. 167, 185 (2000), which entails showing that the requested relief will redress his or her injury, *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998). The Court must thus examine whether each Plaintiff has standing for each form of relief sought.

**1.  Section 1252(f) renders most of Plaintiffs' claims non-redressable.**

At the threshold, nearly all of Plaintiffs' claims are not redressable because Congress has foreclosed equitable relief and because vacatur of the agency guidance does not relieve Plaintiffs from the terms of the Proclamation itself. *See* ECF 44 at 13. The Court lacks authority under § 1252(f)(1) to grant Plaintiffs' request to enjoin the implementation of the Proclamation. Plaintiffs request the Court enjoin Defendants from "implementing or enforcing" the Proclamation to restrict class members' invocation of "statutory protections," "relying on the Proclamation to engage in 'repatriations' or removals of class members," "depart[ing] from … screening standards for claims under the Convention Against Torture," and "rely[ing] on removal orders issued . . . pursuant to the Proclamation." ECF No. 51-1; ECF 52 at 32–33. The "protections" Plaintiffs seek to enforce through this relief include withholding of removal under 8 U.S.C. § 1231(b)(3)(A) and access to removal proceedings under 8 U.S.C. § 1229a or to certain expedited removal procedures under 8 U.S.C. § 1225(b), where aliens may raise claims for asylum or CAT protection, *see* ECF No. 52 at 2–16; *see also* Am. Compl. ¶¶ 42–50, 70–84. Congress has prohibited lower courts from entering such class-wide relief. ECF 44 at 54–58. Section 1252(f)(1) "generally prohibits lower courts from entering injunctions that order federal officials to take or to refrain from taking actions to enforce, implement, or otherwise carry out the specified statutory provisions," *Garland v. Aleman Gonzalez*, 596 U.S. 543, 550 (2022), except in "individual cases" of aliens already in immigration proceedings, *Reno v. AADC*, 525 U.S. 471, 481–82 (1999).

2

Section 1252(f)(1) Prohibits an Injunction. Prohibiting the wholesale implementation or enforcement of the Proclamation—whether through injunctive relief or vacatur of implementing guidance or actions—would violate § 1252(f)(1) because it would compel DHS to implement expedited removal, removal proceedings, and withholding of removal—all provisions covered by § 1252(f)(1)—in a particular way. ECF 44 at 55–56. Further, Plaintiffs' requested relief would compel aliens subject to the Proclamation to be considered for relief under § 1231 that they cannot access by virtue of that Proclamation. Compelling immigration officers to operate these provisions in this manner—or any specific manner—is precisely what Congress prohibited. *See Aleman Gonzalez*, 596 U.S. at 550 (Section 1252(f)(1)'s prohibition applies "not just to the statute itself but to the way that it is being carried out"). It would also impermissibly preclude DHS from relying on removal orders issued under covered provisions.

Plaintiffs argue that "enjoining Defendants from enforcing the Proclamation would not compel them to implement Sections 1225(b)(1) or 1229a in any 'specific manner,'" but then concede that "[e]njoining the Proclamation would simply restore the pre-January 20 status quo" under which Defendants had to place the individuals at issue in either full or expedited removal proceedings, proving Defendants' point. ECF No. 52 at 38.[1] Plaintiffs contend that the necessary implementation of section 1225, 1229a and 1231 under their proposal represents mere "collateral consequences" that do not trigger the section 1252(f)(1) bar. *Id.* at 29-31. Plaintiffs rely on *O.A. v. Trump* and *Gonzales v. Department of Homeland Security* for this premise, *id.*, but neither case is apposite. Unlike here, where Plaintiffs are admittedly seeking to enforce procedural "statutory

---

[1] Plaintiffs' hypothetical scenario of extra-statutory repatriation of lawful permanent residents is not on point. *See* ECF 52 at 38. Here, the authority to repatriate arises from § 1182(f) and is limited to effectuating the suspension of entry. In Plaintiffs' hypothetical scenario, the government is acting without any statutory authority; presumably a plaintiff in such a case would seek a remedy other than enforcing Title 8 removal proceedings for those individuals.

protections" contained in sections 1225, 1229a and 1231, in *O.A.*, the Plaintiffs were seeking to enjoin the application of a substantive asylum rule under 8 U.S.C. § 1158. *O.A. v. Trump*, 404 F. Supp. 3d 109, 158 (D.D.C. 2019). Although Defendants respectfully maintain that the decision in *O.A.* was incorrect, this case is different. Unlike in *O.A.*, Plaintiffs' requested injunction would not merely affect the part of the authorities the government applied in removal proceedings, it would require the government to implement removal proceedings. *See id.*

And *Gonzales*'s holding was based on prior, pre-*Aleman Gonzalez* Ninth Circuit precedent that does not govern here. *See Gonzales v. DHS*, 508 F.3d 1227, 1233 (9th Cir. 2007). Moreover, the "collateral" finding in that case involved a much more attenuated impact on the government's ability to reinstate a removal order under 8 U.S.C. § 1231(a)(5) due to adjustment of status relief, *id.*, than the direct consequence of injunction presented here. *Compare* 8 U.S.C. § 1231(a)(5) (giving DHS discretion to remove an alien who illegally entered following removal "at any time after reentry") *with* 8 U.S.C. § 1225(b)(1)(A)(i) (providing DHS "shall order the alien" attempting to enter the United States without authorization "removed from the United States without further hearing or review"); *see Gonzalez*, 508 F.3d at 1233 (arguing "application of the reinstatement provision is … one of several available recourses following the denial of an adjustment of status application").

Further, *O.A.* relied on an argument Plaintiffs concede *Aleman Gonzalez* has rejected: that § 1252(f)(1) does not apply where the plaintiff argues that an injunction would remedy a *violation of* covered statutes. ECF 52 at 39 n.26. *Aleman Gonzalez* concluded "even injunctions that 'enjoin or restrain' the 'unlawful' or 'improper operation,' *i.e.*, violations, of § 1252(f)(1)'s covered provisions clash with that statute's remedy bar." *Al Otro Lado v. Mayorkas*, 619 F. Supp. 3d 1029, 1042 (S.D. Cal. 2022). Plaintiffs fail to recognize that this dooms their argument. The reason the

Proclamation is unlawful, they argue, is because it violates other provisions in the INA, including sections 1229a and 1231. *See, e.g.*, ECF 52 at 2 (arguing Proclamation authority "does not authorize Defendants to remove noncitizens in contravention of other statutory protections"). Hence, regardless of their rhetorical focus on the Proclamation, what they seek is an injunction rectifying these alleged violations of statutes within section 1252(f)(1)'s scope, *i.e.*, an injunction of an alleged violation of a statutory obligation that *Aleman Gonzalez* prohibits.

Section 1252(f)(1) Also Bars Vacatur. The plain language of § 1252(f)(1) does not limit itself to injunctions. ECF 44 at 56–57. A court may not impose coercive relief that "interfere[s] with the Government's efforts to operate" the covered provisions in a particular way, regardless of whether through an injunction or vacatur. *Aleman Gonzalez*, 596 U.S. at 551.

Plaintiffs contend that out-of-circuit cases have rejected this reasoning, but they do not control here and are not persuasive. *See* ECF 52 at 31. Plaintiffs' argument that "the term 'restrain' in Section 1252(f)(1) does not do the work Defendants claim" because "'restrain and enjoin' is a 'common doublet' referring to the canonical forms of injunctive relief," *id.*, misses the mark. Section 1252(f)(1) says "enjoin *or* restrain." The use of the disjunctive indicates that Congress was not employing that "common doublet" here and that the terms "enjoin" and "restrain" in the statute should be given separate meaning. Finally, contrary to Plaintiffs' contention, *id.*, the legislative history of the statute supports Defendants' position. Congress indicated that the added "limitations" in section 1252 "do not preclude challenges to the new procedures, but the procedures will remain in force while such lawsuits are pending," suggesting that the statute was intended to prevent any intervention, such as vacatur, that would render agency actions inoperative until final review by the Supreme Court. H.R. Rep. No. 104-469, pt.

1, at 161 (Conference Report).[2]

### 2. Plaintiffs lack standing for additional reasons.

*Individual Plaintiffs.* The Individual Plaintiffs who are outside the United States lack standing to seek *prospective* relief against the Proclamation because they have failed to show a likelihood that they will be subject to the Proclamation again. *See* ECF 44 at 12. Those within the United States likewise lack standing to seek prospective relief, as they may be processed for removal under non-Proclamation authorities pending litigation, as with Plaintiff A.M. ECF 52 at 17 n.8. Most of Plaintiffs' responsive arguments ignore this distinction and focus on whether these Plaintiffs have suffered a past injury. *See* ECF 52 at 17–18. But prospectively enjoining or declaring unlawful implementation of the Proclamation's restriction on invoking asylum or withholding of removal does not remedy that past injury. *See* ECF 52 at 32–33 ¶¶ 1, 3(a), 3(c), 4. Although Plaintiffs say it is not "speculative" that each of the Plaintiffs outside the United States will be subject to the Proclamation again, ECF 52 at 18, that assertion is not supported by the evidence. None of them have expressed a clear intent to try to unlawfully re-enter the United States in defiance of the Proclamation's suspensions of entry; at most, they have expressed a general desire to seek asylum. *See* ECF 52 at 18 (citing ECF 12-8 at ¶ 15); *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009) ("Such 'some day' intentions—without any description of concrete plans, or indeed even any specification of *when* the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require." (cleaned up)). Further, a plaintiff

---

[2] It remains the government's view that § 1252(f)(1) also bars declaratory relief. *See Aleman Gonzalez*, 596 U.S. at 551 n.2; *cf. California v. Grace Brethren Church*, 457 U.S. 393, 408 (1982) (Tax Injunction act barred declaratory relief as well as injunctive relief); *Newdow v. Roberts*, 603 F.3d 1002, 1012 (D.C. Cir. 2010). The government recognizes, however, that the D.C. Circuit has held otherwise in an opinion pre-dating *Aleman Gonzalez*. *Make The Rd. New York v. Wolf*, 962 F.3d 612, 635 (D.C. Cir. 2020).

cannot base his standing on an intent to commit illegal acts—such as crossing the border without authorization and in contravention of the Proclamation. *See O'Shea v. Littleton*, 414 U.S. 488, 497 (1974). These Plaintiffs seek facilitation of their return to the United States as a remedy, ECF 52 at 19, but even if that relief were available, the prospect of re-entry contingent on the Court ordering relief on their claims cannot possibly form the basis to find standing on the same claims.

Further, the claimed past injury from application of the Proclamation is not redressable by much of the relief Plaintiffs seek. Plaintiffs still identify no affirmative legal requirement to facilitate their entry to the United States, even if they succeed on their claims. *See* ECF 44 at 12–13. Plaintiffs' new suggestion that the Court could grant retrospective relief to the removed Individual Plaintiffs (and to the proposed class) by "preclud[ing] enforcement of the Proclamation and Guidance" that would prevent them from crossing the border into the United States at a Port of Entry, ECF 52 at 19, 33 ¶ 6, fails for the same reason. *See also infra* § III(A). Indeed, Plaintiffs do not challenge the portion of the Proclamation that prohibits physical entry to the United States, and they do not argue that the President lacks authority to suspend such entry.

*Organizations.* The Plaintiff Organizations likewise lack a judicially cognizable injury because they are not directly regulated by the Proclamation. ECF 44 at § I(B) (citing *Texas v. United States,* 599 U.S. 670 (2023) (*Texas*) and *FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367 (2024) (*Alliance*)). Contrary to Plaintiffs' arguments (ECF 52 at 22), the Supreme Court's holding in *Texas* applies equally here, because the Organizations assert a downstream injury from the application of a discretionary immigration enforcement policy to others. The reasoning underlying that holding is not limited to claims made by States, or to claims challenging non-prosecution policies. It stands for the broader principle that a non-regulated party's injury based only on an indirect impact flowing from immigration enforcement policy is not judicially

cognizable. And Plaintiffs do not dispute that each of the reasons articulated in *Texas* to support its conclusion that the plaintiff States lacked standing—including that discretionary immigration enforcement decisions relating to third parties involve no exercise of coercive power over the plaintiff; that those decisions implicate Article II and foreign policy concerns; and that courts lack "meaningful standards" to assess such decisions, *see id.* at 678–81—apply with equal force here. *See* ECF 44 at 14–15.

Nor have the Organizations asserted the type of impairment to their existing activities that could amount to a cognizable injury under *Havens Realty*. *See* ECF 44 at 15–21. As the Supreme Court made clear in *Alliance*, *Havens Realty* was an "unusual case" where the defendant, as part of its challenged practice, had provided the organizational plaintiff's employees "false information about apartment availability," thereby "perceptibly impair[ing] [the organization's] ability to provide counseling and referral services to" its home-seeking clients. *Alliance*, 602 U.S. at 395-96 (discussing *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982)). The Organizations here do not claim any "false information" and have failed to demonstrate any direct interference with their ability to perform their activities. That means their injuries are not cognizable.

The Organizations first argue their core business activities are impeded because asylum-seekers can no longer pursue asylum or other relief due to the Proclamation. *See* ECF 52 at 20; *see also id.* at 22. That, at most, amounts to an abstract injury to the Organizations' mission of ensuring aliens a "meaningful opportunity" to present claims to asylum, *id.* at 20, rather than a direct impairment of their provision of guidance or legal assistance to asylum-seekers still in Mexico or to whom asylum relief is available. *See* ECF 44 at 16–17, 18 (citing, *inter alia*, *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 919 (D.C. Cir. 2015)). An injury to the Organizations' interests is not the same thing as an impairment of their ability to serve asylum-seekers.

8

The Organizations next assert they have "divert[ed]" resources to advocating for aliens subject to the Proclamation and educating their staff and the community about the Proclamation, including updating training materials (*see* ECF 52 at 21), but "expend[ing] resources to educate" people about the Proclamation or to advocate for aliens in custody are the type of activities taken in *response* to a government policy that cannot satisfy standing. *See Food & Water Watch*, 808 F.3d at 920; *Alliance*, 602 U.S. at 394; *Nat'l Taxpayers Union, Inc. v. United States,* 68 F.3d 1428, 1434 (D.C Cir. 1995); ECF 44 at 20–21. To the extent that any D.C. Circuit or district-court case law suggests that an organization can establish standing merely by expending resources in response to a new policy that runs counter to its mission, such precedent cannot be reconciled with the Supreme Court's ruling in *Alliance*. *See* ECF 44 at 20–21. Indeed, the very activities that the Organizations claim as injury—educating people about the Proclamation or advising potential clients—represent a "continuation" of the "core set of activities" (providing guidance to asylum-seekers) that the Organizations were already conducting in furtherance of their mission, and thus cannot satisfy the injury-in-fact requirement. *See* ECF 44 at 21 (quoting *Int'l Academy of Oral Medicine & Toxicology*, 195 F. Supp. 3d 243, 258 (D.D.C. 2016)); *see also Coalition for Human Immigrant Rights v. DHS*, 2025 WL 1078776, at *5 (D.D.C. Apr. 10, 2025) (*CHIR*) ("When a nonprofit merely expands its operations to address increased demands in the communities it serves, its activities have not been tampered with."). To allow any shifts in operational spending in response to a government policy to constitute an injury would mean any organization could "claim injury-in-fact nearly any time there was a change in the law relevant to its mission." *CHIR*, 2025 WL 1078776, at *6. Moreover, the outreach and other activities the Organizations admit to have conducted since the Proclamation was issued belie their assertion that they have been "deprived"

of the ability to carry out their core activities. *See* ECF 52 at 22.[3]

Finally, the Organizations still do not demonstrate that they are likely to imminently lose funding as a result of the Proclamation. *Swanson Grp. Mfg. LLC v. Jewell*, 790 F.3d 235, 240 (D.C. Cir. 2015) (holding the Organizations must show "a substantial probability of injury" to obtain universal relief); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 571 n.4 (1992) (injury must be "actual or imminent" at the time of filing suit). As already noted, at most, two Organizations speculate that the Proclamation *may* have some future impact on funding sources. *See* ECF 44 at 19. The only specific funding stream Plaintiffs identify concerns the Florence Project's referrals to serve as appointed counsel for *Franco-Gonzalez* class members in removal proceedings. But Plaintiffs claim only 5 to 25% of their current cases arise from a population who sought asylum at the border. In any event, they also do not explain why any speculative, projected change in the demographics of the population who need *Franco-Gonzalez* counsel will mean that the Florence Project will handle fewer cases overall. Without specific information about the alleged funding impacts, Plaintiffs cannot meet their burden to show a probable funding loss that is traceable to the aspects of the Proclamation they challenge. *See Viasat, Inc. v. Fed. Commc'ns Comm'n*, 47 F.4th 769, 781 (D.C. Cir. 2022) (finding lack of standing where organization did not provide

---

[3] Plaintiffs rely heavily on two Ninth Circuit organizational-standing rulings in the *East Bay* challenges to rules limiting asylum eligibility. *See* ECF 52 at 21. But these decisions are not in line with *Alliance*, as the Ninth Circuit has already begun to recognize. First, the Ninth Circuit recently determined that the Supreme Court's "new guidance" in *Alliance* warranted vacating the *East Bay* district court's latest ruling finding organizational standing based on evidence that "the Rule will frustrate [the plaintiff organizations'] organizational goals, require diversion of resources, and substantially affect their funding." *E. Bay Sanctuary Covenant v. Biden*, 683 F. Supp. 3d 1025, 1037 (N.D. Cal. 2023), *vacated by E. Bay Sanctuary Covenant v. Trump*, --- F. 4th ---, 2024 WL 5510333, at *2 (9th Cir. Apr. 10, 2025). Second, a panel decision that has since been vacated for rehearing *en banc* revised the Circuit's approach to organizational standing in light of *Alliance*. *See Arizona All. for Retired Americans v. Mayes*, 117 F.4th 1165, 1170 (9th Cir. 2024), *reh'g en banc granted, opinion vacated*, 130 F.4th 1177 (9th Cir. 2025).

specifics to support theory of injury). The Organizations thus lack Article III standing.

**B.      Plaintiffs still fail to clear other threshold bars to relief on their claims.**

At the threshold, Plaintiffs' claims that the Proclamation and Guidance exceed the President's authority under the INA are not judicially reviewable at all. *See, e.g.*, *Fiallo v. Bell*, 430 U.S. 787, 796 (1977) (decisions made by "the President in the area of immigration" such as entry restrictions and conditions "wholly outside the power of this Court to control" (citation omitted)); *Harisiades v. Shaughnessy*, 342 U.S. 580, 589 (1952) ("any policy toward aliens . . . so exclusively entrusted to the political branches of government as to be largely immune from judicial inquiry or interference"); *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 543 (1950) ("not within the province of any court, unless expressly authorized by law, to review the determination of the political branch of the Government to exclude a given alien"). Contrary to Plaintiffs' suggestion (ECF 52 at 24), the Supreme Court in *Hawaii* did not hold that statutory challenges to exercises of § 1182(f) authority are reviewable; it "assume[d] without deciding that [the] statutory claims are reviewable" because the Court found those claims to lack merit. *Trump v. Hawaii*, 585 U.S. 667, 682–83 (2018). This Court could take the same course if it finds that Plaintiffs' claims lack merit. But if this Court wishes to confront the "difficult question" (*id.*) of reviewability, it should hold that Plaintiffs' challenges to the Proclamation are not reviewable, and that Plaintiffs cannot evade that bar by purporting to challenge the agencies' implementation of the Proclamation.

**1.  Plaintiffs cannot bring an "equitable" cause of action.**

Plaintiffs next invoke "[l]ongstanding equitable principles" to suggest that they can challenge the agencies' enforcement of the Proclamation. But these are simply recast challenges to the Proclamation itself. *See* ECF 52 at 24 (characterizing the Proclamation as "a decision by the

President to disregard [a] congressional mandate"). And in any event, the President acted within his inherent and congressionally-specified authority to suspend entry, and it is the parameters of that suspension on entry that Plaintiffs challenge. The "principles" they rely on pertain more to limited suits "seeking to enjoin the *officers* who attempt to enforce" a presidential action, and do not announce any right to bring claims against a President "for the performance of [his executive] duties." *Franklin v. Massachusetts*, 505 U.S. 788, 828–29 (1992) (Scalia, J., concurring in part) (emphasis added). As Defendants have explained, *see* ECF 44 at 28–30, courts are categorically barred from issuing injunctions that would purport "to enjoin" or otherwise constrain "the President in the performance of his official duties," *Mississippi v. Johnson*, 71 U.S. 475, 501 (1867), and no less than "[s]ound separation-of-power principles counsel" against granting "relief against the President directly," *Doe 2 v. Trump*, 319 F. Supp. 3d 539, 541 (D.D.C. 2018); *Newdow*, 603 F.3d at 1013 ("[C]ourts do not have jurisdiction to enjoin [the President], and have never submitted the President to declaratory relief")).

To the extent Plaintiffs rely on *Armstrong v. Exceptional Child Center, Inc.*, 575 U.S. 320 (2015), to challenge the Proclamation's implementation (ECF 52 at 23), that case pertains to constitutional claims. *See Armstrong*, 575 U.S. at 327 (discussing the source of the "ability to sue to enjoin constitutional actions by state and federal officers"). But Plaintiffs' claims here are *statutory* claims, even if dressed in separation-of-powers garb. *See Dalton v. Specter*, 511 U.S. 462, 471-73 (1994). In any event, whatever review might be available "outside the framework of the APA," "longstanding authority holds that such review is not available when the statute in question commits the decision to the discretion of the President," *Dalton*, 511 U.S. at 474, as

§ 1182(f) plainly does.[4]

### 2. Plaintiffs likewise have no claim to a remedy under the APA.

**Zone of interests.** The Organizations argue they are within the zone of interests of the INA

because certain INA provisions mention "pro bono attorneys" and "organizations." ECF 52 at 25

& n.16.[5] But a plaintiff must fall "within the zone of interests sought to be protected by the

statutory provision whose violation forms the legal basis for his complaint." *Thompson v. N. Am.*

*Stainless, LP*, 562 U.S. 170, 177 (2011). The organizations cannot rely on portions of the INA not

at issue in this case, and nothing in §§ 1158, 1225, and 1231 (or § 1182(f)) mentions nonprofit

organizations or their interests. Plaintiffs point to two provisions regarding an alien's right to

"consult" before a credible fear interview (§ 1225(b)(1)(B)(iv)) and to information on the privilege

of counsel in the context of an asylum application (*id.* § 1158(d)(4)(A)-(B)), but these provisions

are concerned with the alien. They do not evince any concerns with the interests of organizations

who may provide services to the alien or with the Organizations' interest in providing legal

representation to aliens and migrants. *See Mountain States Legal Found. v. Glickman*, 92 F.3d

1228, 1232 (D.C. Cir. 1996) ("[O]n any given claim the injury that supplies constitutional standing

must be the same as the injury within the requisite 'zone of interests.'"). And the Supreme Court

recently reinforced that non-regulated parties have no general cognizable interest in how the INA

---

[4] To the extent Plaintiffs are suggesting they have an ultra vires claim, such claims are "confined" to "extreme agency error where the agency has stepped so plainly beyond the bounds of its statutory authority … as to warrant the immediate intervention of an equity court." *Federal Express Corp. v. U.S. Dep't of Commerce*, 39 F.4th 756, 764 (D.C. Cir. 2022) (cleaned up). Here, the agencies are implementing Presidential authority under § 1182(f), which "exudes deference to the President in every clause." *Hawaii*, 585 U.S. at 684. Given the scope of statutory authority, there is no viable claim that the Proclamation or its implementation exceeds the President's "express or implied powers." *Harmon v. Brucker*, 355 U.S. 579, 581-82 (1958).

[5] Contrary to Plaintiffs' assertion, ECF 35 n.17, Justice O'Connor's decision in *INS v. Legalization Assistance Project of L.A. Cty. Fed'n of Labor*, 510 U.S. 1301 (1993), involved provisions of the INA. *See id.* at 1302 (discussing INA amendments at 8 U.S.C. § 1255a).

is enforced against others. *Texas*, 599 U.S. at 677. As explained, the Court's reasoning broadly encompasses discretionary immigration enforcement, and is not limited to direct attacks on non-prosecution policies. *See supra* at 7–8.

**Final agency action.** Plaintiffs contend that final agency action apart from the Proclamation exists in the form of the guidance circulated internally by the agencies to "announce"—in Plaintiffs' own words—the provisions of the Proclamation. Am. Compl. ¶ 135. But agency guidance that simply "restate[s]" legal requirements derived from independent sources of law is "purely informational in nature" and lacks the finality required to challenge a purported agency action. *Indep. Equip. Dealers Ass'n v. E.P.A.*, 372 F.3d 420, 427 (D.C. Cir. 2004); *see, e.g.*, *Am. Tort Reform Ass'n v. Occupational Safety & Health Admin.*, 738 F.3d 387, 395 (D.C. Cir. 2013) (holding that "interpretative rules or statements of policy" are not subject to APA review "because they are not finally determinative of the issues or rights to which they addressed" (cleaned up)).

Plaintiffs do not address any of these authorities. Instead, they suggest that the internal guidance, and not the Proclamation itself, constitutes the "final step" that gives rise to the legal consequences of which they complain. ECF 52 at 26–27. They point, in particular, to the direction in the Proclamation that the agencies "take all appropriate action to repel, repatriate, or remove any alien engaged in the invasion across the southern border." 90 Fed. Reg. at 8336. Above that direction, however, lies the central provision suspending the entry of all such aliens pursuant to the President's constitutional authority. *Id.* at 8335. Nowhere in the Proclamation does the President suggest that the suspension of entry is conditional or turns on the performance of ancillary agency actions. To the extent aliens are removed or repatriated because they entered in violation of the Proclamation, that is a direct legal consequence of the President's suspension

order, not an outcome dictated by the guidance. *See Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (explaining that a final agency action must be one from which legal consequences "will flow"). Indeed, if the guidance alone were somehow enjoined or vacated as a result of this action, the Plaintiffs would still be able to be repatriated under the Proclamation's authority.

Plaintiffs nevertheless argue that, absent the guidance, they "would not even know who is subject to the Proclamation"—including any illegal aliens encountered between ports of entry. ECF 52 at 27. But the Proclamation takes care to address its own scope, declaring that "the President has the power to deny entry of *any* alien into the United States," and not just aliens seeking to come in "through ports of entry." 90 Fed. Reg. at 8334 (emphasis added). The guidance, reflecting those terms, thus notes that the Proclamation applies to "*all* illegal aliens encountered by U.S. Border Patrol between the ports of entry at the southern land border." ECF 44-1 at 2 (emphasis added).[6] It also specifies that it is the Proclamation that "suspends and limits entry" of such aliens. *Id.* Crucially, the guidance does not adopt any substantive rules, instead limiting itself to reiterating what the Proclamation requires of its own force.

**Committed to agency discretion by law.** Plaintiffs argue that the APA's bar on review of agency action "committed to agency discretion by law" does not apply because their APA claims challenge only the guidance, not the Proclamation itself. ECF 52 at 27–28. But the agency guidance is inseparable from the Proclamation. In its motion, the government referenced 5 U.S.C. § 701(a)(2) only to note that, even if APA review did somehow exist for challenges to presidential

---

[6] Plaintiffs rely heavily on the fact that the guidance provides that unaccompanied alien children ("UACs") are not subject to the Proclamation's terms and will "continue to be processed under normal processing procedures consistent with the [Trafficking Victims Protection Reauthorization Act ("TVPRA")]." ECF 52-1 at 4. But even if this aspect of the guidance concerning the processing of UACs could constitute a final agency action, Plaintiffs, who are not UACs, lack standing to challenge such action. And this small piece of the guidance, which is not at issue here, does not support Plaintiffs' attempt to characterize unrelated aspects of the guidance as final agency action.

actions, Plaintiffs still could not escape the bar at § 701(a)(2). "By its terms, § 1182(f) exudes deference to the President," *Hawaii*, 585 U.S. at 684, which "foreclose[s] the application of any meaningful judicial standard of review" in this case. *Webster v. Doe*, 486 U.S. 592, 600 (1998).

> **3. Section 1252 bars the Organizations' attempt to enforce the provisions of the expedited removal statute.**

Plaintiffs repeatedly challenge the Proclamation based on their belief that it "contradicts the specific restrictions" found in the expedited removal statute, § 1225(b)(1), and that agency actions are leading to "removals without compliance with the procedures required by the INA," including procedures related to expedited removal. *See, e.g.*, Am. Compl. ¶¶ 53, 81, 129–30. They also seek relief from any expedited removal orders entered pursuant to the Proclamation. *See id.* at 42, Prayer for Relief ¶ (b); ECF 52 at 33. Accordingly, 8 U.S.C. § 1252(a)(2)(A) limits their claims because it eliminates jurisdiction for any "cause or claim arising from or relating to the implementation or operation of an [expedited removal] order," as well as "procedures and policies adopted . . . to implement the provisions of section 1225(b)(1)" unless expressly permitted by 8 U.S.C. § 1252(e). 8 U.S.C. § 1252(a)(2)(A)(i), (iv); *Make the Rd. New York,* 962 F.3d at 626; ECF 44 at 22. Thus, inasmuch as Plaintiffs have made the government's implementation of the expedited removal statute an issue, the only claim that can be asserted is a challenge made by an individual alien who has been subjected to expedited removal procedures under § 1252(e)(3), not claims based on alleged injuries to organizations. *See* ECF 44 at 22–23 (citing *Make the Rd. New York*, 962 F.3d at 626; *AILA v Reno*, 199 F.3d 1352, 1359 (D.C. Cir. 2000)).

## II.    Plaintiffs' Claims Fail on the Merits.

> **A. The INA does not prohibit repatriation of aliens who illegally enter the United States in contravention of a § 1182(f) suspension of entry.**

Nothing in § 1182(f) forecloses the government's ability to repatriate aliens who illegally

enter during a period in which a suspension-of-entry is in effect. That construction of the statute is consistent with D.C. Circuit precedent in the Title 42 context, Supreme Court precedent regarding the broad authority granted by § 1182(f), and the canon directing a statute be interpreted so as not to permit evasion of its primary purpose. *See* ECF 44 at 36-40. At their core, Plaintiffs' claims rely on their repeated assertion that § 1182(f) does not permit repatriation because under § 1229a, "the procedures 'specified in' the INA 'shall be the sole and exclusive procedure[s]' for ordering the removal of noncitizens." ECF 52 at 6 (quoting 8 U.S.C. §1229a(a)(3)); see *id.* at 2, 15. That assertion rests on a misleadingly truncated quote: § 1129a actually says "*[u]nless otherwise specified* in [the INA], a proceeding under [§1229a] shall be the sole and exclusive procedure" for removal. 8 U.S.C. 1229a(a)(3) (emphasis added). The government's claim here is that § 1182(f) is an INA provision that "otherwise specifie[s]" that an alien may be repatriated. Plaintiffs' contention that the exercise of that repatriation authority somehow "abrogate[s] the INA" (ECF 52 at 15) is thus purely question-begging: if the congressional grant of authority to suspend entry includes the authority to repatriate aliens who defiantly violate the suspension, then the President's exercise of that authority furthers, not abrogates, the INA. As explained in the government's brief, ECF 44 at 36-40, § 1182(f) is best read to include such authority. Plaintiffs' contrary arguments lack merit.

*First*, Plaintiffs contend (ECF 52 at 2) that the government must identify an affirmative grant of authority to support its use of § 1182(f). Yet § 1182(f) is itself an affirmative authority permitting repatriation of aliens who enter during a period where entry has been suspended; to conclude otherwise would establish a loophole that would swallow the rule and render a suspension a dead letter. *See*, *e.g.*, *County of Maui v. Hawaii Wildlife Fund*, 590 U.S. 165, 178-79 (2020) (rejecting interpretation that would have "create[d] . . . a large and obvious loophole in one

of the key regulatory" provisions of the statute); *Am. Paper Inst. Inc. v. Am. Elec. Power Serv. Corp.*, 461 U.S. 402, 421 (1983) (Congress does not "paralyze with one hand what it sought to promote with the other"); *The Emily*, 22 U.S. (Wheat.) 381, 390 (1824) (rejecting interpretation of statute that would render "evasion of the law . . . almost certain"). The government need not show anything else to prevail here. *Cf. La. Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 375 (1986) (noting the importance of an affirmative grant of authority where the best interpretation of the statute was that it *foreclosed* the implicit grant of authority advanced by the government).

Relatedly, Plaintiffs argue (ECF 52 at 3) that there is no need to interpret § 1182(f) as encompassing an expulsion authority, since aliens who illegally enter during a suspension could be subject to removal procedures under other provisions of the INA. This misses the point. The Proclamation was promulgated because of the massive influx of illegal entrants, the inability to efficiently process this influx under existing Title 8 authorities, and the need to stop new illegal entrants from gaining access to the immigration system. Absent repatriation authority, the Proclamation would be rendered nugatory as any physical entrant would have to be processed through some form of Title 8 removal proceeding, thus returning the immigration system to the pre-Proclamation status quo that the Proclamation was meant to address in the first place.

*Second*, Plaintiffs contend (ECF 52 at 3–4) that the D.C. Circuit's decision in *Huisha-Huisha* does not support repatriation authority in this case. But *Huisha-Huisha* recognized that Title 42 itself provided the authority to expel aliens and preclude their "introduc[tion]" into the United States. *See Huisha-Huisha v. Mayorkas*, 27 F.4th 718, 729 (D.C. Cir. 2022) (noting expulsion would be pursuant to an order under § 265 of Title 42). Similarly, aliens who illegally enter during a suspension-of-entry may be repatriated under the authority of § 1182(f), instead of being processed under other provisions of Title 8. *Cf id.* (rejecting the argument that the power to

expel aliens under the § 265 order ends after the aliens cross the border).

*Finally*, Plaintiffs argue (ECF 52 at 4–5) that reliance on *Sale* is misplaced, because that case had no reason to address procedures that may apply to aliens who reach U.S. territory. The government did not argue that *Sale resolves* the question before the Court, however, but rather that the Supreme Court's construction of § 1182(f) as permitting an extra-territorial blockade that would keep aliens from reaching U.S. shores supports the converse authority advanced here. There, the Court viewed a naval blockade as, effectively, a prophylactic measure that could be employed to ensure large numbers of illegal entrants did not reach the United States. *Sale v. Haitian Centers Council, Inc.*, 509 U.S. 155, 187 (1993). Here, repatriation allows the Executive to remove aliens who illegally enter the United States *despite* the existence of a § 1182(f) Proclamation. The authority claimed here is simply the other side of the expansive understanding of § 1182(f) already recognized in *Sale*.

**B.  The Proclamation permissibly limits applications for relief and protection.**

The Proclamation permissibly limits applications for asylum, since asylees and refugees naturally fall within the suspension of entry and because the government may preclude such relief categorically in the exercise of its discretion. *See* ECF 44 at 43–44. Likewise, the text and structure of the INA support the Proclamation's prohibition on applications of withholding of removal, since "removal" is not at issue under implementation of the Proclamation and, in any event, the statutory withholding-of-removal provision does not place any constraints on the *President*, as opposed to the Secretary. *See id.* at 45-46. Again, Plaintiffs' contrary arguments lack merit.

*First,* Plaintiffs' principal argument seems to be that § 1182(f) relates solely to admissibility and thus cannot provide a basis for prohibiting applications for relief and protection. *See* ECF 52 at 8. As the government previously noted, however, although the President's authority

under § 1182(f) unquestionably encompasses admissibility questions and the imposition of additional bases for exclusion, *see* ECF 44 at 47, there is no textual limitation that would cabin the President's authority in the manner alleged by Plaintiffs, especially where that provision addresses "entry" rather than "admission" and otherwise "exudes deference to the President in every clause." *Hawaii*, 585 U.S. at 684.[7] Moreover, its use as legal authority to intercept aliens in international waters, sanctioned by the Supreme Court in *Sale*, additionally points to a more expansive role than simply assessing admissibility at a POE or visa eligibility.

*Second*, Plaintiffs raise numerous arguments against the Proclamation's pretermission of asylum applications, but all suffer from the same flaw—the inability of an alien to enter the United States to seek asylum during a period of suspension. For instance, Plaintiffs argue (ECF 52 at 7) that § 1101(a)(15) (defining the term "immigrant") does not address the authority to suspend asylum. That is true as far as it goes, but it *does* mean that an alien who intends to seek asylum falls within the parameters of a Proclamation and thus may not enter the United States while that Proclamation is in effect. Similarly, Plaintiffs argue that granting asylum is not an "admission" for purposes of § 1182(f), *see* ECF 52 at 7–8, but § 1182(f) does not speak in terms of "admission." Instead, it discusses the authority to "suspend entry of all aliens or any class of aliens"—whether immigrants or nonimmigrants. 8 U.S.C. § 1182(f). There is no argument that aliens who intend to

---

[7] At the time § 1182(f) was adopted, the term "entry" was defined in the INA as "any coming of an alien into the United States, from a foreign port or place or from an outlying possession, whether voluntarily or otherwise." Immigration and Nationality Act of 1952, Pub. L. No. 414, Ch. 477 Sec. 101(a)(13) (June 27, 1952); *see also id.* Sec. 212(e) (provision now codified at 8 U.S.C. § 1182(f)). Amendments to the INA in 1996 replaced the defined term "entry" with the defined terms "admission" and "admitted," defined as "*lawful* entry . . . after inspection and authorization," Pub. L. No. 104-208 Division C, Sec. 301(a) (Sept. 30, 1996) (codified at 8 U.S.C. § 1101(a)(13)). This amendment accounted for the fact that aliens who have never been admitted are generally treated for immigration purposes as "not considered to have entered the country." *See Dep't of Homeland Sec. v. Thuraissigiam,* 591 U.S. 103, 139–40 (2020). But the amendments did not replace the term "entry" in § 1182(f) with the term "admission."

seek asylum are somehow excluded from these expansive parameters of aliens whose entry may be suspended under § 1182(f). Finally, although aliens within the United States may usually apply for asylum without regard to their manner of entry, there is no requirement that the government go through futile processing of such applications where the end result—a grant of asylum—is prohibited because of an extant Proclamation.[8] *See Huisha-Huisha*, 27 F.4th at 730-31 (noting processing of asylum applications would be futile where introduction was barred pursuant to a Title 42 order). The fundamental point is that aliens who intend to seek asylum may not enter or be admitted when they are subject to a § 1182(f) Proclamation, and thus the suspension of processing requests for asylum of those who nonetheless enter into the United States is consistent with the statute.

*Third*, Plaintiffs repeat their arguments regarding withholding of removal, *see* ECF 52 at 11–13, but without seriously addressing the fact that the withholding of removal statute does not address itself to the President or otherwise reflect a constraint on the President's authority or, except in offering a conclusion to the contrary, that the Proclamation and its implementation do not relate to removal as that term is defined by the INA, *see* ECF 44 at 45–46. Plaintiffs' CAT-related argument (ECF 52 at 14–15) similarly lacks merit. As they acknowledge, aliens subject to the Proclamation will still be eligible for CAT protection, although eligibility will be gauged consistent with the standards for establishing entitlement to CAT, rather than regulatory screening standards. *See* ECF 44 at 49–50; *see generally* 8 C.F.R. § 208.30. This is a permissible implementation of the United States' obligations under CAT and, since the covered aliens do not fall within the bounds of the regulatory provisions cited by Plaintiffs, is not inconsistent with those

---

[8] To the extent *O.A. v. Trump*, 404 F. Supp. 3d 109 (D.D.C. 2019) holds otherwise, that decision should be revisited in light of the D.C. Circuit's decision in *Huisha-Huisha*.

regulations. *See* 8 C.F.R. § 208.30(a) (limiting applicability to "aliens subject to sections 235(a)(2) and 235(b)(1)" of the INA).

*Finally*, Plaintiffs again refer (ECF 52 at 9-10) to prior constructions of the President's authority under § 1182(f) which simply are not binding on the current Administration. *See* ECF 44 at 48–49. That prior administrations may have felt constrained in using § 1182(f) to bar applications for relief or protection does not answer the question of whether this Administration is justified in its own construction of Presidential authority. *Cf. Hawaii*, 585 U.S. at 693.

### C. The President has inherent authority under the Constitution to repatriate aliens who illegally enter the United States when entry has been suspended and limit the relief or protection such aliens may seek.

Regardless of how the statutory questions are resolved, the President has authority under Article II to repatriate aliens who unlawfully enter the United States while entry is suspended, and to limit those aliens' access to forms of relief and protection that would otherwise be available but for the suspension of entry. As the Supreme Court has long noted, in both the exclusion and removal contexts, the Executive has inherent authority over who may lawfully enter the United States and on what terms. *See*, *e.g.*, *Fong Yue Ting v. United States*, 149 U.S. 698, 707 (1893). Additionally, "because the power of exclusion of aliens is [] inherent in the executive department of the sovereign, Congress may in broad terms authorize the executive to exercise the power . . . [and] Executive officers may be entrusted with the duty of specifying the procedures for carrying out the congressional intent." *Knauff*, 338 U.S. at 543. As already argued to this Court, mandating the repatriation of aliens whose entry was barred at the time they entered the United States on account of a § 1182(f) Proclamation is a permissible Executive Branch exercise of inherent authority, that is also consistent with the broad parameters Congress utilized to implement the inherently sovereign function of regulating entry of aliens into the United States. ECF 44 at 40.

Although Plaintiffs repeat their argument, premised on *Youngstown*, that the President is operating in a zone where his authority is at its lowest ebb, *see* ECF 52 at 15, that argument remains erroneous for the reasons previously advanced, *see* ECF 44 at 40–41.

## III.    Any Relief Must be Sharply Limited.

### A.  The relief Plaintiffs seek is overbroad.

Under settled constitutional and equitable principles, the Court may not issue relief that is broader than necessary to remedy actual harm shown by specific Plaintiffs. *Gill v. Whitford*, 585 U.S. 48, 73 (2018). As discussed above, the Organizations lack standing to obtain relief concerning the Proclamation or its implementation, *see supra* § I(A), and thus universal vacatur or a nationwide injunction cannot be premised on their alleged injury. But even assuming any Organization could demonstrate standing, relief would be limited to the harms suffered by the particular Organization (such as the geographical scope of their services). Likewise, the Individual Plaintiffs who are no longer in the United States lack standing to pursue prospective relief, and facilitation of their return is not an available remedy. *See id.*; ECF 44 at 12–13.

Further, as set forth separately, no class should be certified, and relief thus must be limited to the Individual Plaintiffs who establish standing. ECF 43; ECF 44 at 53; *Baxter v. Palmigiano*, 425 U.S. 308, 310 n. 1 (1976); *Nat'l Ctr. for Immigrants Rights, Inc. v. INS*, 743 F.2d 1365, 1371 (9th Cir. 1984). Moreover, Plaintiffs have added a new request for class-wide relief into their Reply in support of summary judgment, which Defendants had no opportunity to address in opposition to class certification: an order enjoining Defendants from preventing the re-entry of previously-removed class members to the United States under the Proclamation or facilitating their return. *See* ECF 52 at 33 ¶ 6. This request for relief is forfeited because it was not addressed until reply. *See Abdullah v. Obama*, 753 F.3d 193, 199 (D.C. Cir. 2014). But even if not forfeited, Federal Rule of

Civil Procedure 23(b)(2) cannot support this type of classwide injunctive relief. In a 23(b)(2) class, notice is not required and "the defendant will be required to comply with the relief ordered no matter who is in the class." *Thorpe v. D.C.*, 303 F.R.D. 120, 139 (D.D.C. 2014). "Claims for *individualized* relief . . . do not satisfy the Rule." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011). The injunction Plaintiffs seek for removed proposed class members requires individualized facilitation relief and, as they must concede, depends highly on "who is in the class" because identification of class members is required to determine whether they can benefit from the injunction. In other words, the availability of relief would turn on whether the class member could be affirmatively identified as a class member upon seeking re-entry or facilitation of return. And without such class-member identification, the injunction Plaintiffs seek would be sweepingly overbroad, as it would preclude Defendants from enforcing even aspects of the Proclamation that Plaintiffs have not challenged and that this Court has never addressed.

**B. The equities do not support enjoining the Proclamation**.

Even if a permanent injunction were an available remedy despite § 1252(f)(1) (*see supra* § I(A)(1)), Plaintiffs have not shown that such relief is warranted here. *See* ECF 44 at 71–76. The balance of the equities weighs heavily against issuing injunctive relief because the Proclamation is critical for combating a sustained surge of illegal migration across the southern border. As Defendants explained, over the past four years, at least 8 million illegal aliens have been encountered along the southern border of the United States—a massive, irregular influx that has imposed costs on border communities, strained migration resources, contributed to possible public health and security concerns, and rendered the border more vulnerable to international criminal and drug organizations. ECF No. 44 at 59-61; ECF Nos. 44-5, 44-6. Since the Proclamation's implementation, southwest-border encounters between POEs have decreased by almost half, releases have decreased by 80%, and there have been substantial indicators of decreased drug

trafficking activity. ECF No. 44-5 ¶¶ 36-41. Enjoining the Proclamation would risk a loss of operational control over the southern border and incentivize further illegal migration. *Id.* ¶¶ 42-48.

Plaintiffs' argument that it is for Congress to address the public harms created by an insufficient immigration framework and manage the border, ECF 52 at 42-44, engages in circular reasoning and misses the point: Congress has addressed such scenarios by providing the President authority to impose additional entry restrictions under § 1182(f) to address emergent national situations such as a crush of aliens entering the United States unlawfully without being vetted for health, public safety, national security or criminal-enterprise concerns. *Hawaii*, 585 U.S. at 691 (explaining § 1182(f) "vests authority in the President to impose additional limitations on entry beyond the grounds for exclusion set forth in the INA—including in response to circumstances that might affect the vetting system or other 'interests of the United States'"). And Plaintiffs' attempt to contest that there have been extreme levels of migration imposing costs and safety concerns to justify a measure like the Proclamation falls flat. ECF 52 at 44-45. Regardless of any temporary dips in border encounter rates or statistics regarding crime and drug apprehensions, Plaintiffs fail to dispute facts showing that the Proclamation led to decreased attempts to enter the United States unlawfully between ports of entry and decreased drug activity at the border. ECF 44-5 ¶¶ 36-41. Accordingly, Plaintiffs fail to show that the Proclamation has not had a measurable impact on border security and public safety, and that enjoining it would not work against the public interest. And if this Court issues any injunctive relief, however, it should impose a bond requirement. *See* Fed. R. Civ. P. 65(c).

## CONCLUSION

The Court should deny Plaintiffs' motion and grant summary judgment to Defendants.

Dated: April 21, 2025            Respectfully submitted,

YAAKOV M. ROTH
*Principal Deputy Assistant Attorney General*

DREW C. ENSIGN
*Deputy Assistant Attorney General*

BRIAN C. WARD
*Acting Assistant Director*

By: <u>/s/ *Katherine J. Shinners*</u>
KATHERINE J. SHINNERS
*Senior Litigation Counsel*
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
Tel: (202) 598-8259
Email: katherine.j.shinners@usdoj.gov

PATRICK GLEN
DAVID KIM
*Senior Litigation Counsel*

ELISSA FUDIM
JOSEPH A. DARROW
*Trial Attorneys*

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on April 21, 2025, I electronically filed the foregoing reply with the Clerk of the Court for the United States District Court for the District of Columbia by using the CM/ECF system. Counsel in the case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

By: */s/ Brian C. Ward*
     BRIAN C. WARD
     United States Department of Justice