**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| REFUGEE AND IMMIGRANT CENTER FOR EDUCATION AND LEGAL SERVICES, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> KRISTI NOEM, Secretary of the U.S. Department of Homeland Security, in her official capacity, *et al.*, <br><br> *Defendants*. | No. 1:25-cv-00306 (APM) |

**PLAINTIFFS' SUPPLEMENTAL MEMORANDUM ON 8 U.S.C. § 1252(f)(1)**

In accordance with the discussion at the April 29, 2025 hearing, *see* ECF 56, Tr. 86, and the Court's minute order, Plaintiffs submit this supplemental brief explaining why 8 U.S.C. § 1252(f)(1) does not bar classwide injunctive relief prohibiting Defendants (other than the President) from enforcing the Proclamation against proposed class members. ECF 52 at 46-51.[1]

This question is important because Defendants state that they would continue applying the Proclamation to noncitizens who reach the United States even if the Guidance is vacated. *E.g.*, ECF 55 at 22.[2] They take this position even though the Guidance is unlawful for the same reasons as the Proclamation. *See* ECF 52 at 11-26. Nor have Defendants provided assurances that they

---

[1] "Plaintiffs do not seek to enjoin the President." ECF 52 at 44 n.22. With respect to injunctive relief, Plaintiffs use the term "Defendants" below to mean all Defendants except the President.

[2] Section 1252(f)(1) does not apply to vacatur at all. ECF 52 at 51-52.

1

would abide by a declaratory judgment holding the Proclamation unenforceable against class members. Classwide injunctive relief as to the Proclamation therefore remains critical.[3]

### I. The Injunction Would Not Enjoin Any Covered Provision.

The classwide injunction Plaintiffs seek falls outside Section 1252(f)(1)'s plain text and the holding of *Garland v. Aleman Gonzalez*, 596 U.S. 543 (2022). Section 1252(f)(1) bars classwide relief enjoining "the operation of the provisions of chapter 4 of title II" of the INA. INA § 242(f)(1), 8 U.S.C. § 1252(f)(1); *see* ECF 44 at 68 n.7. Plaintiffs seek to enjoin Defendants' unlawful "operation" of Sections 1182(f) and 1185(a)(1), neither of which is in Title II, Chapter 4. That injunction would not, as Defendants claim, "compel DHS to implement" covered provisions "in a particular way." *See* ECF 55 at 10. Instead, DHS would retain discretion over whether to initiate removal proceedings at all and, if so, what type of proceedings to initiate. As explained below, the expedited removal statute and the withholding statute may not come into play at all for many class members. *Infra* at 6-8. The only thing the injunction would prevent Defendants from doing, both in removal proceedings and outside of them, is relying on the Proclamation. That is not enjoining "the operation of … chapter 4."

This conclusion accords with *Aleman Gonzalez*. That case involved two classwide "injunctions requiring the Government to provide bond hearings" for noncitizens "detained pursuant to § 1231(a)(6)," a provision covered by Section 1252(f)(1). 596 U.S. at 551 & n.1. The plaintiffs argued that Section 1252(f)(1) bars injunctions only against "the operation of [covered] provisions 'as *properly* interpreted.'" *Id.* at 552. The Court rejected that view, explaining that "the 'operation of' the relevant statutes is best understood to refer to the Government's efforts to

---

[3] Defendants do not argue that Section 1252(f)(1) bars injunctive relief as to the Individual Plaintiffs issued "212(f) expedited removal" orders.

enforce or implement them." *Id.* at 550. Applying that understanding, the Court held that classwide injunctions mandating bond hearings would "interfere with the Government's efforts to operate § 1231(a)(6)"—a covered provision—because they would "require officials to take actions that (in the Government's view) are not required *by* § 1231(a)(6) and to refrain from actions that (again in the Government's view) are allowed *by* § 1231(a)(6)." *Id.* at 551 (emphasis added).

The injunction Plaintiffs seek is permissible because the policy at issue in this case—the Proclamation—is not an "effort[] to enforce or implement" any provision in Chapter 4. *Id.* at 550. The entire crux of Defendants' position is that they are not obliged to "enforce or implement" Chapter 4 at all, because of purported authority *outside* Chapter 4. For example, with respect to Section 1231, which contains the withholding statute, the injunction here (unlike that in *Aleman Gonzalez*) would not "require officials to take actions that (in the Government's view) are not required *by § 1231[]*." *Id.* at 551. (emphasis added). It would instead only require Defendants "to refrain from [taking] actions that (… in the Government's view) are allowed by" Sections 1182(f) and 1185(a). *Id.* Because Sections 1182(f) and 1185(a) are outside Chapter 4, that injunction falls outside Section 1252(f)(1)'s text and outside *Aleman Gonzalez*'s holding.

Defendants' position here also runs afoul of *Aleman Gonzalez* in a second respect. They make much of Plaintiffs' claims that the Proclamation violates the expedited removal and withholding statutes. *E.g.*, Tr. 60-61; ECF 44 at 66-67; ECF 55 at 10-12. But that is irrelevant because "the reach of § 1252(f)(1)" does not "depend on the nature of the claim in question." *Aleman Gonzalez*, 596 U.S. at 553. The dispositive question is instead whether the policy or action

3

the challenger seeks to enjoin implements a statute in Chapter 4. *See* INA § 242(f)(1), 8 U.S.C. § 1252(f)(1) (limiting injunctions against "the operation of the provisions of chapter 4 of title II").[4]

Defendants' attempt to rewrite Section 1252(f)(1)—to create a new bar on injunctions concerning the operation of provisions outside Chapter 4—also violates the settled rule that courts "will not construe a statute to displace courts' traditional equitable authority absent the clearest command." *McQuiggin v. Perkins*, 569 U.S. 383, 397 (2013) (citations omitted). And this rewriting would threaten untenable results that Congress could not possibly have intended. If the government simply started expelling noncitizens without any pretense of statutory authority, an injunction against that policy could not reasonably be said to enjoin "the operation of the provisions of chapter 4" simply because the expulsions would violate those provisions. But in Defendants' view, Section 1252(f)(1) would bar injunctive relief against that patently unlawful action.

Indeed, under Defendants' view, the injunction affirmed in *Huisha-Huisha v. Mayorkas*, based on the Title 42 policy's violation of the withholding statute, would be impermissible even though the purported basis for that policy was outside of Title 8 entirely. *See* 27 F.4th 718, 725-26, 730-32 (D.C. Cir. 2022). But tellingly, the government did not even raise Section 1252(f)(1) in that case. *See* Appellants' Br., *Huisha-Huisha*, No. 21-5200, 2021 WL 4935466 (D.C. Cir. Oct. 21, 2021). Presumably, even the government recognizes that Section 1252(f)(1) cannot apply to policies like Title 42. The situation here is indistinguishable. As with the Proclamation, the Title 42 order was issued under a statute outside Chapter 4. And a collateral effect of enjoining that

---

[4] In any event, the Court need not even reach Plaintiffs' claims under the expedited removal and withholding statutes to grant the injunction they seek. The Court can enjoin the Proclamation's enforcement against class members based on Plaintiffs' claim that Sections 1182(f) and 1185(a)(1) do not grant the President power to override other statutes. ECF 11 at 40-41 (Claim 8).

policy was that the government had to comply with the withholding statute to expel noncitizens. Clearly, though, that injunction did not enjoin the "operation of … chapter 4," because the Title 42 order did not "enforce or implement" Chapter 4. *See Aleman Gonzalez*, 596 U.S. at 550. The same is true here.

Moreover, Defendants' theory would appear to bar not just *classwide* injunctions, but *individual* injunctions too. Section 1252(f)(1)'s exception allows injunctions "with respect to the application of [Chapter 4's] provisions to an individual [noncitizen] against whom proceedings under such chapter have been initiated." INA § 242(f)(1), 8 U.S.C. § 1252(f)(1); *see Aleman Gonzalez*, 596 U.S. at 550. But if the government starts carrying out expulsions not based in Title 8 at all, no removal "proceedings under [Chapter 4]" would "have been initiated." Hence, the individual exception would not apply. And that is exactly what is occurring under the "212(f) repatriation" regime Defendants have invented. Congress did not enact Section 1252(f)(1) to protect such schemes. *See* H.R. Rep. 104-469(I), at 161 (Mar. 4, 1996) (explaining that Section 1252(f)(1) "limits the authority of Federal courts other than the Supreme Court to enjoin the operation of the new *removal procedures established in this legislation*.") (emphasis added).[5]

## II. Any Effects On Covered Provisions Would Be Collateral.

Defendants' overbroad reading also conflicts with *Aleman Gonalez* in another way. *Aleman Gonzalez* distinguished and left undisturbed a line of precedent holding that "a court may enjoin the unlawful operation of a provision *that is not specified in § 1252(f)(1)* even if that injunction has some collateral effect on the operation of a covered provision." 596 U.S. at 553 n.4 (citing *Gonzales v. DHS*, 508 F.3d 1227 (9th Cir. 2007)). That supports Plaintiffs' position that

---

[5] It is especially clear that Section 1252(f)(1) cannot bar a classwide injunction prohibiting Defendants from conducting "repatriations" under the Proclamation without even the pretense of any "removal" proceeding.

Section 1252(f)(1) reaches only injunctions that target policies "operating" covered provisions and not—as Defendants urge—every injunction that may *relate* in some way to a covered provision.

The Fifth Circuit recently applied the same line of precedent to reject an expansive reading of *Aleman Gonzalez* like the one Defendants press here. *Texas v. DHS*, 123 F.4th 186, 209-10 (5th Cir. 2024). There, the plaintiff sought to enjoin conduct that the government claimed was authorized by 8 U.S.C. § 1357, which falls outside Chapter 4. *Id.* at 192, 209-11. The government argued that the injunction would "impact its ability to enforce" covered provisions including Section 1225. *Id.* at 210. The Fifth Circuit held that any such effects would be "collateral" and "incidental[]." *Id.* (citing *Aleman Gonzalez*, 596 U.S. at 553 n.4, and *Gonzalez*, 508 F.3d at 1233). And it forcefully rejected reading Section 1252(f)(1) to reach such "collateral effect[s]." *See id.* ("Congress legislated which sections are covered by § 1252(f)(1). The Executive Branch does not get to propose additions."). Courts elsewhere have likewise continued applying the collateral effects rule after *Aleman Gonzalez*.[6]

Under these precedents, the injunction here would "directly implicate[]" only Sections 1182(f) and 1185(a). *Gonzales*, 508 F.3d at 1233. Any downstream effects on Defendants' efforts to implement covered provisions would be at least "one step removed"—and often several steps removed—from that direct effect on the Proclamation. *See id.*

*First*, the injunction would restore access to affirmative asylum, and neither expedited removal nor withholding will be at issue for class members granted asylum affirmatively. Asylum seekers who cross between ports of entry without being apprehended and placed in removal proceedings may apply for asylum affirmatively under 8 U.S.C. § 1158(a)(1). *See O.A. v. Trump*,

---

[6] *See, e.g.*, *United Farm Workers v. Noem*, No. 25-cv-00246, 2025 WL 1235525, at *22 (E.D. Cal. Apr. 29, 2025); *Philadelphia Yearly Meeting of Religious Soc'y of Friends v. DHS*, No. 25-cv-0243, 2025 WL 585768, at *13 (D. Md. Feb. 24, 2025).

404 F. Supp. 3d 109, 132 (D.D.C. 2019); DHS Off. of Homeland Security Stats., *Asylees: 2023* at 3 (Oct. 2024) (one quarter of affirmative asylum applicants between 2014 and 2023 reported entering without inspection).[7] Similarly, DHS always has discretion to "parole" asylum seekers it does encounter into the country without initiating removal proceedings. 8 U.S.C. § 1182(d)(5). "Every administration, including the Trump and Biden administrations, has utilized this authority to some extent." *Biden v. Texas*, 597 U.S. 785, 806 (2022); *see also Arizona v. United States*, 567 U.S. 387, 396 (2012) ("Federal officials, as an initial matter, must decide whether it makes sense to pursue removal at all."). Noncitizens paroled into the country can then apply for asylum affirmatively. 8 U.S.C. § 1158(a)(1); *see, e.g.*, 87 Fed. Reg. 63507, 63508 (Oct. 19, 2022) (noting that parolees may "seek humanitarian relief" and be "granted asylum"). Asylum seekers whose affirmative applications are granted will never be placed in removal proceedings and so will never need to seek withholding of removal.[8]

*Second*, even when DHS exercises its "discretion" to place proposed class members either "in expedited or full removal proceedings," ECF 44 at 67 n.6, the injunction's collateral effects on Defendants' operation of the withholding statute *within* such proceedings would be several steps removed from its direct effect on the Proclamation. Many asylum seekers initially placed in expedited removal proceedings will pass their credible fear interviews as to asylum, be referred for regular removal proceedings, and ultimately be granted asylum—all without Defendants ever ordering them removed or assessing their eligibility for withholding. Most people who fail credible fear screenings as to asylum would necessarily fail them as to withholding for the same reason,

---

[7] https://ohss.dhs.gov/sites/default/files/2024-10/2024_1002_ohss_asylees_fy2023.pdf.

[8] Defendants' processing of Individual Plaintiffs illustrates their exercise of discretion over whether to place noncitizens in Chapter 4 removal proceedings. DHS originally placed the Afghan and Turkish plaintiff families into regular removal proceedings only to cancel or dismiss those proceedings and instead process them under the Proclamation. ECF 43-3 ¶¶ 4, 10.

since withholding also concerns persecution but "holds applicants to a higher standard of proof." *O.A.*, 404 F. Supp. 3d at 136. Other people will ultimately be denied asylum in regular removal proceedings, such that their withholding claims will be considered. But that indirect consequence of the injunction would be downstream of, among other intervening factors, DHS's discretionary decision to place the noncitizen in removal proceedings, the application of any statutory asylum bars, and the immigration judge's eligibility and discretionary determinations concerning asylum.

Even then, the injunction would not compel Defendants to take any action to carry out the withholding statute. Instead, Defendants would only be prohibited from relying on *the Proclamation* as a separate source of authority outside of Chapter 4 entirely. With that separate (ostensible) authority out of the picture, Defendants' "operation" of the withholding statute would be guided by their own regulations and not compelled by the injunction. And ultimately, where a noncitizen demonstrates eligibility for withholding, it would be that case-specific showing—and not this Court's injunction—that would prohibit their removal to a particular country.

### III.  At Minimum, The Court Should Make All Necessary Findings.

Alternatively, if the Court concludes that Section 1252(f)(1) prohibits it from entering any aspect of the injunctive relief that Plaintiffs request, the Court should still make all findings necessary for the issuance of injunctive relief. That will facilitate the entry of full relief by the Court of Appeals (should it conclude that Section 1252(f)(1) does not apply) or by the Supreme Court (to which Section 1252(f)(1) does not apply). *See Biden v. Texas*, 597 U.S. 785, 799 (2022) (noting that Section 1252(f)(1) "explicitly preserv[es]" the Supreme Court's "power to enter injunctive relief").

### CONCLUSION

The Court should grant all of the relief sought in Plaintiffs' motion for summary judgment.

Dated: May 6, 2025

Respectfully submitted,

/s/ Lee Gelernt

Keren Zwick (D.D.C. Bar. No. IL0055)
Richard Caldarone (D.C. Bar No. 989575)*
Mary Georgevich*
National Immigrant Justice Center
111 W. Jackson Blvd.,
 Suite 800
Chicago, IL 60604
T: 312-660-1370
kzwick@immigrantjustice.org
rcaldarone@immigrantjustice.org
mgeorgevich@immigrantjustice.org

Melissa Crow (D.C. Bar. No. 453487)
Center for Gender & Refugee Studies
1121 14th Street, NW, Suite 200
Washington, D.C. 20005
T: 202-355-4471
crowmelissa@uclawsf.edu

Edith Sangueza*
Center for Gender & Refugee Studies
26 Broadway, 3rd Floor
New York, NY 10004
T: 415-581-8835
sanguezaedith@uclawsf.edu

Robert Pauw*
Center for Gender & Refugee Studies
c/o Gibbs Houston Pauw
1000 Second Avenue, Suite 1600
Seattle, WA 98104
T: 206-682-1080
rpauw@ghp-law.net

Daniel Hatoum*
Texas Civil Rights Project
P.O. Box 219
Alamo, Texas 78516
T: 512-474-5073, ext. 208
daniel@texascivilrightsproject.org

Lee Gelernt (D.D.C. Bar No. NY0408)
Omar C. Jadwat*
American Civil Liberties Union Foundation
Immigrants' Rights Project
125 Broad Street, 18th Floor
New York, NY 10004
T: 212-549-2660
lgelernt@aclu.org
ojadwat@aclu.org

Morgan Russell*
Cody Wofsy (D.D.C. Bar No. CA00103)
Spencer Amdur*
American Civil Liberties Union Foundation
Immigrants' Rights Project
425 California Street, Suite 700
San Francisco, CA 94104
T: 415-343-0770
mrussell@aclu.org
cwofsy@aclu.org
samdur@aclu.org

Arthur B. Spitzer (D.C. Bar No. 235960)
Scott Michelman (D.C. Bar No. 1006945)
American Civil Liberties Union Foundation
of the District of Columbia
529 14th Street, NW, Suite 722
Washington, D.C. 20045
T: 202-457-0800
aspitzer@acludc.org
smichelman@acludc.org

Ashley Alcantara Harris*
David A. Donatti*
ACLU Foundation of Texas
P.O. Box 8306
Houston, TX 77288
TEL: (713) 942-8146
FAX: (713) 942-8966
aharris@aclutx.org
ddonatti@aclutx.org

9

*Attorneys for Plaintiffs*

*\*Appearing pro bono or pro hac vice.*