IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| REFUGEE AND IMMIGRANT CENTER FOR EDUCATION AND LEGAL SERVICES, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>KRISTI NOEM, Secretary of the U.S. Department of Homeland Security, in her official capacity, *et al.*,<br><br>*Defendants*. | No. 1:25-cv-00306 |

**PLAINTIFFS' REPLY TO DEFENDANTS' RESPONSE TO PLAINTIFFS' SUPPLEMENTAL DECLARATIONS**

Plaintiffs submit this brief reply in response to Defendants' Response to Plaintiffs' Supplemental Declarations, ECF 66. Defendants argue that "Plaintiffs … lack standing to challenge Section 3" because it supposedly "has no practical applicability to" individuals "who cross the southern border" between ports of entry. *Id.* at 3. That is wrong. Defendants have said that Section 3 may apply to the Individual Plaintiffs and others like them, and Defendants may apply it to them in the future. Indeed, that is *especially* likely if this Court invalidates Sections 1 and 2. It is therefore imperative that the Court adjudicate Plaintiffs' claims against Section 3 as well.

If noncitizens do not provide the information required, Section 3 "restrict[s] their access to provisions of the INA that would permit their continued presence in the United States, including, but not limited to, section 208 of the INA," 8 U.S.C. § 1158. 90 Fed. Reg. 8333, 8335. Far from suggesting that this restriction does not apply to noncitizens who cross the southern border between ports of entry, the Guidance expressly states that Section 3 applies equally to those noncitizens:

1

"Section 3 of [the] Proclamation … suspends and limits entry of certain illegal aliens encountered by U.S. Border Patrol *between the ports of entry at the southern, northern, and coastal border*." ECF 52-1 at 13-14 (emphasis added). And Defendants said the same thing in earlier briefing: the Proclamation "provides that any [noncitizen]—*regardless of location*—who has not provided sufficient [background information] is subject to Section 3's suspension on entry and restrictions on invoking provisions of the INA to permit their continued presence." ECF 43 at 16-17 (emphasis added). Plaintiffs thus have standing to challenge Section 3 of the Proclamation, for all the same reasons they have standing to challenge Sections 1 and 2. *See* ECF 52 at 16-22.

Defendants' most recent filing at best represents that Defendants are *not currently* enforcing Section 3 against noncitizens who cross the southern border between ports of entry. But such voluntary forbearance of enforcement does not defeat standing.[1] And that conclusion applies with special force here for two reasons. First, the Individual Plaintiffs have already crossed the border on or after January 20, 2025 without submitting the required information. *See* ECF 66 at 2 (agreeing that "each Individual Plaintiff likely did not submit sufficient" information). Therefore, those still in the United States are *already* subject to Section 3's restriction on access to protection. *cf., e.g.*, Woodhull Freedom Found., 948 F.3d at 373 (holding that plaintiff had standing based on future "intended conduct").

---

[1] *See, e.g.*, *Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383, 393 (1988) (where "[t]he State has not suggested that the … law will not be enforced … [,] plaintiffs have alleged an actual and well-founded fear that the law will be enforced against them"); *Woodhull Freedom Found. v. United States*, 948 F.3d 363, 373 (D.C. Cir. 2020) (plaintiff had standing to challenge a provision where "the threat of future enforcement" against him was "substantial" because "the Department [of Justice] ha[d] yet to disavow any intention to prosecute" plaintiff or those similarly situated to him under the provision); *Sandvig v. Barr*, 451 F. Supp. Ed 73, 81-82 (D.D.C. 2020) ("Absent a specific disavowal or a clear indication that plaintiffs' conduct falls outside the scope of the criminal provisions, plaintiffs adequately demonstrate a credible threat for standing purposes").

Second, Defendants' statements about forbearance are particularly weak. Defendants say that "[w]here Sections 1 and 2 of the Proclamation apply, there is no need to apply Section 3 of the Proclamation." ECF No. 66 at 3. So if this Court rules that Sections 1 and 2 cannot lawfully apply to Plaintiffs, Plaintiffs face a very substantial risk that Defendants will begin enforcing Section 3 against them. Nothing in the Proclamation itself limits Section 3's application between ports of entry. Indeed, Defendants admit that they are currently enforcing Section 3 between ports of entry at the northern and coastal borders, where Sections 1 and 2 do not apply. *See* ECF No. 66 at 3; ECF 52-1 at 13-15. And even if the Guidance could be read to limit Defendants' current application of Section 3 between southern border ports of entry, Defendants have stressed that they will directly "carry out the provisions" of the Proclamation if the Court vacates the Guidance as Plaintiffs request. ECF 44 at 26.

If Defendants can no longer enforce Sections 1 and 2 at the southern border, there is every reason to believe they will begin treating it like the other borders: that is, they will begin actively enforcing Section 3 against noncitizens like the Individual Plaintiffs who have crossed the southern border between ports of entry. *Cf.* Tr. of Mot. Hr'g at 63:24-64:7 (Apr. 29, 2025) ("I am pretty sure that you can't moot a case out by simply saying, as to the particular plaintiffs, well, . . . we are not going to apply this to you under the voluntary cessation doctrine from the D.C. Circuit.").

Plaintiffs thus have standing to challenge Section 3. If the Court were to disagree and conclude that no Plaintiff currently has standing to challenge Section 3, the Court should at minimum require Defendants to give Plaintiffs and the Court 21 days' notice before they begin to apply Section 3 to noncitizens who crossed between ports of entry at the southern border. This will allow the Court to address the legality of Section 3 at that time.

Dated: June 2, 2025                          Respectfully submitted,

/s/ Lee Gelernt

Keren Zwick (D.D.C. Bar. No. IL0055)
Mary Georgevich*
National Immigrant Justice Center
111 W. Jackson Blvd.,
  Suite 800
Chicago, IL 60604
T: 312-660-1370
kzwick@immigrantjustice.org
mgeorgevich@immigrantjustice.org

Lee Gelernt (D.D.C. Bar No. NY0408)
Omar C. Jadwat*
American Civil Liberties Union Foundation
Immigrants' Rights Project
125 Broad Street, 18th Floor
New York, NY 10004
T: 212-549-2660
lgelernt@aclu.org
ojadwat@aclu.org

Melissa Crow (D.C. Bar. No. 453487)
Center for Gender & Refugee Studies
1121 14th Street, NW, Suite 200
Washington, D.C. 20005
T: 202-355-4471
crowmelissa@uclawsf.edu

Morgan Russell*
Cody Wofsy (D.D.C. Bar No. CA00103)
Spencer Amdur*
American Civil Liberties Union Foundation
Immigrants' Rights Project
425 California Street, Suite 700
San Francisco, CA 94104
T: 415-343-0770
mrussell@aclu.org
cwofsy@aclu.org
samdur@aclu.org

Edith Sangueza*
Center for Gender & Refugee Studies
26 Broadway, 3rd Floor
New York, NY 10004
T: 415-581-8835
sanguezaedith@uclawsf.edu

Arthur B. Spitzer (D.C. Bar No. 235960)
Scott Michelman (D.C. Bar No. 1006945)
American Civil Liberties Union Foundation
of the District of Columbia
529 14th Street, NW, Suite 722
Washington, D.C. 20045
T: 202-457-0800
aspitzer@acludc.org
smichelman@acludc.org

Robert Pauw*
Center for Gender & Refugee Studies
c/o Gibbs Houston Pauw
1000 Second Avenue, Suite 1600
Seattle, WA 98104
T: 206-682-1080
rpauw@ghp-law.net

Daniel Hatoum*
Texas Civil Rights Project
P.O. Box 219
Alamo, Texas 78516
T: 512-474-5073, ext. 208
daniel@texascivilrightsproject.org

Ashley Alcantara Harris*
David A. Donatti*
ACLU Foundation of Texas
P.O. Box 8306
Houston, TX 77288
TEL: (713) 942-8146
FAX: (713) 942-8966
aharris@aclutx.org
ddonatti@aclutx.org

*Attorneys for Plaintiffs*

4

*Appearing pro bono or pro hac vice.*